# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Greg Vollman

**DEFENDANTS**

John Crane Inc.

**(b)** County of Residence of First Listed Plaintiff    Lehigh, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Cook County, IL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lauren Linsenbach, Esquire
Law Office of Peter Angelos
3440 Lehigh Street

Attorneys *(If Known)*
Tiffany Turner, Esq. Dickie, Mccamy & Chilcote
1650 Arch Street, Suite 2110, Phila, PA 19103
215-925-2289

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 152 Recovery of Defaulted | Liability | [x] 368 Asbestos Personal | | [ ] 830 Patent | [ ] 450 Commerce |
| Student Loans | [ ] 340 Marine | Injury Product | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | New Drug Application | [ ] 470 Racketeer Influenced and |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | Corrupt Organizations |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | | [ ] 485 Telephone Consumer |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | **SOCIAL SECURITY** | Protection Act |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | Medical Malpractice | | Leave Act | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | or Defendant) | [ ] 896 Arbitration |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| | Employment | **Other:** | [ ] 462 Naturalization Application | 26 USC 7609 | Act/Review or Appeal of |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | Agency Decision |
| | Other | [ ] 550 Civil Rights | Actions | | [ ] 950 Constitutionality of |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | State Statutes |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1442 (a)

Brief description of cause:
Plaintiff alleges injury due to exposure to asbestos.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
July 1, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 320 N. Jerome Street, Allentown, PA 18109 _____

Address of Defendant: _____ Various Defendants _____

Place of Accident, Incident or Transaction: _____ Alleged exposures occurred inthe US Navy and in Bethlehem, Pennsylvania _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/01/2022     *Must sign here*     62832

     *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    *(Please specify):* Fed Off. Jurisdiction 28 USC Section 1442 (

**B.**   *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Tiffany Faye Turner , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 07/01/2022     *Sign here if applicable*     62832

     *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG VOLLMAN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  CIVIL ACTION No. _____ |
| | * |
| AIR and LIQUID SYSTEMS CORPORATION, | * |
| as successor by merger to Buffalo Pumps | * |
| ADVANCED THERMAL HYDRONICS, LLC., | * |
| f/k/a Reed Financial Inc., Individually and as | * |
| successor to The Hydrotherm Corporation | * |
| AMERICAN BILTRITE INC., | * |
| AMERICAN PREMIER UNDERWRITERS, | * |
| Individually and as successor-in-interest to | * |
| Hydrotherm Corp. | * |
| A.O. SMITH CORPORATION, | * |
| AURORA PUMP COMPANY | * |
| n/k/a Pentair Inc., Aurora Pump | * |
| AUTOMATION INDUSTRIES, INC., | * |
| Individually and as successor to | * |
| Hydrotherm Inc. | * |
| BAYER CROPSCIENCE, INC., | * |
| f/k/a Amchem Products, Inc., | * |
| BRAND INSULATIONS, INC., | * |
| BURNHAM, LLC, | * |
| Successor by merger and f/k/a Burnham Corp. | * |
| CARRIER CORPORATION, | * |
| CLEAVER BROOKS, INC., | * |
| COLUMBUS MCKINNON CORPORATION, | * |
| COMPUDYNE, LLC, | * |
| COOPER INDUSTRIES LLC, individually and | * |
| as successor-in-interest to Crouse-Hinds Co., | * |
| CRANE COMPANY, | * |
| DAP PRODUCTS, | * |
| EATON CORPORATION, as successor-in- | * |
| interest to Cutler-Hammer, Inc., | * |
| n/k/a Eaton Electrical, Inc., | * |
| EASCO BOILER CORPORATION, | * |
| f/k/a Federal Boilers | * |

FLEXIBLE TECHNOLOGIES, INC.                          *
f/k/a Automation Industries,                         *
Individually and as successor to                     *
Hydrotherm Inc.,                                     *
FMC CORPORATION,                                     *
On behalf of its former Construction                 *
Equip. Group and its former Peerless Pump,           *
Northern Pump and Stearns Businesses,                *
FORD MOTOR COMPANY,                                  *
FOSTER -WHEELER LLC, (survivor to a                  *
merger with Foster Wheeler Corporation,              *
and its subsidiaries)                                *
GENERAL ELECTRIC COMPANY,                            *
GENUINE PARTS CO., a/k/a Napa Auto Parts,            *
GOODRICH CORPORATION,                                *
THE GOODYEAR TIRE & RUBBER                           *
COMPANY,                                             *
GOULDS PUMPS, LLC f/k/a Goulds                       *
Pumps, Inc.,                                         *
GREENE, TWEED & COMPANY, INC.,                       *
GTE OPERATIONS SUPPORT, INC.,                        *
successor in interest to GTE Products                *
of Connecticut Corporation, o/b/o                    *
Clark Controller, Co.,                               *
HAJOCA CORP.,                                        *
H.B. FULLER COMPANY,                                 *
f/k/a Amchem Products, Inc.                          *
f/k/a Benjamin Foster,                               *
H.B. SMITH COMPANY, INC.,                            *
A division of Mestek, Inc.,                          *
HOBART BROTHERS COMPANY                              *
HONEYWELL INC.,                                      *
HONEYWELL INTERNATIONAL INC.,                        *
As successor in interest to Allied Signal, Inc.,     *
As Successor to Bendix Corporation                   *
IMO INDUSTRIES, INC.,                                *
Individually and as Parent Company of                *
And/or successor to Delaval Pump & Steam             *
Turbine Co.,                                          *
INDUSTRIAL HOLDINGS CORPORATION                      *
f/k/a Carborundum Company,                           *
J.H. FRANCE REFRACTORIES CO.,                        *
JOHN CRANE, INC.,                                    *
JOHN WOOD COMPANY, LLC,                              *

KEELER/DORR-OLIVER BOILER                               *
COMPANY,                                                *
KERITE LLC,                                             *
THE LINCOLN ELECTRIC COMPANY                            *
LINDE. LLC,                                             *
LOCKHEED MARTIN CORPORATION,                            *
f/k/a Martin Marietta Corporation,                      *
MARTIN MARIETTA MATERIALS, INC.,                        *
METROPOLITAN LIFE INSURANCE                             *
COMPANY,                                                *
MOBIL CORPORATION,                                      *
Parent of Mobil Oil Corporation,                        *
MORGAN ENGINEERING f/k/a Morgan Crane,                  *
MORSE TEC LLC,                                          *
f/k/a BorgWarner Morse TEC, LLC, and                    *
successor-by-merger to                                  *
Borg-Warner Corporation,                                *
NORCA INDUSTRIAL COMPANY, LLC,                          *
THE OKONITE COMPANY,                                    *
PARAMOUNT GLOBAL,                                       *
f/k/a Viacom/CBS Inc. & CBS Corp., a                    *
Delaware Corp., f/k/a Viacom Inc., successor            *
by merger to CBS Corporation, a Pennsylvania            *
Corporation f/k/a Westinghouse Electric                 *
Corporation,                                            *
THE PEP BOYS-MANNY, MOE &                               *
JACK,LLC,                                               *
PNEUMO-ABEX LLC,                                        *
POLLOCK RESEARCH & DESIGN, INC.,                        *
f/k/a Reading Crane and Engineering Co.,                *
REUNION INDUSTRIES INC., f/k/a Alliance                 *
Machines,                                               *
RSCC WIRE & CABLE COMPANY, INC.,                        *
SAINT-GOBAIN ABRASIVES, INC., f/k/a                     *
Norton Company,                                         *
SCHNEIDER ELECTRIC USA, INC., f/k/a                     *
Square D Company,                                       *
TEREX CORPORATION,                                      *
UNION CARBIDE CORPORATION,                              *
VELAN VALVE CORP.                                       *
WARREN PUMPS, LLC,                                      *
MARLEY-WYLAIN COMPANY,                                  *

3

WEIL PUMP COMPANY,                *
WILCO USA, LLC, individually and as       *
successor-in-interest to Weil Pump Company,   *
ZURN INDUSTRIES, LLC,             *

## NOTICE OF REMOVAL OF ACTION

Pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, Defendant John Crane Inc. ("JCI") hereby removes this action from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania. JCI provides the following short and plain statement of the grounds for removal:

## I. BACKGROUND FACTS

1.      JCI was served with a summons and complaint on June 2, 2022, in connection with the civil action pending before the Court of Common Pleas of Philadelphia County, Pennsylvania, Case Number 220502770. (Summons and Complaint attached collectively as **Exhibit A**.)

2.      Plaintiff, Greg Vollman ("Plaintiff"), alleges—albeit in a Short-Form Complaint ("SFC") that does not comply with Federal Rule of Civil Procedure 8—that his mesothelioma was caused by his work with and around a wide variety of asbestos-containing products, including JCI gasket and packing products, while serving as a Boiler Tech in the United States Navy ("U.S. Navy" or "Navy") during an undefined period of time falling somewhere between the years 1972 and 1990. (Ex. A (Compl.) ¶¶ 21-22, 24-26.)

3.      Plaintiff's causes of action against JCI—incorporated by reference from another, longer-form complaint filed years ago in Philadelphia County—sound primarily in negligence, strict liability, and breach of warranty based on (among other alleged theories) design defect, failure to warn, and failure to test. (*See* Ex. A (Compl.) ¶¶ 1-2.)

4

## II. U.S. NAVY SPECIFICATIONS GOVERNING GASKETS AND PACKING

4.      At all times relevant to Plaintiff's claims, the U.S. Navy observed a very particular process that had to be followed by product suppliers and manufacturers, like JCI, in order to sell products to the U.S. Navy for use on U.S. Navy ships. The U.S. Navy required that any product it purchased be qualified and approved before the purchase. Accordingly, to sell a product to the U.S. Navy, JCI would have had to go through certain steps to have the product placed on the U.S. Navy's Qualified Products List ("QPL"), a list designating products as eligible for bidding on naval contracts.

5.      At all times relevant to Plaintiff's claims, to place a bid to sell a product to the U.S. Navy, JCI would first obtain the Navy's applicable Military Specification ("Mil-Spec"). Then, JCI would inform the Navy of its intention to bid on that specification.

6.      Once JCI had developed a product that conformed to the Navy's specifications, the Navy required JCI to test the product using an independent laboratory and submit those test results to the Navy. The Navy also required that the product be submitted to the Navy for the Navy's own testing. Only after the product had satisfied the required testing could it be placed on the Navy's QPL. Once a product won a bid, it could then be sold to the Navy.

### A.      *Specifications Regarding Gaskets Used on Navy Ships*

7.      At all times relevant to Plaintiff's claims, any JCI compressed asbestos-containing sheet gasket material sold to the U.S. Navy (supplied in only very small quantities) would have conformed with reasonably precise military specifications covering every aspect of the

5

composition, marking and labeling of the product, appearance, technical performance, and testing requirements.[1]

8.      During the time relevant to Plaintiff's claims, compressed asbestos-containing sheet gasket material was governed by Military Specification MIL-A-17472B[2], attached as **Exhibit B**. This specification expressly required—based on decades of research by the Navy itself dating back to the first score of the twentieth century—the asbestos sheet to contain a minimum amount ("not less than 70 percent") of chrysotile asbestos.  (Ex. B ¶¶ 3.2.1, 3.4.)

9.      Included in this Mil-Spec was a requirement for all writings and markings to appear on the face of the product. Specifically, Paragraph 3.11, entitled "Branding," in MIL-A-17472B provided that the face of the gasket was to be "plainly marked" with the "manufacturer's name, brand identification, and symbol 2150."  (Ex. B ¶ 3.11.)  No other writings or markings—including warnings of any kind—were permitted.

10.     Likewise, Paragraph 5.2 set forth requirements for all writings and markings that were permitted on shipping containers for gasket material. The documents incorporated by reference into Paragraph 5.2 did not include warnings for asbestos-containing products. Because the Navy assumed responsibility for promulgation of all warnings, and because one of the Navy's objectives was ensuring uniformity in labeling across the same products, the absence of any warning for asbestos incorporated into these paragraphs meant that such a warning was not

---

[1] The only JCI sheet gasket material ever appearing on the Navy's QPL—although not during many of the years referenced in the SFC —was style 2150.

[2] Federal Specification HH-P-46D superseded MIL-A-17472B on September 5, 1974. The arguments made here regarding MIL-A-17472B apply with equal force to HH-P-46D (and to revision E of HH-P-46 in 1975).

6

permitted, prior to July 1, 1980 (*see infra* ¶¶ 17, 19), on the shipping containers for compressed

asbestos sheet gasket material.

11.    MIL-A-17472B likewise defined and delimited mandatory detailed and

comprehensive testing procedures in Section 4.5. (Ex. B ¶ 4.5.) The Navy's qualification process

for inclusion of asbestos-containing gaskets on the applicable QPL, which included these

mandatory testing procedures, is reflected in paragraphs 3.1 and 4.2 of Mil-Spec MIL-A-17472B.

(Ex. B ¶¶ 3.1, 4.2.)  The gaskets JCI sold to the Navy were required to—and did—conform to all

of the applicable specifications for compressed asbestos sheet gasket material during the years at

issue.

### B.    *Specifications Regarding Packing Used on Navy Ships*

12.    The level of oversight, control, testing, and detailed specifications described above

for gasket material applied with equal force to the packing products sold by JCI to the Navy.

Indeed, Mil-Specs for packing during the period relevant to Plaintiff's claim contained precise

language covering every aspect of the composition (expressly including asbestos), construction,

size, performance testing, temperature rating, pressure rating, packaging, marking, and other

characteristics of the particular style of packing at issue. (*See* MIL-P-17303C, attached as **Exhibit

C**).

13.    For example, MIL-P-17303 strictly governed the composition of the packing

supplied to the Navy.  Paragraph 3.2 provided that the "composition" of the packing "shall conform

to that of the sample submitted for qualification."  (Ex. C ¶ 3.2.) When it was promulgated by the

Navy in 1952[3], MIL-P-17303 replaced what had been Navy Department Specification ("ND-SPEC") 33-P-25, which had been in place since 1931. The replacement of ND-SPECs with Mil-Specs was a function of a post-war movement away from branch-specific specifications to specifications that could be used across the various military branches.

14.     ND-SPEC 33-P-25 expressly required that all packing contain chrysotile asbestos. (Sept. 1, 1931, ND-SPEC 33-P-25, attached as **Exhibit D**, at §§ D, E.)  As such, the packing supplied by JCI that was approved for use by the Navy under ND-SPEC 33-P-25 was required to contain asbestos.

15.     When MIL-P-17303C was promulgated, the products that had previously been approved by the Navy under ND-SPEC 33-P-25 were carried forward as the "approved" products under MIL-P-17303C.  This is reflected in the QPL for MIL-P-17303C, reflecting dates of approved product testing (in the 1930s) that tied back to ND-SPEC 33-P-25. (*See*, *e.g.*, April 6, 1970, QPL-17303-26, attached as **Exhibit E**, at 1, identifying "EES"—the Navy's Engineering Experiment Station at Annapolis—test results from the 1930s.)

16.     Thus, in promulgating MIL-P-17303C, the Navy required the continued use of the same asbestos-containing packings that had been required for decades under ND-SPEC 33-P-25. JCI was not free to use non-asbestos packing under MIL-P-17303C.  Before such a product could be used, it would have to be subjected to the testing required in the Mil-Spec. Only after such testing would the Navy then have decided whether to approve use of the product, a decision that was completely within the Navy's discretion.

---

[3] Between 1952 and October 14, 1955 (the date of Exhibit C), MIL-P-17303 was amended in ways not relevant here.

17.     Further, MIL-P-17303C included requirements for all writings and markings (which were only permitted on containers and not on the spools themselves) that were to appear on the product.  (Ex. C ¶ 5.3.)  No other writings or markings (including warnings of any kind) were permitted.  Prior to July 1, 1980, these writings and markings never included an asbestos warning. For the same reasons described above for gaskets, warnings on packing containers were strictly controlled by the Navy and did not allow for an asbestos warning prior to July 1, 1980.

18.     Like MIL-A-17472B for gaskets, MIL-P-17303C set forth mandatory detailed and comprehensive testing procedures for packing in the paragraph entitled "4.4 Inspection and tests." (Ex. C ¶ 4.4.)

19.     On July 1, 1980, the Military Standard governing the labeling of containers and packages for gaskets and packing was amended to call for a specific asbestos warning.  In response, JCI provided warnings as strictly prescribed by the Navy.

20.     At all times relevant to Plaintiff's claims, JCI complied with all reasonably precise specifications, including product composition, labeling requirements, and testing protocols, set forth in the specifications applicable to the gasket and packing products it sold to the U.S. Navy.

21.      The U.S. Navy inspected goods supplied by JCI both at JCI's facilities and at the point of receipt by the Navy. These inspections specifically included review for compliance with marking and labeling requirements. The Navy never rejected or returned any shipment of products from JCI for failure to include an asbestos warning label. JCI never received any correspondence or other communication from the Navy instructing that JCI's shipments of products were required to include such warnings. There was never a cessation of the business relationship between the Navy and JCI over failure to include asbestos warnings on products.

9

22. At all times relevant to Plaintiff's claims in this lawsuit, the United States Government, including the U.S. Navy—as one of the world's largest consumers of asbestos containing products—possessed knowledge regarding the dangers of asbestos that was superior to that of its equipment and product suppliers, including JCI. In fact, the Navy's knowledge of asbestos hazards dates back to the early 1920s, before JCI was even approved to sell products to the Navy.

### III. FEDERAL OFFICER REMOVAL (28 U.S.C. § 1442(a)(1))

23. Removal is proper under 28 U.S.C. § 1442(a)(1) when facts are disclosed establishing that: (1) the removing defendant is a person within the meaning of the statute; (2) it performed the complained of action at the direction of a federal officer and under color of federal office; (3) there is a causal nexus between the defendant's actions and the plaintiff's claims; and (4) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 123-135 (1989); *Papp v. Fore-Kast Sales Co.*, 824 F.3d 805, 812 (3rd Cir. 2016); 28 U.S.C. § 1442(a)(1). JCI meets all four elements and is therefore entitled to remove this action pursuant to the federal officer removal statute.

24. First, as a corporation, JCI is a "person" for purposes of 28 U.S.C. § 1442(a)(1). *Papp,* 824 F.3d at 812.

25. Second, to the extent JCI supplied asbestos-containing gasket and packing material, it was at the direction of a federal officer, the United States Government, and under color of federal office. The materials at issue were supplied pursuant to military procurement contracts with the United States Government and in compliance with detailed design, testing, and labeling specifications issued and approved by the Government. These specifications dictated the performance testing and material composition of the materials, including the requirement that such

material contain asbestos fibers. (Ex. B (MIL-A-17472B) ¶¶ 3.1-3.4 (gaskets); Ex. C (MIL-P-17303C) ¶¶ 3.1, 3.9.2 (packing).)

26.     These specifications dictated the writings and markings required and allowed to be placed on the materials. (Ex. B (MIL-A-17472B) ¶¶ 3.11, 5.2 (gaskets); Ex. C (MIL-P-17303C) ¶ 5.3 (packing).)  The design, manufacture, testing, labeling, and shipment of such materials were subject to close, detailed, and ongoing supervision and control of the United States Government and its officers. The Government exercised discretion and approval authority over the products supplied by JCI. JCI complied with all of the United States Government's specifications. And, to the extent of any alleged hazards associated with gasket and packing materials, there were no dangers known to JCI that were not known to the United States. *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000); *accord Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014); *Ruppel v. CBS* Corp, 701 F.3d 1176, 1186 (7th Cir. 2012); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (derivative sovereign immunity defense applies so long as the contractor can demonstrate that it complied with the Government's specifications regardless of the subject matter of the contract).

27.     JCI's supply of gasket and packing materials under the control, direction, specification, and supervision of the Government thus satisfies the "acting under" requirement, which, like federal officer removal generally, "is 'broad' and is to be 'liberally construe[d]' in favor of the entity seeking removal.'"  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).

28.     For purposes of federal officer removal, federal appellate case law is clear that military contractors were "acting under a federal officer" in relation to the design, manufacture, and supply of equipment to the United States Government.  *See, e.g., Papp*, 842 F.3d at 812 (*citing*

11

*Ruppel,* 701 F.3d at 1184-1186). Indeed, JCI could not change the design or provide additional language—including warning labels—on the gaskets and packing without prior Government authorization. Moreover, not only did JCI's acquisition of Government approval for any design change require strict compliance with the Government's formal and detailed change process procedures, but the Government retained absolute authority at all times to accept, reject, or modify any aspect of a military government contractor's requested change proposal. Similarly, JCI could not change the testing protocol that the gasket and packing material was subjected to because, pursuant to the clear language of the specifications, the testing was to be conducted in facilities approved by the Government and done in accordance with the Government's protocol.

29.     Third, there is a causal nexus between JCI's alleged actions in supplying the gaskets and packing and Plaintiff's claim that his mesothelioma was caused by the asbestos-containing gaskets and packing JCI supplied to the U.S. Navy pursuant to and in strict adherence to applicable government specifications. In assessing whether a causal nexus exists, the Court credits the defendant's theory of the case. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *Leite v. Crane Co.,* 749 F.3d 1117, 1124 (9th Cir. 2014); *Isaacson v. Dow Chem. Co*., 517 F.3d 129, 137 (2nd Cir. 2008).

30.     For this requirement, the federal officer removal has been broadened to include not only causally connected actions under color of federal officer, but also to include *connected* or *associated* acts. *Papp*, 842 F.3d at 813.  Here, a nexus exists because the very acts that form the basis of Plaintiff's claims—JCI's supply of asbestos-containing products to the U.S. Navy for use on Navy ships and its alleged failure to warn about asbestos hazards—are acts that JCI performed in accordance and compliance with directions from the Navy. *Ruppel,* 701 F.3d at 1184-1186; *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d 387, 396-397 (5th Cir. 1998) (government

12

contractor who supplied dangerous herbicide Government used to conduct war could remove product liability actions pursuant to federal officer removal statute).

31.     Fourth, JCI asserts a colorable federal defense, namely the "government contractor" defense set forth in *Boyle v. United Technologies, Inc*., 487 U.S. 500 (1988) and its progeny.  The government contractor defense applies to Plaintiff's failure-to-warn claims, failure to test, and any design defect claims in that: (1) the Government approved specifications for the design and labeling of gaskets and packing; (2) JCI complied with these specifications, and (3) there were no health hazards associated with asbestos generally, or asbestos-containing gaskets and packing material specifically, of which JCI was aware and the Government was not.  *See Boyle*, 487 U.S. at 512-513; *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Miller*, 275 F.3d at 423; *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438-39 (5th Cir. 2000); *accord Sawyer*, 860 F.3d at 259; *Ruppel,* 701 F.3d at 1188; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995).

32.     JCI also is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W. A. Ross Constr. Co*., 309 U.S. 18, 20-21 (1940), clarified most recently by *Campbell-Ewald Co.*, *supra*.  In *Yearsley*, the Court established that a government contractor acting at the direction and authorization of a government officer is immune from suit based on performance of the government contract.  Thus, to establish that defense, JCI ultimately will have to prove that it supplied its asbestos-containing products to the Navy as authorized and directed by the Government.  *Campbell-Ewald Co*., 136 S. Ct. at 666; *Yearsley*, 309 U.S. at 20-21.  *Yearsley* is satisfied here because the acts complained of were performed at the direction of government

officers acting under government authorization, and if the Government had performed those acts directly, it would be immune from suit.

33.     At this stage, to assert a colorable defense, a defendant is required only to identify facts which, viewed in the light most favorable to the defendant, would establish a defense under *Boyle*, *Ruppel*, or *Yearsley/Campbell-Ewald* at trial, and "need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). "Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection." *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999). To be "colorable," the defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court. *Willingham*, 395 U.S. at 407. Under identified facts similar to those here, federal courts consistently have denied motions to remand state law claims removed under the government contractor defense. *See Papp*, 842 F.3d at 809; *Ruppel,* 701 F.3d at 1178.

34.     Pursuant to 28 U.S.C. § 1446(b)(1), JCI has filed a notice of removal within 30 days of service of the summons upon JCI.

## IV. JURISDICTION

35.     Removal of this action is proper under 28 U.S.C. § 1442. Consistent with the short and plain statement of the law and facts set forth above, the federal district courts have original jurisdiction over the subject matter of this suit under 28 U.S.C. § 1442(a)(1) because JCI was acting under an officer or agency of the United States Government in relation to any claims asserted against JCI and JCI can state at least a colorable defense under federal law to any such claims. *See Papp*, 842 F.3d at 809.

36.     Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.

37.     The Court of Common Pleas of Philadelphia County, Pennsylvania is located within the judicial district overseen by the United States District Court for the Eastern District of Pennsylvania, making venue proper. *See* 28 U.S.C. §§ 1332(a)(3) and 1441(a).

## V. PROCEDURAL COMPLIANCE

38.     JCI is not required to obtain the consent of any other defendants to remove this action in its entirety under section 1442(a)(1).  *Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin Agency*, 2005 U.S. Dist. LEXIS 234,* 6, 2005 WL 44524 (E.D. Pa. 2005) (*citing Akin v. Ashland Chem. Co.*, 156 F.3d 1030,1034 (10th Cir. 1998); *Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992); *Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.*, 644 F.2d 1310, 1314-15 (9th Cir. 1981); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960); *see also* 14C Wright, Miller & Cooper, Federal Practice and Procedure § 3727, at 166-68 (3d ed. 1998)).

39.     As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon JCI are being filed and are attached here as **Exhibit F**.

40.     Pursuant to 28 U.S.C. § 1446(d), JCI is filing written notice of this Notice of Removal with the Court of Common Pleas of Philadelphia County, Pennsylvania concurrently with the filing of this Notice of Removal and will serve the same on counsel of record.  A copy of the Notice of Filing Notice of Removal (without exhibits) is attached as **Exhibit G**.

41.     A court cannot remand a properly removed case for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Prods., Inc. v. Hermansdorfer* (1976) 423 U.S. 336.  The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is not narrow nor limited, and it should not be

15

frustrated by a narrow or grudging interpretation. *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

42.    If Plaintiff files a motion to remand this action, JCI respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

43.    JCI reserves all of its defenses.

**WHEREFORE**, Defendant JCI requests that this Court assume jurisdiction over this matter on removal from the Court of Common Pleas of Philadelphia County, Pennsylvania.

Dated: July 1, 2022

Respectfully Submitted,

**JOHN CRANE INC.**

By:    */s/Tiffany Turner*
        Attorneys for Defendant
        **John Crane Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2022, I electronically filed the foregoing Notice of Removal with the Clerk of Court using the CM/ECF system.

*/s/ Tiffany Turner*

# EXHIBIT A

LAW OFFICES OF PETER G. ANGELOS, P.C.
Firm I.D. #99975
Jason Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Lauren S. Linsenbach, Esquire
PA S. Ct. I.D. No. 326818
Governor's Plaza South
2001 N. Front St,
Bldg 3, Suite 330
Harrisburg, PA 17102
(717) 232-1886

*Filed and Attested by the
Office of Judicial Records
31 MAY 2022 03:48 pm*

GREG VOLLMAN
302 N. Jerome Street
Allentown, PA 18109

                Plaintiff,

VS.

AIR & LIQUID SYSTEMS CORPORATION
as successor by merger to Buffalo Pumps
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110, *et al.*

                Defendants

| | |
|---|---|
| * | IN THE COURT OF |
| * | COMMON PLEAS OF |
| * | PHILADELPHIA COUNTY, |
| * | PENNSYLVANIA |
| * | |
| * | |
| * | ___MAY___ TERM, 2022 |
| * | |
| * | No. __2770__ |
| * | |
| * | Short Form Complaint |
| * | PERSONAL INJURY |
| * | |
| * | CIVIL ACTION - |
| * | ASBESTOS - 2090 |
| * | |
| * | JURY TRIAL DEMANDED |

NOTICE
YOU HAVE BEEN SUED IN COURT. If you
wish to defend against the claims set forth
in the following pages, you must take
action within twenty (20) days after this
Complaint and Notice are served, by
entering a written appearance personally or
by attorney and filing in writing with the
Court your defenses or objections to the
claims set forth against you. You are
warned that if you fail to do so the case
may proceed without you and a judgment may
be entered against you by the Court without
further notice for any money claimed in the
Complaint or for any other claim or relief
requested by the Plaintiff. You may lose
money or property or other rights important
to you.

YOU SHOULD TAKE THIS PAPER TO YOUR
LAWYER AT ONCE. IF YOU DO NOT HAVE A
LAWYER OR CANNOT AFFORD ONE, GO TO OR
TELEPHONE THE OFFICE SET FORTH BELOW TO
FIND OUT WHERE YOU CAN GET LEGAL HELP.
THIS OFFICE CAN PROVIDE YOU WITH
INFORMATION ABOUT HIRING A LAWYER.
IF YOU CANNOT AFFORD TO HIRE A
LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE
YOU WITH INFORMATION ABOUT AGENCIES THAT
MAY OFFER SERVICES TO ELIGIBLE PERSONS AT A
REDUCED FEE OR NO FEE.
PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, PA 19107 Telephone: (215)
238-1701

AVISO
LE HAN DEMANDADO A USTED EN LA CORTE. Si
usted quiere defenderse de estas demandas
expuestas en las paginas siguientes, usted
tiene veinte (20) dias de plazo al partir
de la fecha de la demanda y la
notificacion. Hace falta ascentar una
comparencia escrita o en persona o con un
abogado y entregar a la corte en form
escrita sus defensas o sus objeciones a las
demandas en contra de su persona. Sea
avisado que si usted no se defiende, la
corte tomara medidas y puede continuar la
demanda en contra suya sin previo aviso o
notificacion. Ademas, la corte puede
decidir a favor del demandante y requiere
que usted cumpla con todas las provisiones
de esta demanda. Usted puede perder dinero
o sus propiedades u otros derechos
importantes para usted.
LLEVE ESTA DEMANDA A UN ABOGADO
INMEDIATEMENTE. SI NO TIENE ABOGADO O SI
NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL
SERVICIO, VAYA EN PERSONA O LLAME POR
TELEFONO A LA OFICINA CUYA DIRECCION SE
ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR
DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIACION DE LICENCIADOS DE FILADELFIA
One Reading Center
Philadelphia, PA 19107
Telefono: (215) 238-1701

Case ID: 220502770

LAW OFFICES OF PETER G. ANGELOS, P.C.
Firm I.D. #99975
Jason Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Lauren S. Linsenbach, Esquire
PA S. Ct. I.D. No. 326818
Governor's Plaza South
2001 N. Front St,
Bldg 3, Suite 330
Harrisburg, PA 17102
(717) 232-1886

*Filed and Attested by the Office of Judicial Records 31 ... pm*

| | | |
|---|---|---|
| GREG VOLLMAN | * | IN THE COURT OF |
| 302 N. Jerome Street | * | COMMON PLEAS OF |
| Allentown, PA 18109 | * | PHILADELPHIA COUNTY, |
| | * | PENNSYLVANIA |
| | * | |
| Plaintiff, | * | |
| | * | _____ TERM, 2022 |
| VS. | * | |
| | * | No. _____ |
| | * | |
| AIR & LIQUID SYSTEMS CORPORATION | * | Short Form Complaint |
| as successor by merger to Buffalo Pumps | * | PERSONAL INJURY |
| c/o Corporation Service Company | * | |
| 2595 Interstate Drive, Suite 103 | * | CIVIL ACTION - |
| Harrisburg, PA 17110, et al. | * | ASBESTOS - 2090 |
| | * | |
| Defendants | * | JURY TRIAL DEMANDED |

NOTICE

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint of for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, PA 19107 Telephone: (215) 238-1701

AVISO

LE HAN DEMANDADO A USTED EN LA CORTE. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en form escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATEMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIACION DE LICENCIADOS DE FILADELFIA
One Reading Center
Philadelphia, PA 19107
Telefono: (215) 238-1701

Case ID: 220502770

LAW OFFICES OF PETER G. ANGELOS, P.C.
Firm I.D. #99975
Jason B. Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Lauren S. Linsenbach, Esquire
PA S. Ct. I.D. No. 326818
Governor's Plaza South
2001 N. Front Street
Building 3, Suite 330
Harrisburg, PA 17102
(215) 864-0191

|  |  |  |
|---|---|---|
| Greg Vollman,<br>302 N. Jerome Street<br>Allentown, PA 18109 | * <br> * <br> * <br> * | IN THE COURT OF<br>COMMON PLEAS OF<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA |
|  | * <br> * <br> * | _____TERM, 2022 |
| Plaintiff, | * | |
|  | * | No. _____ |
| v. | * | |
|  | * | Short Form Complaint |
|  | * | PERSONAL INJURY |
| Air and Liquid Systems Corporation<br>as successor by merger to Buffalo Pumps<br>c/o Corporation Service Company<br>2595 Interstate Drive, Suite 103<br>Harrisburg, PA 17110 | * <br> * <br> * <br> * <br> * | CIVIL ACTION -<br>ASBESTOS - 2090<br><br>JURY TRIAL DEMANDED |
| and | * <br> * | |
| Advanced Thermal Hydronics, LLC.,<br>f/k/a Reed Financial, Inc., Individually and as<br>Successor to The Hydrotherm Corporation<br>c/o Cogency Global, Inc.<br>850 New Burton Road, Suite 201<br>Dover, Delaware 19904 | * <br> * <br> * <br> * <br> * <br> * | |
| and | * <br> * | |
| American Biltrite, Inc.<br>President/CEO/Resident Agent<br>57 River Street<br>Wellesley Hills, MA 02481 | * <br> * <br> * <br> * | |

Case ID: 220502770

and                                                    *

American Premier Underwriters,                         *
Individually and as Successor-in-Interest to           *
Hydrotherm Corp.                                       *
c/o United Agent Group, Inc.                           *
1001 State Street, #1400                               *
Erie, PA 16501                                         *
                                                       *
            and                                        *
                                                       *
A.O. Smith Corporation                                 *
The Prentice-Hall Corp. System, Inc.                   *
251 Little Falls Dr.                                   *
Wilmington, DE 19808                                   *
                                                       *
            and                                        *
                                                       *
Aurora Pump Company                                    *
n/k/a Pentair, Inc., Aurora Pump                       *
5500 Wayzata Blvd.                                     *
Suite 600                                              *
Minneapolis, MN 55416                                  *
                                                       *
            and                                        *
                                                       *
Automation Industries, Inc.                            *
Individually and as Successor to Hydrotherm, Inc.      *
c/o CT Corporation                                     *
Corporation Trust Center                               *
1209 N. Orange St.                                     *
Wilmington, DE 19801                                   *
                                                       *
            and                                        *
                                                       *
Bayer Cropscience, Inc.                                *
f/k/a Amchem Products, Inc.                            *
c/o Corporation Service Co.                            *
80 State Street                                        *
Albany, NY 12207-2543                                  *
                                                       *
            and                                        *
                                                       *
Brand Insulations, Inc.                                *
c/o CT Corporation System                              *
600 N. 2nd Street, Suite 401                           *

Harrisburg, PA 17101                      *
                                          *
        and                               *
                                          *
Burnham, LLC,                             *
Successor by Merger and f/k/a             *
Burnham Corp.                             *
1239 Harrisburg Pike                      *
Lancaster, PA 17603                       *
                                          *
        and                               *
                                          *
Carrier Corporation                       *
c/o United Agent Group                    *
3411 Silverside Rd.                       *
Tatnall Building #104                     *
Wilmington, DE 19810                      *
                                          *
        and                               *
                                          *
Cleaver Brooks, Inc.                      *
c/o Corporation Service Company           *
251 Little Falls Dr.                      *
Wilmington, DE 19808                      *
                                          *
        and                               *
                                          *
Columbus McKinnon Corporation             *
Attn: Legal Department                    *
205 Crosspoint Pkwy                       *
Getzville, NY 14068                       *
                                          *
        and                               *
                                          *
Compudyne, LLC,                           *
f/k/a Compudyne Corp.,                    *
Successor to York Shipley, Inc.           *
112 North Curry Street                    *
Carson City, NV 89703                     *
                                          *
        and                               *
                                          *
Cooper Industries LLC                     *
Individually and as Successor-in-Interest to   *
CROUSE-HINDS CO.                          *
c/o CT Corporation                        *

Corporation Trust Center                           *
1209 N. Orange Street                              *
Wilmington, DE 19801                               *
                                                   *
        and                                        *
                                                   *
Crane Company                                      *
100 First Stamford Place                           *
Stamford, CT 06902                                 *
                                                   *
        and                                        *
                                                   *
DAP Products                                       *
2400 Boston Street, Suite 200                      *
Baltimore, MD 21224                                *
                                                   *
        and                                        *
                                                   *
Eaton Corporation, as successor in-interest to     *
Cutler-Hammer, Inc.,                               *
n/k/a Eaton Electrical, Inc.                       *
c/o C.T. Corporation System                        *
600 N. 2nd Street, Suite 401                       *
Harrisburg, PA 17101                               *
                                                   *
        and                                        *
                                                   *
Easco Boiler Corporation                           *
f/k/a Federal Boilers                              *
1175 Leggett Ave.                                  *
Bronx, NY 10474                                    *
                                                   *
        and                                        *
                                                   *
Flexible Technologies, Inc., f/k/a                 *
Automation Industries, Individually and as         *
Successor to Hydrotherm, Inc.                      *
c/o CT Corporation,                                *
Corporation Trust Center                           *
1209 N. Orange Street                              *
Wilmington, DE 19801                               *
                                                   *
        and                                        *
                                                   *
FMC Corporation                                    *
On behalf of its former Construction Equip. Group  *

Case ID: 220502770

and its former Peerless Pump, Northern Pump          *
and Stearns Businesses                               *
c/o CT Corporation                                   *
Corporation Trust Center                             *
1209 N. Orange Street                                *
Wilmington, DE 19801                                 *
                                                     *
            and                                      *
                                                     *
Ford Motor Company                                   *
c/o C.T. Corporation                                 *
600 N. 2nd Street, Suite 104                         *
Harrisburg, PA 17101                                 *
                                                     *
            and                                      *
                                                     *
Foster Wheeler L.L.C. (survivor to a merger          *
with Foster Wheeler Corporation and                  *
its subsidiaries)                                    *
c/o United Agent Group                               *
3411 Silverside Road                                 *
Tatnall Building 104                                 *
Wilmington, DE 19810                                 *
                                                     *
            and                                      *
                                                     *
General Electric Company                             *
c/o C.T. Corporation Systems                         *
155 Federal Street, Suite 700                        *
Boston, MA 02110                                     *
                                                     *
            and                                      *
                                                     *
Genuine Parts Company                                *
a/k/a NAPA Auto Parts                                *
c/o CT Corporation System                            *
600 N. 2nd Street, Suite 401                         *
Harrisburg, PA 17101                                 *
                                                     *
            and                                      *
                                                     *
Goodrich Corporation                                 *
2730 W. Tyvola Road                                  *
Charlotte, NC 28217                                  *
                                                     *
            and                                      *

Case ID: 220502770

The Goodyear Tire & Rubber Company                    *
c/o Corporation Service Company                       *
251 Little Falls Dr.                                  *
Wilmington, DE 19808                                  *
                                                      *
        and                                           *
                                                      *
Goulds Pumps, LLC                                     *
f/k/a Goulds Pumps, Inc.                              *
c/o CT Corporation                                    *
Corporation Trust Center                              *
1209 N. Orange Street                                 *
Wilmington, DE 19801                                  *
                                                      *
        and                                           *
                                                      *
Greene, Tweed & Company, Inc.                         *
c/o Greene, Tweed NC, LLC                             *
227 West Trade Street, Suite 2170                     *
Charlotte, NC 28202                                   *
                                                      *
        and                                           *
                                                      *
GTE Operations Support, Inc.                          *
Successor in Interest to GTE Products of              *
Connecticut Corporation,                              *
o/b/o Clark Controller, Co.                           *
c/o CT Corporation, Corporation Trust Center          *
1209 N. Orange St.                                    *
Wilmington, DE 19801                                  *
                                                      *
        and                                           *
                                                      *
Hajoca Corp.                                          *
c/o Corporation Service Company                       *
2595 Interstate Dr., Suite 103                        *
Harrisburg, PA 17110                                  *
                                                      *
        and                                           *
                                                      *
HB Fuller Company                                     *
f/k/a Amchem Products, Inc.                           *
f/k/a Benjamin Foster                                 *
1200 Willow Lake Blvd.                                *
P.O. Box 64683                                        *
St. Paul, MN 55164-0683                               *

Case ID: 220502770

and                                                          *
                                                             *
                                                             *
H.B. Smith Company, Inc.,                                    *
A Division of Mestek, Inc.                                   *
47 Westfield Industrial Park Road                            *
Westfield, MA 01085                                          *
                                                             *
                                                             *
and                                                          *
                                                             *
Hobart Brothers Company                                      *
400 Trade Square E                                           *
Troy, OH 45373                                               *
                                                             *
                                                             *
and                                                          *
                                                             *
Honeywell, Inc.                                              *
c/o Corporation Service Company                              *
251 Little Falls Dr.                                         *
Wilmington, DE 19808                                         *
                                                             *
                                                             *
and                                                          *
                                                             *
Honeywell International, Inc., as Successor in               *
Interest to Allied Signal, Inc., as Successor to             *
Bendix Corporation                                           *
c/o Corporation Service Company                              *
251 Little Falls Dr.                                         *
Wilmington, DE 19808                                         *
                                                             *
                                                             *
and                                                          *
                                                             *
IMO Industries, Inc.                                         *
Individually and as Parent Company of                        *
and/or Successor to                                          *
DeLaval Pump & Steam Turbine Co.                             *
c/o CT Corporation                                           *
Corporation Trust Center                                     *
1209 N. Orange Street                                        *
Wilmington, DE 19801                                         *
                                                             *
                                                             *
and                                                          *
                                                             *
Industrial Holdings Corporation                              *
f/k/a Carborundum Company                                    *
c/o Prentice Hall Corporation                                *

Case ID: 220502770

80 State Street                                        *
Albany, NY 12207                                       *
                                                       *
        and                                            *
                                                       *
J.H. France Refractories Co.                           *
c/o Alan Parker, President                             *
Special Claims Services, Inc.                          *
790 Fairgrounds Rd., Suite 100                         *
Mount Vernon, Ohio 43050                               *
                                                       *
        and                                            *
                                                       *
John Crane, Inc.                                       *
c/o CT Corporation System                              *
600 N. 2nd Street, Suite 401                           *
Harrisburg, PA 17101                                   *
                                                       *
        and                                            *
                                                       *
John Wood Company, LLC                                 *
c/o Corporation Service Company                        *
251 Little Falls Dr.                                   *
Wilmington, DE 19808                                   *
                                                       *
        and                                            *
                                                       *
Keeler/Dorr-Oliver Boiler Company                      *
1201 N. Market St., Suite 900                          *
Wilmington, DE 19801                                   *
                                                       *
        and                                            *
                                                       *
Kerite LLC                                             *
c/o Corporation Service Co.                            *
251 Little Falls Dr.                                   *
Wilmington, DE 19808                                   *
                                                       *
        and                                            *
                                                       *
The Lincoln Electric Company                           *
22801 St. Clair Avenue                                 *
Cleveland, OH 44117                                    *
                                                       *
        and                                            *
                                                       *

Linde, LLC                                    *
f/k/a The BOC Group/Airco Division            *
200 Somerset Corporate Blvd, Ste. 7000        *
Bridgewater, NJ 08807                         *
                                              *
        and                                   *
                                              *
Lockheed Martin Corporation                   *
f/k/a Martin Marietta Corporation             *
6801 Rockledge Drive                          *
Bethesda, MD 20817                            *
                                              *
        and                                   *
                                              *
Martin Marietta Materials, Inc.               *
c/o CT Corporation System                     *
160 Mine Lake Ct, #200                        *
Raleigh, NC 27615                             *
                                              *
        and                                   *
                                              *
Metropolitan Life Insurance Company           *
c/o CT Corporation Systems                    *
600 N. 2nd Street, Suite 401                  *
Harrisburg, PA 17101                          *
                                              *
        and                                   *
                                              *
Mobil Corporation                             *
Parent of Mobil Oil Corporation               *
5959 Las Colinas Boulevard                    *
Irving, TX 75039                              *
                                              *
        and                                   *
                                              *
Morgan Engineering                            *
f/k/a Morgan Crane                            *
1049 South Mahoning Avenue                    *
Alliance, OH 44601                            *
                                              *
        and                                   *
                                              *
Morse Tec LLC, F/K/A                          *
Borg Warner Morse Tec LLC,                    *
And Successor-by-Merger to                    *
Borg Warner Corporation                       *

Case ID: 220502770

c/o CT Corporation                                              *
Corporation Trust Center                                        *
1209 N. Orange Street                                           *
Wilmington, DE 19801                                            *
                                                                *
     and                              *
                                                                *
Norca Industrial Company, LLC                                   *
One Hollow Lane                                                 *
Suite 200                                                       *
Lake Success, NY 11042                                          *
                                                                *
     and                              *
                                                                *
The Okonite Company                                             *
P.O. Box 340                                                    *
102 Hilltop Road                                                *
Ramsey, NJ 07446                                                *
                                                                *
     and                              *
                                                                *
Paramount Global                                                *
f/k/a Viacom/CBS Inc. & CBS Corp., a Delaware                   *
Corp., f/k/a Viacom, Inc., successor by merger to               *
CBS Corporation, a Pennsylvania corporation                     *
f/k/a Westinghouse Electric Corporation                         *
c/o Corporation Service Company                                 *
2595 Interstate Drive                                           *
Suite 103                                                       *
Harrisburg, PA 17110                                            *
                                                                *
     and                              *
                                                                *
The Pep Boys–Manny, Moe & Jack LLC                              *
c/o Corporation Service Company                                 *
251 Little Falls Dr.                                            *
Wilmington, DE 19808                                            *
                                                                *
     and                              *
                                                                *
Pneumo-Abex, LLC                                                *
c/o Corporation Service Co.                                     *
251 Little Falls Dr.                                            *
Wilmington, DE 19808                                            *
                                                                *
     and                              *

Pollock Research & Design, Inc.,                           *
f/k/a Reading Crane and Engineering Co.                     *
c/o Alan Gries, Director                                    *
Gibbons, PC                                                 *
One Logan Square, Suite 1210                                *
Philadelphia, PA 19103                                      *
                                                            *
        and                                                 *
                                                            *
Reunion Industries, Inc.                                    *
f/k/a Alliance Machines                                     *
c/o The Company Corporation                                 *
251 Little Falls Drive                                      *
Wilmington, DE 19808                                        *
                                                            *
        and                                                 *
                                                            *
RSCC Wire & Cable, Inc.                                     *
20 Bradley Park Road                                        *
East Granby, CT 06026                                       *
                                                            *
        and                                                 *
                                                            *
Saint-Gobain Abrasives, Inc.                                *
f/k/a Norton Company                                        *
1 New Bond Street                                           *
Worcester, MA 01615                                         *
                                                            *
        and                                                 *
                                                            *
Schneider Electric USA, Inc.                                *
f/k/a Square D Company                                      *
200 N. Martingale Road, Suite 100                           *
Schaumburg, IL 60173                                        *
                                                            *
        and                                                 *
                                                            *
Terex Corporation                                           *
c/o Corporation Service Company                             *
251 Little Falls Drive                                      *
Wilmington, DE 19808                                        *
                                                            *
        and                                                 *
                                                            *
Union Carbide Corporation                                   *
c/o C.T. Corporation Systems                                *

600 N. 2nd Street, Suite 401        *
Harrisburg, PA 17101        *
                 *
    and                *
                 *
Velan Valve Corp        *
c/o Corporation Service Company    *
251 Little Falls Drive,        *
Wilmington, DE 19808        *
                 *
    and                *
                 *
Warren Pumps, LLC        *
c/o CT Corporation        *
155 Federal St., Suite 700        *
Boston, MA 02110        *
                 *
    and                *
                 *
Marley-Wylain Company,        *
500 Blaine Street        *
Michigan City, IN 46360-2388    *
                 *
    and                *
                 *
Weil Pump Company        *
6337 Western Road        *
Cedarburg, WI 53012        *
                 *
    and                
                 *
Wilo USA, LLC, Individually and as  *
Successor-in-Interest to        *
Weil Pump Company        *
c/o Corporation Service Company    *
251 Little Falls Drive,        *
Wilmington, DE 19808        *
                 *
    and                *
                 *
Zurn Industries, LLC        *
c/o CT Corporation        *
Corporation Trust Center        *
1209 N. Orange Street        *
Wilmington, DE 19801        *
                 *

             *

Defendants.        *

## SHORT FORM COMPLAINT

   AND NOW comes Greg Vollman, by and through his attorneys Jason B. Duncan,

Gregory N. Bunitsky, Lauren S. Linsenbach and the Law Offices of Peter Angelos, P.C. and files

this Complaint and in support thereof aver the following:

1.  Plaintiff incorporates by reference against defendants all the allegations of all the

    Complaints filed in Joan Nealy, Executrix of the Estate of Harry Platt v. Abex

    Corporation, et al., Philadelphia C.P. May Term, 1985, No. 2678, Rafael and Cecilia

    Montero v. Abex Corporation, et. al., Philadelphia C.P. July Term 1986, and in the

    Plaintiff's Master Long Form Complaint in Re:  Asbestos Litigation in Philadelphia

    Court of Common Pleas, filed as of October Term 1986, No. 8610-0001 as though set

    forth in its complete text.  Pursuant to an Order dated July 30, 1986, and signed by the

    Honorable Richard B. Klein and the Honorable Edward J. Blake, the following short

    form complaint is utilized in this asbestos action.

2.  All allegations against defendants named in this lawsuit which were made in the

    Complaints filed in the lawsuits annotated above or in the Master Complaint are

    incorporated herein by reference.

3.  Plaintiff would also name as defendants the Johns-Manville Corporation, the Johns

    Manville Sales Corporation, A.P. Green, ACandS, Inc., Babcock & Wilcox, Baldwin

    Ehret Hill, UNARCO, Amatex Corporation, Forty Eight Insulators Incorporated, Wallace

    and Gale Company, Flintkote, Nicolet Industries, Pacor, Inc., Raymark Industries Inc.,

    Raymark Corporation and Raytech, DI Distributors Inc. f/k/a Delaware Insulation

Case ID: 220502770

Company, Inc., Carey Canada, CertainTeed Corporation, Celotex Corporation, Eagle
Picher Industries, Inc., Keene Corporation, Rock Wool Manufacturing Co., H.K. Porter
Company, Inc., Pittsburgh Corning Corporation, Asbestos Claims Management
Corporation f/k/a National Gypsum, GI Holdings, Inc. f/k/a GAF Corporation,
Congoleum Corporation, Owens Corning, Fibreboard Corporation, Armstrong World
Industries, Inc., W.R. Grace & Co. - Conn., United States Gypsum Company, U.S.
Mineral Products, T&N Plc., AC&S, Inc., Chrysler LLC, f/k/a Daimler Chrysler
Corporation, General Motors Corporation, Durabla Mfg. Company, Chesterton
Manufacturing Co., Garlock Incorporated, Garlock Sealing Technologies, The Anchor
Packing Company, Leslie Controls, Inc., Standco Industries, Inc. f/k/a Standard Brake
Lining individually and as successor-in-interest to Sterling Packing and Gasket
Company, Inc., and Bondex International, Inc.; George V. Hamilton, Inc; Georgia-
Pacific, Kaiser Gypsum, Ferro Engineering Division of On Marine Services Company,
LLC; Owens Illinois, Inc., f/k/a Owens-Illinois Glass Co.; Sears Roebuck; Maremont
Corporation; Dana Corporation; Ingersoll-Rand Co; Trane Company; Aldrich Pump,
LLC; Murray Boiler, LLC; American Standard, Inc.; OakFabco, Inc.; and General
Refractories.; however, each of these potential defendants has filed for relief or been
forced into involuntary bankruptcy under Chapter 11 of the Bankruptcy Code and,
pursuant to 11 U.S.C. Section 362, the institution of actions against these companies is
stayed.  Plaintiff would have brought suit against the companies enumerated in this
paragraph but for the automatic stay.

4.    Defendant Air & Liquid Systems Corporation, successor-by-merger to Buffalo Pumps is
a corporation manufactured, distributed, constructed, and/or supplied pumps and other

equipment which required and/or incorporated the use of asbestos-containing gaskets and packing.

5.     Defendant, Bayer CropScience, Inc., successor to Aventis CropScience, USA, Inc., (f/k/a Rhone Poulenc, Inc. f/k/a UCAR Corporation, f/k/a Amchem Products, Inc.) is a corporation that has and continues to do business at 2 T.W. Alexander Drive, Research Park, Durham, NC 27709.  At all times material hereto Bayer CropScience, Inc., successor to Aventis Cropscience, USA, Inc., and/or its predecessors and subsidiaries including Amchem Products, Inc., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiff worked and/or to the employers of plaintiff and/or to contractors on job sites on which plaintiff worked in close proximity to the use of asbestos/asbestos containing products, including, but not limited to Foster Mastic, C.I. Mastic, and other asbestos products.

6.     Defendant, Cleaver-Brooks, Inc., is a Delaware corporation with its principal place of business located in Lebanon, Pennsylvania.  At all times material hereto, Cleaver-Brooks, Inc. sold boilers, which were designed or intended to be insulated with asbestos.  Because the boilers failed to contain adequate and sufficient warnings of the possible hazards of asbestos, they were defective and the conduct of the defendant in selling those products without such warnings was negligent.  Since asbestos insulation on the boilers had to be removed, it was dangerous, and warnings should have been given.

7.     Defendant A.O. Smith Corporation manufactured, distributed, constructed, and/or supplied various asbestos products including, but not limited to, boilers and other containers which either came pre-packaged with asbestos products or required the installation of various asbestos products in their specifications, such as asbestos fire

Case ID: 220502770

brick, cement and rope.

8. Defendant, Genuine Auto Parts Company, is a Georgia Corporation with its principal place of business located at 2999 Circle 75 Parkway, Atlanta, Georgia 30339, which manufactured, produced, sold, supplied or distributed various asbestos containing products including, but not limited to, asbestos brakes, brake linings, clutch plates and other asbestos friction products.

9. Defendant Goodrich Corporation, sued in its corporate capacity, and as a successor in interest to inter alia, Goodrich B.F. Company and B.F. Goodrich with its registered office at 2730 W. Tyvola Road, Charlotte, NC 28217-4578. Defendant, Goodrich Corporation manufactured and/or sold, among other products, automotive brake products.

10. Defendant, Goodyear Tire and Rubber Company, is a Kentucky Corporation with its principal place of business located at 1144 E. Market Street, Akron, Ohio 44316. At all times material hereto, Goodyear Tire and Rubber Company manufactured, provided, marketed and sold asbestos containing gaskets and other asbestos containing products to and for Durabla Manufacturing Company, in the Commonwealth of Pennsylvania to which Plaintiff was exposed to the detriment of his health.

11. Defendant Cooper Industries LLC, successor-in-interest to Crouse Hinds Co. manufactured, distributed, constructed, and/or supplied various asbestos-containing construction machinery and equipment which incorporated the use of asbestos components including, but not limited to, brake pads and/or bands as well as asbestos containing explosion proof fittings and/or packing under the name Chico X.

11. Defendant, H.B. Smith Company, Inc., sued in its corporate capacity with its main office at 47 Westfield Industrial Park Road, Westfield, MA 01085. Defendant H.B. Smith

Company, Inc. manufactured, produced and sold, among other products, asbestos containing rope, wick, insulating cement, furnace cement, fill and millboard for use during installation of its boilers.

12. Defendant, Hobart Brothers, with its main office at 600 West Main Street, Troy, OH 45373. Defendant Hobart Brothers manufactured various welding and cutting equipment.

13. Defendant, General Electric Company, located at c/o CT Corporation Systems, 600 N. 2nd Street, Suite 401, Harrisburg, PA 17101, is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at One River Road, Schenectady, New York. At all times material hereto, General Electric Company, through its distributor, General Electric Supply Company, distributed various asbestos-containing products that were used around plaintiff, including, but not limited to, electrical products, vessels, turbines, brakes and machinery, all of which was or should have been foreseeable by GE.

14. Defendant The Lincoln Electric Co., with its registered address at c/o C.T. Corporation System, 1635 Market Street, Philadelphia, PA 19109. Defendant The Lincoln Electric Co. manufactured various welding and cutting equipment under the manufacturer/brand names of inter alia, Airco, Lincoln, Fleet-Weld and Shield-Arc.

15. Defendant FMC Corporation, manufactured, distributed, constructed, sold, and/or supplied pumps, cranes, excavators, industrial brakes and clutches that contained asbestos-containing components including asbestos packing, gaskets, friction disks, brake linings, and clutch facings. This defendant is successor in interest to and liable for Stearns Electric corporation products which manufactured industrial electric brakes with asbestos containing friction disks. Additionally, this defendant is successor in interest and

liable for Link-Belt Company/Construction Equipment Group which manufactured, supplied, constructed, or sold cranes, excavators and other industrial equipment that utilized asbestos-containing component parts including brakes, brake linings, and clutch facings. Further, FMC Corporation is the successor in interest and manufacturer and/or supplier of various pumps under the names "Northern" and "Peerless" which utilized asbestos-containing component parts including packing, insulation, gaskets, and valves.

16. Defendant the John Wood Company LLC manufactured, distributed, constructed, and/or supplied various asbestos containing products including, but not limited to, boilers and other containers which either came pre-packaged with asbestos products or required the installation of various asbestos products in their specifications, such as asbestos fire brick, cement, insulation, and rope.

17. Defendant, Paramount Global, f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom, Inc. successor by merger to CBS Corp., a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, c/o Asbestos Litigation Support Manager of Eckert Seamans Cherin & Mellott, LLC, Case Management and Technology Center, 600 Grant Street, 44th Floor, Pittsburgh, PA 15219. Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom, Inc. successor by merger to CBS Corp, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation manufactured various products, including but not limited to electrical products, gaskets, valves, packing, brakes, and machinery, which either contained asbestos or required the installation of asbestos.

18. Defendant, The Marley-Wylain Company, f/k/a Weil McLain Company, A division of the Marley Company, a wholly owned subsidiary of United Dominion Industries, Inc., CT Corporation System Philadelphia, Two Commerce Square, 2001 Market Street, 5th

Floor, Philadelphia PA 19103 which is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Kansas which is doing business in the Commonwealth of Pennsylvania. At all times material hereto, Defendant Weil-McLain, manufactured, produced and sold, either directly or indirectly, in the geographical area in which the plaintiffs worked and/or to the employers of plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

19.     a.     This Complaint alleges the claims of the following persons:

Plaintiff:

Name: Greg Vollman

Address: 302 N. Jerome Street, Allentown, PA 18109

Social Security No.: █████████

Date of Birth: ███████

20.     The defendants are those companies listed in the caption of this complaint.

21.     From approximately 1972 until 1990, Plaintiff was employed by: United States Navy as a Boiler Tech onboard the USS Semmes; Lehigh University in Bethlehem, PA as a Lead Boiler Operator; and by Bethlehem Steel, in Bethlehem, PA in the Steam, Water, and Air department as a boiler cleaner, mechanical helper, boiler operator, operator helper, air compressor operator, and a foreman and was exposed to the asbestos products of the defendants herein at each location.

22.     Plaintiff was exposed to various asbestos products while working as a boiler technician, steelworker, and boiler operator including but not limited to, the following: pipe covering, packing, insulation, sheet material, gaskets, cement, rope, cranes, crane brakes, crane components, block, compound, hot tops, pumps, boilers, compressors, valves, and

Case ID: 220502770

spray.

23.     Plaintiff was also exposed to asbestos containing automotive products while performing

personal automotive work throughout his lifetime, to include the replacement of asbestos

containing brakes, brake linings, clutches, friction material, and other automotive

products.

24.     The air Plaintiff breathed was contaminated with asbestos dust and fibers shed by

asbestos products sold, manufactured or distributed by the defendant corporations and

each of them during the period 1972-1990 while plaintiff was employed by the Navy,

Lehigh University, and Bethlehem Steel in Bethlehem, PA.

25.     Plaintiff first learned of the injury for which he is making his claim on or about

November 16, 2021.

26.     Plaintiff was first diagnosed as having asbestosis and mesothelioma on or about

November 16, 2021.

27.     A claim for lost wages is not asserted at this time.

WHEREFORE, Plaintiff demands judgment against all defendants named in this

Complaint, and each of them, in an amount in excess of fifty thousand dollars ($50,000.00) for

compensatory damages and in excess of fifty thousand dollars ($50,000.00) for punitive

damages, plus costs, attorney's fees and such further relief as may be appropriate.

## COUNT XII: Conspiracy

28.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the

paragraphs above with the same force and effect as if hereinafter set forth at length.

29.     Defendant, Metropolitan Life Insurance Company, is a mutual life insurance company

with its principal place of business in New York.  At all relevant times Defendant did

Case ID: 220502770

business in the State of New Jersey and the Commonwealth of Pennsylvania.

30. Defendant Metropolitan Life Insurance Company, in conjunction with various asbestos product manufacturers, distributors, and miners, individually and as an agent for asbestos product manufacturers, distributors and miners, aided, abetted, encouraged, counseled, assisted, agreed and conspired with asbestos product manufacturers, distributors and miners to injure Plaintiff by, among other things, providing funding for a study that revealed Canadian asbestos miners suffered from asbestosis and by materially misrepresenting that known fact, and in various other ways concealing information and otherwise preventing workers and responsible authorities from learning of the health hazards posed by exposure to asbestos dust and fibers.

WHEREFORE, in addition to, or in the alternative to the relief requested in Counts I through XIV supra, Plaintiff demands judgment against Metropolitan Life Insurance Company named in this Complaint, jointly and severally as to themselves and each and every other defendant named in this Complaint in an amount in excess of Fifty Thousand Dollars ($50,000.00) for compensatory damages and Fifty Thousand Dollars ($50,000.00) for punitive damages, plus costs, attorney's fees and such further relief as may be appropriate.

LAW OFFICES OF PETER ANGELOS, P.C.

By: _____
Jason B. Duncan, Esquire
Gregory N. Bunitsky, Esquire
Lauren S. Linsenbach, Esquire
1880 JFK Blvd., Suite 1701
Philadelphia, PA 19103
(215) 864-0191
*Attorneys for Plaintiffs*

Case ID: 220502770

DATED: __May 31__, 2022

VERIFICATION

      I verify that the statements made in this Complaint are true and correct.  I make this verification on behalf of the plaintiffs because they are outside of the jurisdiction and a verification cannot be obtained within the time limits for filing this complaint. This verification is based on personal knowledge and belief and information obtained from plaintiffs and other sources.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Dated   May 31, 2022     X _____

**EXHIBIT B**

MIL-A-17472B ■ 9999906 1073913 221 ■

MIL-A-17472B
22 May 1964
SUPERSEDING
MIL-A-0017472A(SHIPS)
4 January 1963
MIL-A-17472(NAVY)
12 February 1953

MILITARY SPECIFICATION

ASBESTOS SHEET, COMPRESSED (GASKET MATERIAL)

This specification is mandatory for use by all Departments and Agencies of the Department of Defense.

1. SCOPE

1.1 This specification covers symbol 2150 compressed asbestos sheet gasket material used as a gasket joint sealing material for steam, hot and cold water or brine, air and gases, and oils.

2. APPLICABLE DOCUMENTS

2.1 The following documents, of the issue in effect on date of invitation for bids or request for proposal, form a part of this specification to the extent specified herein:

SPECIFICATIONS

FEDERAL

| | | |
|---|---|---|
| UU-P-271 | - | Paper, Wrapping. |
| PPP-B-576 | - | Box, Wood, Veneer, Paper Overlaid. |
| PPP-B-585 | - | Boxes, Wood Wirebound. |
| PPP-B-591 | - | Boxes, Fiberboard, Wood-cleated. |
| PPP-B-601 | - | Boxes, Wood, Cleated-Plywood. |
| PPP-B-621 | - | Boxes, Wood, Nailed and Lock Corner. |
| PPP-B-636 | - | Box, Fiberboard. |
| PPP-B-640 | - | Boxes, Fiberboard-Corrugated, Triple Wall. |

MILITARY

| | | |
|---|---|---|
| MIL-L-10547 | - | Liners, Case, and Sheet, Overwrap, Water-Vaporproof or Waterproof, Flexible. |

STANDARDS

FEDERAL

| | | |
|---|---|---|
| FED-STD-601 | - | Rubber, Sampling and Testing. |

MILITARY

| | | |
|---|---|---|
| MIL-STD-105 | - | Sampling Procedures and Tables for Inspection by Attributes. |
| MIL-STD-129 | - | Marking for Shipment and Storage. |
| MIL-STD-147 | - | Palletized Unit Loads. |

(Copies of specifications, standards, drawings and publications required by suppliers in connection with specific procurement functions should be obtained from the procuring activity or as directed by the contracting officer.)

3. REQUIREMENTS

3.1 Qualification. - The compressed asbestos sheet furnished under this specification shall be a product which has been tested, and passed the qualification tests specified herein, and has been listed on or approved for listing on the applicable qualified products list.

FSC 5330

01149

MIL-A-17472B ■ 9999906 1073914 168 ■

MIL-A-17472B

3.2 Material. - The compressed asbestos sheet shall be made of asbestos fiber combined with either natural or synthetic rubber, or both, and suitable mineral fillers.

3.2.1 Asbestos fiber. - The asbestos fiber shall be chrysotile and shall contain not less than 12 percent chemically combined water (see 4.5.1).

3.3 Construction. - The compressed asbestos sheet shall be either cross-laminated or not.

3.4 Asbestos fiber and rubber content. - The compressed asbestos sheet shall contain not less than 70 percent by weight, of asbestos fiber, and not less than 10 percent by weight, of rubber (see 4.5.1).

3.5 Loss of weight on heating. - The loss in weight on heating at 900° to 925° Centigrade (°C.) shall not be more than 35 percent (see 4.5.2).

3.6 Thickness and weight. - The thickness and weight of the finished compressed asbestos sheet shall be as shown in table I as specified (see 6.2).

Table I - Thickness and weight

| Thickness | Weight, minimum |
|-----------|-----------------|
| Inch | Pounds per square yard |
| 1/64 | 0.8 |
| 1/32 | 2.0 |
| 1/16 | 4.0 |
| 3/32 | 6.0 |
| 1/8 | 8.0 |
| 3/16 | 12.0 |
| 1/4 | 16.0 |

3.6.1 Thickness tolerances. - The permissible tolerances in thickness shall be as shown in table II.

Table II - Thickness tolerance

| Thickness | Tolerance |
|-----------|-----------|
| Inch | |
| 1/64 | +0.005 inch; -0.002 inch |
| 1/32 | ±0.005 inch |
| 1/16 and over | ± 10 percent |

3.7 Length and width. - Unless otherwise specified (see 6.2), asbestos sheet shall be furnished in widths not less than 36 inches, and in lengths not greater than 150 inches.

3.8 Compressibility and recovery. - The compressibility of the sheet shall be not less than 7 percent nor more than 17 percent. The recovery shall be not less than 40 percent (see 4.5.3).

3.9 Tensile strength. - The average tensile strength of sheets 1/32 inch and thicker shall be not less than 3500 pounds per square inch (p.s.i.). Single ply sheets 1/64 inch thick shall have a minimum average tensile strength of 1200 p.s.i. in the weakest direction and an average tensile strength of both the longitudinal and transverse directions of not less than 2,000 p.s.i. (see 4.5.4).

3.10 Graphite. - Unless otherwise specified (see 6.2), the finished sheets shall not be lubricated or graphited.

3.11 Branding. - Each square foot of the asbestos sheet shall be plainly marked with the manufacturer's name, brand identification, and symbol 2150.

2

01150

MIL-A-17472B ■ 9999906 1073915 0T4 ■

3.12 Workmanship.- Workmanship shall be first class in every respect. The asbestos sheet shall have smooth surfaces and shall be free from imperfections.

4. QUALITY ASSURANCE PROVISIONS

4.1 Responsibility for inspection.- Unless otherwise specified in the contract or purchase order, the supplier is responsible for the performance of all inspection requirements as specified herein. Except as otherwise specified, the supplier may utilize his own facilities or any commercial laboratory acceptable to the Government. The Government reserves the right to perform any of the inspections set forth in the specification where such inspections are deemed necessary to assure supplies and services conform to prescribed requirements.

4.2 Qualification tests [1]/ .- Qualification tests shall be conducted at a laboratory satisfactory to the Bureau of Ships. Qualification tests shall consist of the tests specified in 4.5.

4.3 Sampling. -

4.3.1 Lot.- For purposes of sampling a lot shall consist of all asbestos sheet of the same thickness produced under essentially the same conditions and offered for delivery at one time.

4.3.2 Sampling for quality conformance inspection.-

4.3.2.1 Sampling for examination.- A random sample of sheets shall be selected from each lot offered for examination in accordance with MIL-STD-105 at Inspection Level II. The Acceptable Quality Level shall be 2.5 percent defective.

4.3.2.2 Sampling for tests.- Two samples of gasket material shall be selected at random from each 2,000 pound lot or less for the tests described in 4.4.2. Each sample piece shall be 12 by 12 inches.

4.4 Quality conformance inspection.-

4.4.1 Examination.- Each of the sample sheets selected in accordance with 4.3.2.1 shall be surface examined, and measured to determine conformance with the requirements of this specification which do not require tests. Any sheet in the sample containing one or more visual or dimensional defects shall not be offered, and if the number of defective sheets in any sample exceeds the acceptance number for that sample, this shall be cause for rejection of the lot represented by the sample.

4.4.2 Lot tests.- The samples selected in accordance with 4.3.2.2 shall be subjected to the tests specified in 4.5.2 through 4.5.4. If any of the samples tested is found to be not in conformance with this specification this shall be cause for rejection of the lot represented by the sample.

4.5 Test procedures. -

4.5.1 Chemical analysis.-

4.5.1.1 Preparation of sample for analysis.- Small strips or cross-sections shall be cut from various parts of the sample so as to be representative of the sample. The specimen shall be split with the aid of a knife to produce relatively thin layers of material.

4.5.1.1.1 Lubricant (graphite) when specified.-

4.5.1.1.1.1 A 1 to 3 gram specimen shall be weighed accurately and placed in a siphon cup without a filter thimble. If graphite is present, a few milliliters of chloroform shall be added to the cup and agitated gently to dislodge the bulk of the graphite, which shall be removed by decanting into the extraction flask. This is done to prevent the siphon cup from becoming plugged. Two or three treatments are usually sufficient to remove most of the graphite which shall be collected in the extraction flask along with the chloroform soluble material. The siphon cup shall then be assembled in the extraction flask, sufficient

_____

[1]/ Application for Qualification tests shall be made in accordance with "Provisions Governing Qualification" (see 6.3 and 6.4).

3

MIL-A-17472B

chloroform added to bring the volume up to about 50 milliliters, and the extraction shall be continued in the usual manner for a period of 2 hours.

4.5.1.1.1.2  The extracted material shall then be transferred to a watch glass and permitted to air dry. When dry, the fibers shall be carefully separated,  and the remaining graphite carefully brushed off and collected on the watch glass, then added to the extraction flask.  The residue shall be reserved for subsequent determinations.

4.5.1.1.1.3  The chloroform shall be distilled from the extraction flask on a steam bath, using a gentle stream of filtered air to prevent boiling.  The flask shall then be dried for 1 hour at 105° Centigrade (C), cooled in a desiccator and weighed.

4.5.1.1.1.4  Calculation.-

$$\text{Lubricant, percent} = \frac{L}{S} \times 100$$

Where L = weight of graphite and soluble material.
      S = weight of specimen.

4.5.1.2  Rubber.-

4.5.1.2.1  A specimen of approximately 2 grams and prepared as specified in 4.5.1.1 shall be placed in a 125 milliliter (m$\ell$.) lipped assay flask or a 250 m$\ell$.  Erlenmeyer flask fitted with a standard taper and an air condenser.  Ten grams of paranitrotoluene and 25 m$\ell$ of orthodichlorobenzene shall be added, and the mixture heated to 180 to 190° C. on a hot plate under a hood with occasional stirring until the rubber dissolves.  From 4 to 10 hours are usually sufficient to effect solution.

4.5.1.2.2  The flask and contents shall be cooled, 10 m$\ell$. of chloroform added, and the mixture decanted through a 100 mesh screen.  The residue shall be washed with chloroform until the insoluble fillers are removed as indicated by a clear filtrate.  If undissolved rubber remains, the fibers shall be returned to the digestion flask and the treatment with paranitrotoluene and orthodichlorobenzene repeated.

4.5.1.2.3  The filtrates and wash solutions shall be combined and poured through a portion of the sieve that is free of fibers in order to collect any fibers that may have passed through previously.  The fibers shall then be transferred to a siphon cup and extracted for 1 hour with chloroform, dried at 105° C. for 1 hour, cooled and weighed.

4.5.1.2.4  Calculation.-

$$\text{Asbestos fibers, percent} = \frac{F}{S} \times 100$$

Rubber content, percent = 100-A-B
          Where F = weight of fibers
                S = weight of specimen
                A = percent fibers
                B = percent lubricant

4.5.1.3  Chemically combined water.-  A specimen of approximately 1 gram shall be taken from the fibrous material which has been treated as required in 4.5.1.2.3.  It shall be dried for 1 hour in a platinum crucible at a temperature of 105 to 110° C., cooled in a desiccator and again weighed.  The specimen and crucible shall be ignited in an electric furnace at a temperature of 800° to 825° C., or over a blast lamp, to a constant weight.

4.5.1.3.1  Calculation.-

$$\text{Chemically combined water,}$$
$$\text{percent} = \frac{S-R}{S} \times 100$$

4

Internet from GLOBAL ENGINEERING DOCUMENTS
5 Inverness Way E  Englewood, CO 80112 (303)397-7956 (800)854-7179



01152

MIL-A-17472B ■ 9999906 1073917 977 ■

MIL-A-17472B

Where R = weight of specimen after
ignition
S = weight of specimen before
ignition

4.5.1.3.2 Two specimens shall be tested. The average of the results obtained from the two specimens shall be the chemically combined water of the sample.

4.5.1.4 Cotton, asbestos and chemically combined water. - If the fibrous material contains cotton of other organic materials as indicated by nonconformance to 3.2.1 it may be determined as follows: The asbestos content of the fibrous material which has been treated as specified in 4.5.2.2 shall be determined by the combustion procedure for cotton and asbestos. If graphite, carbon black, or other material insoluble in the paranitrotoluene - orthodichlorobenzene mixture remains on the fibers, the combustion method will not give reliable results, and in such cases the results obtained shall be considered to be approximations.

4.5.1.4.1 A specimen weighing approximately 1 gram shall be taken from the fibrous material (see 4.5.1.2). It shall be placed in a porcelain or platinum combustion boat, dried for 1 hour at a temperature of 105° to 110° C., cooled in a desiccator and weighed. The dried specimen in the boat shall be inserted in the combustion tube of an electric organic combustion furnace. The specimen shall be maintained at a temperature of 900 + 50° C. for approximately 30 minutes or until combustion of the cotton is complete. During the combustion period a current of oxygen (carbon dioxide free) shall be passed through the combustion tube at a rate of approximately 200 milliliters per minute. The combustion gases shall be passed through either two U-tubes containing calcium chloride or through a drying tube containing anhydrous magnesium perchlorate or calcium sulphate to remove the moisture; and finally the gases shall be passed into either a weighed Vanier or similar absorption bulb containing a strong solution of caustic potash, or in a weighed carbon dioxide absorption bulb containing a sodium hydroxide impregnated base (the absorbent having the trade name "ascarite" is of this type) to absorb the carbon dioxide. Three-elevenths of the increase in weight of the Vanier or other carbon dioxide absorption bulb shall represent the weight of the carbon in the fibrous material. This shall be 44.40 percent of the cotton. These factors may be combined to give a constant of 0.614. When the combustion has been completed, the absorption tube shall be weighed, the combustion boat containing the ignited residue shall be removed from the furnace, cooled in a desiccator and weighed.

4.5.1.4.2. Calculation. - The percentage of cotton shall be calculated as follows:

$$A = \frac{61.4 \times C}{E}$$

Where:

A = Percentage of cotton.
C = Weight of carbon dioxide, grams.
E = Weight of fiber specimen, grams.

4.5.2 Loss in weight on heating. -

4.5.2.1 Preparation of sample. - Small strips or cross-sections shall be cut from various parts of the sample so as to be representative of the sample. The specimen shall be split with the aid of a knife to produce relatively thin layers of material.

4.5.2.2 Procedure. - Specimens of approximately 5 grams each prepared as in 4.5.2.1 shall be dried for 1 hour in a porcelain crucible at a temperature at 105° to 110° C., cooled in a desiccator and again weighed. The specimen and crucible shall be ignited in an electric furnace at a temperature of 900° to 925° C., or over a blast lamp, to a constant weight. The loss in weight shall be calculated as follows:

$$\text{Loss in weight (percent ash)} = \frac{R}{S} \times 100$$

5

MIL-A-17472B ■ 9999906 1073918 803 ■

MIL-A-17472B

Where R = weight of specimen after ignition
S = weight of specimen before ignition

4.5.3 Compressibility and recovery. - Compressibility and recovery shall be determined in accord-
ance with method 3331 of FED-STD-601.

4.5.4 Tensile strength. - Specimens 1/2 inch wide by 6 inches long shall be used, with a 3-inch
length of specimen between the jaws. The testing machine shall be operated at a rate of separation of
the grips of 12 ± 1 inches per minute. Three specimens shall be cut lengthwise of the sheet (longitudinal)
and three specimens at right angles thereto (transverse). All specimens shall be conditioned at 212° F. for
1 hour and cooled to room temperature in a desiccator before testing. The average of the results of six
specimens shall be used to determine the average tensile strength. The average of the results of three
specimens from one direction of the asbestos sheet shall be the average tensile strength of the asbestos
sheet in that direction.

4.6 Examination of preparation for delivery. - Packaging, packing and marking shall be examined
to determine conformance with the requirements of section 5.

5. PREPARATION FOR DELIVERY

5.1 Packaging. - Packaging shall be Level A or C as specified (see 6.2).

5.1.1 Level A. -

5.1.1.1 Rolls. - Asbestos sheets shall be rolled and restrained from unwinding. The roll shall be
wrapped with Class 2 Kraft paper conforming to Specification UU-P-271 with ends enclosed. All seams,
joints and closures shall be sealed with adhesives or other suitable materials to afford waterproofness
equal to that of the wrap material itself. A minimum of 2-inch overlap shall be provided at all overlapping
edges.

5.1.1.2 Sheets. - No over packaging required.

5.1.2 Level C. - Asbestos sheet shall be packaged in accordance with the supplier's standard practice.

(5.2 Packing. - Packing shall be Level A, B or C, as specified (see 6.2).

5.2.1 Compressed asbestos sheet, in thicknesses up to and including 1/16 inch thick, shall be fur-
nished in rolls and compressed asbestos sheet, in thicknesses exceeding 1/16 inch, shall be furnished in
flat sheets.

5.2.1.1 Level A. - Rolls and sheets shall be packed in containers conforming to any one of the
following specifications at the option of the contractor:

| Specification | Classification |
|---|---|
| PPP-B-576 | Class 2 |
| PPP-B-585 | Class 3 use |
| PPP-B-591 | Overseas type |
| PPP-B-601 | Overseas type |
| PPP-B-621 | Class 2 |
| PPP-B-636 | Class 2 |
| PPP-B-640 | Class 2 |

5.2.1.1.1 Shipping containers shall be closed, strapped or banded in accordance with the applicable
box specification or appendix thereto. The gross weight of wood or wood-cleated boxes shall not exceed
200 pounds; fiberboard boxes shall not exceed the weight limitations of the applicable fiberboard box
specification.

5.2.1.1.1.1 Caseliners. - Shipping containers for sheets shall have caseliners conforming to
MIL-L-10547. Caseliners shall be closed and sealed in accordance with the appendix to MIL-L-10547.
Caseliners for fiberboard boxes, PPP-B-636 and PPP-B-640, may be omitted provided all center and edge

6

Reproduced from GLOBAL ENGINEERING DOCUMENTS
5 Inverness Dr. E  Englewood CO 80112 (303)397-7956 (800)854-7179

01154

MIL-A-17472B █ 9999906 1073919 74T █

MIL-A-17472B

...ms and manufacturer's joint are sealed and waterproofed with pressure sensitive tape in accordance with the applicable fiberboard box specification.

6.2.1.2 Level B. - Rolls and sheets shall be packed in containers conforming to any one of the following specifications at the option of the contractor:

| Specification | Classification |
|---|---|
| PPP-B-576 | Class 1 |
| PPP-B-585 | Class 1 or 2 use |
| PPP-B-591 | Domestic type |
| PPP-B-601 | Domestic type |
| PPP-B-621 | Class 1 |
| PPP-B-636 | Class 1 |
| PPP-B-640 | Class 1 |

5.2.1.2.1 Shipping containers shall be closed in accordance with the applicable box specification or appendix thereto. The gross weight of wood or wood-cleated boxes shall not exceed 200-pounds; fiberboard boxes shall not exceed the weight limitations of the applicable fiberboard box specification. Rolls packaged as specified in 5.1.1.1 shall need no over packing.

5.2.1.3 Level C. - The asbestos shall be packed in a manner that will insure arrival at destination in satisfactory condition and be acceptable to the carrier at lowest rate.

5.2.1.4 Palletization. - When specified (see 6.2), shipping containers shall be palletized in accordance with MIL-STD-147.

5.3 Marking. - In addition to any special marking required by the contract or order, shipping containers shall be marked for shipment in accordance with MIL-STD-129.)

 6. NOTES

6.1 Intended use. - Compressed asbestos sheet is intended for use for the following services:

(a) Saturated steam to 300 psig.
(b) Oil-fuel, lubricating, diesel to 500 psig and 250° F.
(c) Water-fresh, brine, hot, cold to 400 psig.
(d) Air or gas to 3,000 psig.
(e) Gases of combustion to 500 psig and 700° F.

6.2 Ordering data. - Procurement documents should specify the following:

(a) Title, number, and date of this specification.
(b) Thickness required (see 3.6).
(c) Length and width of sheet required (see 3.7).
(d) Whether finished sheet should be lubricated or graphited (see 3.10).
(e) Level of packaging and level of packing required (see 5.1 and 5.2).
(f) When pallets are required (see 5.2.1.4).

6.3 With respect to products requiring qualification, awards will be made only for such products as have, prior to the time set for opening of bids, been tested and approved for inclusion in Qualified Products List QPL-17472, whether or not such products have actually been so listed by that date. The attention of suppliers is called to this requirement, and manufacturers are urged to arranged to have the products that they propose to offer to the Federal Government, tested for qualification, in order that they may be eligible to be awarded contracts or orders for the products covered by this specification. The activity responsible for the qualified products list is the Bureau of Ships, Department of the Navy, Washington, D.C. 20360 and information pertaining to qualification of products may be obtained from that activity. Application for Qualification tests shall be made in accordance with "Provisions Governing Qualification" (see 6.3).

7

01155

MIL-A-17472B ■■ 9999906 1073920 461 ■■

MIL-A-17472B

6.4  Copies of "Provisions Governing Qualification" may be obtained upon application to Commanding Officer, Naval Supply Depot, 5801 Tabor Avenue, Philadelphia, Pennsylvania 19120

Custodians:
    Army - MR
    Navy - SH
    Air Force - 69

                                                     Preparing activity:
                                                     Navy - SH
                                                (Project 5330-0100)

Reviewer:
    Army - MR, MU, WC, MI
    Navy - WP, YD
    Air Force - 89, 85

User:
    Army - GL

Note:  Review/user information is current as of the date of this document.   For future coordination of changes to this document, draft circulation should be based on the information in the current DODISS.

8

01156

## DOCUMENT CERTIFICATION

I, Thomas F. McCaffery, do swear under the penalties of perjury that the documents (766-1498 pages and initialed) in Volume I of the binder entitled, "Dana Corporation, General Information, Gasket-Related Specification" are to the best of my knowledge and belief, true and accurate copies of original U.S. Government documents.

_____
Thomas F. McCaffery

I, MARISA A. TRASATTI , a commissioned Notary Public in and for the County of HARFORD , State of MD , do certify that Thomas F. McCaffery appeared before me on this date in the City of Baltimore, State of Maryland and that I took his oath aforesaid.

_____

SEAL

Date: 5/2/03

My commission expires: 8/29/06

# EXHIBIT C

MIL-P-17303C(NAVY)
14 October 1955
SUPERSEDING
MIL-P-17303B(NAVY)
9 March 1953

MILITARY SPECIFICATION

PACKING MATERIALS,

PLASTIC METALLIC AND PLASTIC NONMETALLIC

All interested Bureaus of the Department of the Navy have concurred in the use of this specification.

1.1 Scope. - This specification covers plastic metallic packings for rotary and reciprocating pumps handling steam, water, gas and oil; and plastic nonmetallic packings for high and low pressure valve stem and reciprocating rod saturated and superheated stem service for machinery on Naval vessels.

1.2 Classification. - The packing shall be of the following classes and types, as specified (see 6.1):

Class I - Plastic metallic, lead base:
    Type A - Bulk form, symbol 1431.
    Type B - Coil form, with or without cotton jacket, symbol 1433.
    Type C - Coil form, metal foil jacket, symbol 1434.
    Type D - Coil form, braided metal jacket, symbol 1432.
    Type E - Coil form, with or without cotton jacket, (gasoline
        service), symbol 1437.

Class II - Plastic nonmetallic:
    Type B - Coil form, cotton jacket, symbol 1106.
    Type C - Coil form, asbestos and nickel-copper wire jacket,
        symbol 1108.
    Type D - Coil form, with or without cotton jacket, (gasoline
        service), symbol 1109.
    Type E - Coil form, asbestos and nickel-chromium-iron
        alloy wire jacket, symbol 1111.

Class III - Plastic metallic, copper base:
    Type B - Coil form, cotton jacket, symbol 1439.

FED. SUP. CLASS
5330

GPO—O—NAVY—36

01851

MIL-P-1730SC(NAVY)

2. APPLICABLE DOCUMENTS

2.1 The following specifications and standards, of the issue in effect on date of invitation for bids, form a part of this specification:

SPECIFICATIONS

FEDERAL
NN-B-591 - Boxes, Fiberboard, Wood-Cleated (for Domestic Shipment).
NN-B-621 - Boxes, Wood, Nailed and Lock-Corner.
LLL-B-631 - Boxes, Fiber, Corrugated (for Domestic Shipment).
LLL-B-636 - Boxes, Fiber, Solid (for Domestic Shipment).
PPP-B-566 - Boxes, Folding, Paperboard.
PPP-B-601 - Boxes, Wood, Cleated-Plywood.
PPP-B-676 - Boxes, Set-up, Paperboard.

MILITARY
JAN-P-103 - Packaging and Packing for Overseas Shipment - Boxes, Wood Cleated; Solid Fiberboard.
JAN-P-106 - Packaging and Packing for Overseas Shipment - Boxes, Wood, Nailed.
JAN-P-108 - Packaging and Packing for Overseas Shipment - Boxes, Fiberboard (V-Board and W-Board), Exterior and Interior.
MIL-L-10547 - Liners, Case, Waterproof.

NAVY DEPARTMENT
General Specifications for Inspection of Material.

STANDARDS

MILITARY
MIL-STD-129 - Marking for Shipment and Storage.

(Copies of specifications, standards, drawings, and publications required by contractors in connection with specific procurement functions should be obtained from the procuring agency or as directed by the contracting officer.)

2.2 Other publications. - The following documents form a part of this specification. Unless otherwise indicated, the issue in effect on date of invitation for bids shall apply.

AMERICAN SOCIETY FOR TESTING MATERIALS STANDARD
D471-46T - Methods of Tests for Rubber Products.

(Application for copies should be addressed to the American Society for Testing Materials, 1916 Race Street, Philadelphia 3, Pa.)

2

01852

MIL-P-17305(de)

CONSOLIDATED CLASSIFICATION COMMITTEE
Consolidated Freight Classification Rules.

(Application for copies should be addressed to the Consolidated Classification Committee, 202 Chicago Union Station, Chicago 6, Ill,)

3. REQUIREMENTS

3.1 Qualification.- Packing material furnished under this specification shall be a product which has been tested and has passed the qualification tests specified in section 4 (see 6.2).

3.2 Composition and construction.- The composition and construction shall conform to that of the sample submitted for qualification (see 4.2).

3.3 Size.- Packing shall be furnished in the sizes specified (see 6.1).

3.4 Binder.- The different components of type A and of the core of types B, C, D, and E shall be thoroughly mixed with a binder suitable for the temperature conditions for which the packing is required and shall be so held together by the binder as to prevent separation of the various parts.

3.5 Graphite.- Graphite, when used for lubrication, shall be a pure lubricating graphite.

3.6 Flexibility.- The packing shall be sufficiently flexible to be readily formed into coils to fit a rod of the diameter shown in table I (see 4.6.5).

Table I - Size of coils.

| Size of packing | Rod diameter |
|---|---|
| Inches | Inches |
| 1/8 to 1/4 | 2 |
| 5/16 to 5/8 | 3 |
| 11/16 to 13/16 | 4 |
| 7/8 and 1 | 8 |
| 1-1/8 | 9 |
| 1-1/4 | 10 |

3

01853

MIL-P-17303C(NAVY)

3.7 Simulated performance. - The packaging under initial conditions and during the progress of the simulated service tests specified in 4.5.3 shall respond readily to gland adjustment for the control of leakages from the stuffing box. The packing shall be in satisfactory condition upon completion of the tests.

3.8 Class I, plastic metallic, lead base. - The metal used for lead base packing shall not melt nor disintegrate at or below a temperature of 550° F. (see 4.5.4).

3.8.1 Type A, symbol 1431. - The packing shall be in bulk form.

3.8.2 Type B, symbol 1433. - The packing shall be continuous strips of approximately uniform cross section, partially compressed to prevent disintegration during application. It may be enclosed in a latticed cotton thread or knit cotton covering or may be furnished without a covering.

3.8.3 Type C, symbol 1434. - The packing shall be continuous strips of uniform cross section, completely enclosed in a metal covering consisting of not less than two ribbons. The metal ribbon shall be not less than 0.0023 inch thick.

3.8.4 Type D, symbol 1432. - The packing shall be continuous strips of uniform cross section, extruded into a braided wire jacket. The jacket shall be of copper wire not more than 0.008 inch in diameter.

3.8.5 Type E, symbol 1437. - The packing shall be continuous strips of approximately uniform cross section, partially compressed to prevent disintegration during application. It may be enclosed in a latticed cotton thread or knit cotton covering or may be furnished without a covering.

3.9 Class II, plastic nonmetallic. -

3.9.1 Type B, symbol 1106. - The packing shall be continuous strips of approximately uniform cross section, partially compressed to prevent disintegration during application, and enclosed in a latticed cotton thread or knit cotton covering.

3.9.2 Type C, symbol 1108. - The packing shall be continuous strips of uniform cross section, completely enclosed in a braided jacket composed of asbestos and nickel-copper wire. The packing shall contain two corrosion inhibitors.

3.9.2.1 Corrosion resistance. - Symbol 1108 packing shall not corrode 13 percent chrome steel valve stem when tested as specified in 4.5.5.

4

01854

3.9.3 Type D, symbol 1109.- The packing shall be continuous strips of approximately uniform cross section partially compressed to prevent disintegration during application. It may be enclosed in a latticed cotton thread or knit cotton covering or may be furnished without a covering.

3.9.4 Type E, symbol 1111.- The packing shall be continuous strips of uniform cross section, completely enclosed in a braided jacket composed of asbestos and nickel-chromium-iron alloy wire. The core of the packing shall contain not more than 20 percent, by weight, of corrosion inhibitor.

3.9.4.1 Pressure and temperature tests.- When the packing is installed in a stuffing box and tested as specified in 4.5.6, there shall be no leakage from the stuffing. The packing and the valve stem shall be in satisfactory condition upon conclusion of the tests.

3.9.4.2 Corrosion resistance.- Symbol 1111 packing shall not corrode 13 percent chrome steel valve stem when tested as specified in 4.5.5.

3.10 Class III, plastic metallic, copper base.- The metal for class III packing shall not melt nor disintegrate at or below a temperature of 1200° F. (see 4.5.4).

3.10.1 Type B, symbol 1439.- The packing shall be in continuous strips of approximately uniform cross section, partially compressed to prevent disintegration during application, and enclosed in a latticed cotton thread or knit cotton covering.

3.11 Workmanship.- The workmanship shall be first class in every respect.

4. QUALITY ASSURANCE PROVISIONS

4.1 Inspection procedures.- For Naval purchases, the general inspection procedures shall be in accordance with General Specifications for Inspection of Material.

4.2 Qualification tests at a Government laboratory.- Qualification tests shall be conducted at a Government laboratory designated by the Bureau of Ships. These tests shall consist of the tests specified in 4.5.

4.3 Sampling.-

4.3.1 Lot.- For purpose of sampling, a lot shall consist of all packing of one class, type, and size produced in one plant under essentially the same conditions and offered for delivery at one time.

5

01855

MIL-P-1730SC(NAVY)

4.3.2 Sampling procedure for lot acceptance inspection. - For the inspection specified in 4.4.1.1, the Government inspector shall select representative lengths of packing from each lot in accordance with table II.

Table II - Sampling procedure for lot
acceptance inspection.

| Number of lengths of packing in the lot | Number of sample lengths to be selected |
|---|---|
| 8 or under | 2 |
| 9 to 15 | 3 |
| 16 to 25 | 5 |
| 26 to 40 | 7 |
| Over 40 | 10 |

4.3.3 Sampling procedure for lot acceptance tests. - For the test specified in 4.4.1.2 the Government inspector shall take a 36-inch sample from each sample length of finished packing selected in accordance with table II.

4.3.4 Sampling procedure for production check tests. - From the first lot of packing of each class and type offered for delivery under a contract or order, the Government inspector shall select from each of two lengths of packing a 36-inch sample for the purpose of the production check tests specified in 4.4.2. Thenceforth, two such sample pieces of packing shall be selected from one of every 10 lots which have passed inspection and test at the place of manufacture.

4.4 Inspection and tests. -

4.4.1 Lot acceptance inspection and tests at place of manufacture. -

4.4.1.1 Inspection. - Each of the samples selected in accordance with 4.3.2 shall be subjected by the Government inspector to surface inspection for workmanship and dimensions. Minor surface defects not affecting the serviceability of the packing shall not be cause for rejection.

4.4.1.2 Tests. - The samples selected in accordance with 4.3.3 shall be subjected to the tests specified in 4.5.2 and 4.5.4.

6

01856

4.4.1.3 Action in case of failure. - If any one of the samples tested is found to be not in conformance with this specification, the lot which it represents shall be rejected. A rejected lot may be resubmitted for Government inspection only after the manufacturer, after being informed of the reasons for rejection, has so reworked the entire lot as to remove or correct all nonconforming material.

4.4.2 Production check tests at a Government laboratory. - The samples selected in accordance with 4.3.4 shall be subjected to the tests specified in 4.5.2 and 4.5.4. If found not to conform as to construction with that given qualification, the sample need not be subjected to other tests before reporting the lot as unsatisfactory.

4.4.2.1 Place of tests. - Unless otherwise specified in the contract or order, production check tests shall be conducted at the Naval Engineering Experiment Station, Annapolis, Md.

4.4.2.2 Action in case of failure. - Acceptance of the first lot offered for delivery under a contract or order shall be withheld until a satisfactory report is received on the production check test sample. Thenceforth, except as hereinafter specified, acceptance and rejection of lots shall normally be on the basis of the sampling and inspection specified in 4.3.2, 4.3.3, and 4.4.1 and acceptance shall not be withheld pending receipt of test reports on production check test samples. However, upon receipt of an unsatisfactory test report on a production check test sample, the Government inspector shall select additional samples from every subsequent lot offered for delivery. The samples so selected shall be submitted to Naval Engineering Experiment Station, Annapolis, Md., and shall there be subjected to test or tests wherein failure was observed. Lots shall then be accepted only upon receipt of a satisfactory test report on the samples so selected. Additional testing shall be discontinued and lot acceptance returned to the normal basis when three successive lots have been accepted.

4.5 Test procedures. -

4.5.1 Chemical analysis. - Chemical analysis shall be made using standardized procedures.

4.5.2 Flexibility. - Packing shall be coiled by hand around a rod of a diameter as shown in table I (see 3.6). Only sufficient packing to make one complete turn around the rod shall be used.

4.5.3 Simulated performance. - Performance tests shall be made under simulated operating conditions in a machine designed for the purpose.

7

MIL-P-17303C(NAVY)

4.5.3.1 <u>Type C, symbol 1108, and type B, symbol 1439.</u>- The packing shall be tested for the following service:

Valve stem service at 600 pounds per square inch (p.s.i.) and 750° F. Test shall be concluded after 3500 hours of operation.

4.5.3.2 <u>Type D, symbol 1432.</u>- The packing shall be tested for the following service:

Reciprocating rod service steam at 300 p.s.i. and 720° F., and a rod speed of 170 feet per minute. The test shall be concluded after 1,500 hours operation.

4.5.3.3 <u>Type A, symbol 1431, symbol 1106 and type B, symbol 1433.</u>- The packing shall be tested for the following services:

Reciprocating rod service with saturated steam at 300 p.s.i. and a rod speed of 100 feet per minute. Test shall be concluded after 3000 hours of operation.
Rotary rod service with feed water at 100 p.s.i. gage and 250° F., and a rod speed of 4,000 feet per minute. The test shall be concluded after 3,000 hours of operation.

4.5.3.4 <u>Type C, symbol 1434.</u>- The packing shall be tested for the following services:

Rotary rod service with feed water at 100 p.s.i. gage and 250° F., and a rod speed of 4000 feet per minute. Test shall be concluded after 3,000 hours of operation.

4.5.3.5 <u>Rotary rod service.</u>- During the rotary rod service tests specified in 4.5.3.3 and 4.5.3.4 in order to simulate conditions occasionally encountered in the service, the packing shall be subjected to cycles of sudden changes in pressure from 100 p.s.i. to 10 p.s.i. twice daily. The lower pressure shall be maintained for approximately 30 seconds and then suddenly raised to 100 p.s.i.

4.5.3.6 <u>Type E, symbol 1437, and type D, symbol 1109.</u>- The packing shall be tested for rotary rod service with a sequence of fluids at 50 p.s.i. gage and a rod speed of 1,375 feet per minute. The sequence of the fluids shall be as follows:

(a) Aromatic fuel (reference fuel No. 2 in accordance with A.S.T.M. D471-46T) for 200 hours.
(b) Alkylate fuel (115/145 base stock) for 200 hours.
(c) Sea water for 200 hours.
(d) Aromatic fuel (reference fuel No. 2 in accordance with A.S.T.M. D471-46T) for 200 hours.

8

01858

MIL-P-17303C(NAVY)

4.5.3.7 <u>Type E, symbol 1111.</u> - The packing shall be tested for the following service:

Valve stem service with steam at 600 p.s.i. and 750° F. During test there shall be a protracted series of simulated valve openings and closings. Tests shall be concluded after 2,000 hours of operation.

4.5.4 <u>Heat resistance.</u> - Specimens cut from each sample of packing shall be subjected for 2 hours to the temperature in 3.8 and 3.10.

4.5.5 <u>Corrosion resistance, type C, symbol 1108 and type E, symbol 1111.</u> - The packing shall be installed in the stuffing box of 1-inch size, 600 p.s.i. valve, equipped with a 13 percent chrome steel valve stem. The packing gland shall be adjusted to allow slight leakage under 300 p.s.i. valve test water. The condition shall be maintained for 24 hours to insure the wetting of the packing. The valve shall then be drained and stored at ambient temperature. The valve stem shall be inspected after 6 and 12 months of storage.

4.5.6 <u>Pressure and temperature.</u> - The packing shall be installed in the stuffing box of 1-inch size, 1500 series valve, equipped with a 13 percent chrome steel valve stem, and subjected successively to the following conditions:

(a) Superheated steam at 600 p.s.i. gage and 750° F. for twenty-four hours.
(b) Air pressure of 2000 p.s.i. gage.
(c) Temperature of 1100° F. for six hours.
(d) Air pressure of 2000 p.s.i. gage.

5. PREPARATION FOR DELIVERY

5.1 <u>Preservation and packaging.</u> -

5.1.1 <u>For domestic shipment - immediate use.</u> - Packing material shall be packaged in accordance with manufacturer's commercial practice.

5.1.2 <u>For domestic shipment involving storage and overseas shipment.</u> - Unless otherwise specified in the contract or order, packing material shall be wound on spools or coiled and packaged in folding cartons, set-up boxes, corrugated or solid fiberboard boxes conforming to Specification PPP-B-566, FPP-B-676, LLL-B-631 or LLL-B-636, respectively.

9

01859

MIL-P-17303C(NAVY)

5.2 Packing.-

5.2.1 For domestic shipment - immediate use.- The packing material shall be packed to insure carrier acceptance and safe delivery to destination at the lowest applicable rate. Containers shall comply with the Consolidated Freight Classification Rules or other regulations applicable to the mode of transportation.

5.2.2 For domestic shipment and storage.- The packing material, packaged as specified in 5.1.2, shall be packed in snug-fitting wood cleated fiberboard, cleated plywood, nailed wood, corrugated or solid fiberboard boxes conforming to Specification NN-B-591, PPP-B-601 (overseas type), NN-B-621, LLL-B-631, or LLL-B-636, respectively. Fiberboard boxes shall conform to the special requirements of the applicable box specification. Closure of the shipping container shall conform to the applicable container specification. The gross weight of wood boxes shall not exceed 200 pounds, and fiberboard boxes shall not exceed 90 pounds.

5.2.3 For overseas shipment.- The packing material, packaged as specified in 5.1.2, shall be packed in snug-fitting wood cleated fiberboard, wood cleated plywood, nailed wood, or fiberboard boxes conforming to Specification JAN-P-103, PPP-B-801 (overseas type), JAN-P-106, or JAN-P-108, respectively. Boxes shall be lined with a sealed waterproof caseliner conforming to type I, grade B, class 2 of Specification MIL-L-10547. Shipping containers shall be closed and strapped in accordance with the appendix of the applicable container specification. The gross weight of wood boxes shall not exceed 200 pounds, and fiberboard boxes shall not exceed 70 pounds.

5.3 Marking.- In addition to any special marking required by the contract or order, unit packages and intermediate and exterior shipping containers shall be marked in accordance with Standard MIL-STD-129.

6. NOTES

6.1 Ordering data.- Procurement documents should specify the following:

    (a) Title, number, and date of this specification.
    (b) Class, type, and size required (see 1.2 and 3.3).
    (c) Whether domestic or overseas shipment will be required; if domestic, the type required (see 5.1 and 5.2).

10

01860

MIL-P-17393C(NAVY)

6.2 In the procurement of products requiring qualification, the right is reserved to reject bids on products that have not been subjected to the required tests and found satisfactory for inclusion on the Military Qualified Products List. The attention of suppliers is called to this requirement, and manufacturers are urged to communicate with the Bureau of Ships, Navy Department, Washington 25, D. C., and arrange to have the products that they propose to offer to the Army, the Navy, or Air Force, tested for qualification in order that they may be eligible to be awarded contracts or orders for the products covered by this specification. Information pertaining to qualification of products covered by this specification may be obtained from the Chief of Bureau of Ships, Department of the Navy, Washington 25, D. C.

6.3 The packaging, packing, and marking specified herein apply only to direct shipment to the Government and are not intended to apply to contracts or orders between the manufacturer and the prime contractor.

Patent notice.- When Government drawings, specifications, or other data are used for any purpose other than in connection with a definitely related Government procurement operation, the United States Government thereby incurs no responsibility nor any obligation whatsoever; and the fact that the Government may have formulated, furnished, or in any way supplied the said drawings, specifications, or other data is not to be regarded by implication or otherwise as in any manner licensing the holder or any other person or corporation, or conveying any rights or permission to manufacture, use, or sell any patented invention that may in any way be related thereto.

Custodian:
    Navy-Bureau of Ships
Other interest:
    Navy-Or

11

01861

## DOCUMENT CERTIFICATION

I, Thomas F. McCaffery, do swear under the penalties of perjury that the documents (numbered pages and initialed) in Volume II of the binder entitled, "Dana Corporation, General Information, Gasket-Related QPLs" are to the best of my knowledge and belief, true and accurate copies of original U.S. Government documents.

Thomas F. McCaffery

I, MARISA A. TRASATTI, a commissioned Notary Public in and for the County of HARFORD, State of MD, do certify that Thomas F. McCaffery appeared before me on this date in the City of Baltimore, State of Maryland and that I took his oath aforesaid.

SEAL

Date: 5/20/03

My commission expires: 8/29/06

**EXHIBIT D**

REPRODUCED AT THE NATIONAL ARCHIVES

N20.6²

**33P25**

SEPT. 1,
1931

SEP 1 1931

NAVY DEPARTMENT SPECIFICATION

# PACKING, METALLIC AND NONMETALLIC, PLASTIC, SYMBOL 1431

Technical requirements conform in detail to Federal Specification HH-P-101, officially revised by the Federal Specifications Board August 19, 1930. Copies of the Federal specification are therefore unnecessary and are not available for distribution by the Navy Department.

## A. GENERAL SPECIFICATIONS.

General Specifications for Inspection of Material, issued by the Navy Department, and Federal Specification ZZ–R–601, Rubber Goods; General Specifications (Methods of Physical Tests and Chemical Analyses), in effect on date of invitation for bids, shall form part of this specification.

## B. TYPES AND GRADES.

B-1. *Types.*—There are two types, as follows; to be furnished as specified.

Type A, metallic.
Type B, nonmetallic.

B-2. *Grade.*—The packing shall be of but one grade.

## C. MATERIAL AND WORKMANSHIP, ETC.

C-1. *Material.*—Packing shall be composed of soft metal in small particles, or of asbestos fiber, in combination with graphite and a binder.

C-2. *Workmanship.*—Packing shall show no evidence of poor workmanship.

## D. GENERAL REQUIREMENTS.

D-1. *Construction.*—The different components shall be thoroughly mixed and the binder shall prevent separation of the parts. It shall ordinarily be furnished in bulk form. It may be furnished, when so specified, within a fabric tubing, or be extruded and held together by means of a number of cotton threads braided about the strip.

D-2. *Asbestos fiber.*—The asbestos fiber shall be Chrysodile and shall contain not less than 12 per cent water of composition.

D-3. *Graphite.*—The graphite shall be that known as "lubrication flake" and shall contain not less than 90 per cent of graphite carbon. It shall not contain grit, dirt, or any deleterious substance.

D-4. *Binder.*—The binder shall be rubber or heavy mineral oil or wax.

59941—31

REPRODUCED AT THE NATIONAL ARCHIVES

2

## E. DETAIL REQUIREMENTS.

E-1. *Composition, Type A.*—Type A packing shall be of the following composition:

| | Per cent |
|---|---|
| Metal particles, minimum | 40 |
| Asbestos fiber, maximum | 15 |
| Graphite, maximum | 30 |
| Binder, maximum | 20 |

E-2. *Metal.*—The metal shall be such as will not score the rod, break up and work back into the system, or disintegrate at a temperature below 550° F. It shall be of one or more of the following forms: finely ground, small pellets, small strands, or small shreds.

E-3. *Composition, Type B.*—Type B packing shall be of the following composition:

| | Per cent |
|---|---|
| Asbestos fiber, minimum | 45 |
| Graphite, minimum | 50 |
| Binder, maximum | 10 |

## F. METHOD OF INSPECTION, TESTS, ETC.

F-1. *Sampling.*—A 1-pound sample of packing shall be taken at random from each lot of 1,000 pounds or less. When practicable, the inspector shall witness the making of the packing, at which time 6-ounce samples of the various components shall be obtained.

F-2. *Inspection.*—Packing shall be inspected to determine compliance with this specification.

F-3. *Tests.*—Tests shall be made in accordance with Federal Specification ZZ-R-601, Rubber Goods: General Specifications.

## G. PACKING AND MARKING.

G-1. *Packing.*—Unless otherwise specified, the packing shall be delivered in standard commercial containers, so constructed as to insure acceptance by common or other carriers, for safe transportation at the lowest rate, to the point of delivery.

G-2. *Marking.*—Unless otherwise specified, shipping containers shall be marked with the name of the material and the quantity contained therein, as defined by the contract or order under which shipment is made, the name of the contractor, and the number of the contract or order.

## H. NOTES.

H-1. Packing is intended for use for rods and valve stems under the following conditions:
Steam to 300 pounds pressure and 700° F. temperature.
Water to 300 pounds pressure.
Brine to 100 pounds pressure.
Air to 3,000 pounds pressure.
Gas to 75 pounds pressure.
Fuel oil to 500 pounds pressure and 250° F.

H-2. The right is reserved to reject any bids on makes of plastic packing which have not been subjected to the required tests and found satisfactory. The attention of the manufacturers is called
[33P25]

3

to this requirement, and they are urged to forward samples of the plastic packing which they propose to offer to the Navy in the future in order that tests may be made. These tests will be conducted at the expense of the manufacturers. Information with reference to the expense involved and as to where the samples should be sent will be supplied upon application to the Bureau of Supplies and Accounts. It is to be understood that the manufacturers shall pay all transportation charges to and from the point where tests are made. In the case of failure of the sample or samples submitted to prove satisfactory, consideration will be given to requests of the manufacturers for additional tests only after it has been clearly shown that changes have been made in the product with reference to design, method of manufacture, etc., which the bureau concerned considers sufficient to warrant conducting such additional tests.

H-3. When specified, award of contract for the subject packing will be made to the bidder whose packing shows the lowest cost per hour of service when tested as described above, when evaluated by the following formula:

$$\text{Service cost per hour} = \frac{\text{Bid price per pound} \times \text{no. of pounds used for test}}{\text{Total endurance, in hours.}}$$

H-4. Copies of Navy Department specifications and any other specifications forming a part thereof may be obtained upon application to the Bureau of Supplies and Accounts, Navy Department, Washington, D. C. When requesting, refer to specification by both title and number.

REFERENCES:

Eng. L2-1 (3-12-Da), Mar. 13 and May 13, 1931.
Navy Department Specifications Board issue of——, Mar. 17, 1931; 33-P-25, May 13, 1931.
C. & R. L2J11 (6Y58663) (S) N/C, Mar. 25, 1931.
C. & R. L2J11 (6Y58663) (Dma-5), Apr. 2, 1931.
Ord. L2-1 (2887) (Dma-5), June 4, 1931.
Y. & D. L2-1, Air 4, 1931.
Aero. Aer-D-L33-E1JH, JI2&P1T(NDS), May 2, 1931.
S. & A. L2J1-33P25.
[33P25]

**EXHIBIT E**



# SUPERSEDED

QPL-17303-26
6 April 1970
SUPERSEDING
QPL-17303-25
10 March 1969

FSC 5330

## QUALIFIED PRODUCTS LIST
## OF
## PRODUCTS QUALIFIED UNDER MILITARY SPECIFICATION



MIL-P-17303

PACKING MATERIALS, PLASTIC METALLIC AND PLASTIC NONMETALLIC

This list has been prepared for use by or for the Government in the procurement of products covered by the subject specification and such listing of a product is not intended in and does not connote indorsement of the product by the Department of Defense. All products listed herein have been qualified under the requirements for the product as specified in the latest effective issue of the applicable specification. This list is subject to change without notice; revision or amendment of this list will be issued as necessary. The listing of a product does not release the supplier from compliance with the specification requirements.

The activity responsible for this Qualified Products List is Naval Ship Engineering Center

| GOVERNMENT DESIGNATION | MANUFACTURER'S DESIGNATION | TEST OR QUALIFICATION REFERENCE | MANUFACTURER'S NAME AND ADDRESS |
|---|---|---|---|
| **Class 1**<br>Type A | Allpax | EES 3226<br>5/18/28 and 1/15/30 | The Allpax Co., Inc.<br>160 Jefferson Ave.<br>Mamaroneck, N. Y.<br>Plant: Same address |
| Type B | Allpax No. 1 | EES 9834-B 2/5/41 | The Allpax Co., Inc.<br>160 Jefferson Ave.<br>Mamaroneck, N. Y.<br>Plant: Same address |
| Type B | Anchor Style 808C,<br>Type 5 | EES 18DT458 | The Anchor Packing Co.<br>401 N. Broad St.<br>Philadelphia 8, Pa.<br>(Distributor)<br>Raybestos-Manhattan, Inc.<br>Plant: Manheim, Pa.<br>(Manufacturer) |
| Type B | John Crane Superseal No. 1 | EES 5001-F<br>5/17/38 and<br>EES 8-942 8/10/38 | Crane Packing Co.<br>6400 Oakton St.<br>Morton Grove, Ill.<br>Plant: Same address |
| Type B | Dura Plastic B-77 | EES 1ADT436 6/9/52 | Durametallic Corp.<br>2104 Factory Street<br>Kalamazoo 24F, Michigan<br>Plant: Same address |
| Type B | Garlock Style 909 | EES 010073 | Garlock, Inc.<br>Palmyra, N. Y.<br>Plant: Same address |
| Type B | Palmetto #1500 | EES C-1849 3/8/47 | Greene, Tweed and Company<br>North Wales, Pa.<br>Plant: Same address |
| Type B | J.M. C-610 | EES 610365B | Johns-Manville Sales Corp.<br>22 E. 40th Street<br>New York 16, N. Y.<br>Plant: Manville, N.J.<br>Waukegan, Illinois |
| Type B | R/M 1840-B | EES 18DT450 9/24/52 | Raybestos-Manhattan Inc.,<br>Packing Division<br>Manheim, Pa.<br>Plant: Same address |
| Type B | Sea Ro-Nok Seal, Style 301<br>Sea Ro No. 301 | EES B-7-E 6/5/41<br>EES C-522 &<br>BUSHIPS ltr. JJJ3(1)<br>(336) 5/1/44 | Sea-Ro Packing Co., Inc.<br>133 Wood-Ridge Street<br>Wood-Ridge, New Jersey 07075<br>Plant: Same address |

THIS DOCUMENT CONTAINS 3 PAG.

1 of 3

00614

GPL-17303

| Government Designation | Manufacturer's Designation | Test or Qualification Reference | Manufacturer's Name and Address |
|---|---|---|---|
| **Class I** Type C | Style 858 | EES 1KA140001 10/2/52 | The Anchor Packing Co. 401 North Broad Street Philadelphia 8, Pa. (Distributor) Raybestos-Manhattan, Inc. Plant: Manheim, Pa. (Manufacturer) |
| Type C | John Crane, Style 150 | EES 3907 10/31/31 | Crane Packing Co. 6400 Oakton St. Morton Grove, Ill. Plant: Same address |
| Type C | Garlock Style 8890 | EES 010074 | Garlock, Inc. Palmyra, N. Y. Plant: Same address |
| Type C | R/M 905-A | EES 1KA140001 10/2/52 | Raybestos-Manhattan Inc., Packing Division Manheim, Pa. Plant: Same address |
| Type C | Sea Ro Style 2501 | EES C-803 3/5/47 | Sea-Ro Packing Co., Inc. 133 Wood-Ridge Street Wood-Ridge, New Jersey 07075 Plant: Same address |
| Type D | John Crane, Style 250 | EES C-522 4/19/45 | Crane Packing Co. 6400 Oakton St. Morton Grove, Ill. Plant: Same address |
| Type E | J.M. Style #610 | EES 1P(4)066749 10/23/52 | Johns-Manville Sales Corp. 22 East 40th Street New York 16, N. Y. Plant: Manville, N. J. Waukegan, Illinois |
| Type F | John Crane Super Seal #1 | EES 5001-F 5/17/38 & EES-B-042 and dtd. 8/25/65 | Crane Packing Company 6400 Oakton Street Morton Grove, Illinois Plant: Same address |
| **Class II** Type C | Ankorite Style 804 | EES 610033A | Anchor Packing Co. 401 North Broad St. Philadelphia, Pa. (Distributor) Raybestos-Manhattan, Inc. Plant: Manheim, Pa. (Manufacturer) |
| Type C | John Crane Style No. 6 AM CR | EES 010033A | Crane Packing Company 6400 Oakton St. Morton Grove, Ill. Plant: Same address |
| Type C | Garlock Style 5855 | EES 010073 | Garlock, Incorporated Palmyra, N. Y. Plant: Same address |
| Type C 1/8 inch and over | M2 4686 | EES 610579 | Johns-Manville Sales Corp. 22 E. 40th Street New York 16, N. Y. Plant: Manville, N. J. Waukegan, Illinois |
| Type C | R/M Style LS8842 | EES 610033A | Raybestos-Manhattan Inc. Packing Division Manheim, Pa. Plant: Same address |

2 of 3

00615



QPL-17303

| Government Designation | Manufacturer's Designation | Test or Qualification Reference | Manufacturer's Name and Address |
|---|---|---|---|
| **Class II**<br>Type C | Sea-Ro Style 303 | EES 1A066749 9/20/50 | Sea-Ro Packing Co., Inc.<br>133 Wood-Ridge Street<br>Wood-Ridge, New Jersey 07075<br>Plant: Same address |
| Type D | Style 820-IIJ | EES 1P(4) 066749 10/23/52 | The Anchor Packing Co.<br>401 North Broad Street<br>Philadelphia 8, Pa.<br>(Distributor)<br>Raybestos-Manhattan, Inc.<br>Plant: Manheim, Pa.<br>(Manufacturer) |
| Type D | "Style #1045" | EES 1P(4)066749 10/23/52 | Raybestos-Manhattan Inc.<br>Packing Division<br>Manheim, Pa.<br>Plant: Same address |
| **Class II**<br>Type E | Style No. 809 | EES 010033 | The Anchor Packing Co.<br>401 North Broad Street<br>Philadelphia 8, Pa.<br>(Distributor)<br>Raybestos-Manhattan, Inc.<br>Plant: Manheim, Pa.<br>(Manufacturer) |
| Type E | John Crane Style 1871 | EES 010033 | Crane Packing Co.<br>6400 Oakton St.<br>Morton Grove, Ill.<br>Plant: Same address |
| Type E | Style 127 | NAVSECPHILA01V<br>Proj. Rpt. S-792<br>Garlock Inc. Lab.<br>Rpts. R843-3 &<br>R744-B | Garlock Inc.<br>Palmyra, NY 14522<br>Plant: Same address |
| Type E | Garlock Style 5901 | EES 010033D | Garlock, Inc.<br>Palmyra, N.Y.<br>Plant: Same address |
| Type E | J.M. Style #397 | EES 610579 | Johns-Manville Sales Corp.<br>22 E. 40th Street<br>New York 16, N. Y.<br>Plant: Manville, N. J.<br>Waukegan, Illinois |
| Type E | R/M 325 | EES 010033 | Raybestos-Manhattan, Inc.<br>Packing Division<br>Manheim, Pa. 17545<br>Plant: Same address |
| Type F | Anchor Style 858-CMB | EES 610423 | The Anchor Packing Co.<br>401 N. Broad Street<br>Philadelphia 8, Pa.<br>(Distributor)<br>Raybestos-Manhattan, Inc.<br>Plant: Manheim, Pa.<br>(Manufacturer) |
| **Class III**<br>Type B | Sea Ro Style 503 | EES 8-7 5/5/47 | Sea-Ro Packing Co., Inc.<br>133 Wood-Ridge, New Jersey 07075<br>Plant: Same address |

3 of 3

00616

**EXHIBIT F**

Law Offices of Peter G. Angelos, PC
Firm I.D. #99975
Jason B. Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Governor's Plaza South
2001 N. Front Street
Building 3, Suite 330
Harrisburg PA 17102
(717) 232-1886

Filed and Attested by the
Office of Judicial Records
01 JUN 2022 11:05 am
E. HAURIN

Greg Vollman

v.

Air & Liquid Systems Corporation as
successor by merger to Buffalo Pumps, et al.

\* IN THE COURT OF
\* COMMON PLEAS OF
\* PHILADELPHIA COUNTY,
\* PENNSYLVANIA
\*
\* CIVIL ACTION LAW
\* ASBESTOS LITIGATION
\*
\* MAY TERM, 2022
\* No. 02770

### PRAECIPE TO AMEND SPELLING OF PARTY NAME

To the Prothonotary:

Please amend the Plaintiff's first name to read **Greg on the Civil Cover Sheet** in the above captioned matter. When e-filing the Plaintiff's first name was inadvertently entered as Gregg.

LAW OFFICES OF PETER G. ANGELOS, P.C.

By: _____
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Governor's Plaza South
2001 N. Front Street
Building 3, Suite 330
Harrisburg PA 17102
(717) 232-1886

*Attorney for Plaintiff*

DATED: 6/1/22

Case ID: 220502770



Filed and Attested by the
Office of Judicial Records
22 JUN 2022 12:41 pm
E. HAURIN

**DUANE MORRIS LLP**
**By:  Sharon L. Caffrey**
**Identification No. 49519**
**By:  Dawnn E. Briddell**
**Identification No. 47329**
**30 S. 17th Street**
**Philadelphia, PA  19103-4196**
**(215) 979-1180**

| |
|---|
| **NOTICE TO PLEAD**<br>**TO: Plaintiff**<br>You are hereby notified to plead the enclosed Preliminary Objections within twenty (20) days from service hereof or a default judgment may be entered against you.<br><br>  */s/ Sharon L. Caffrey*<br>Sharon L. Caffrey<br><br>Attorney for Defendant,<br>Ford Motor Company |

| | | |
|---|---|---|
| GREG VOLLMAN, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| *Plaintiff,* | : | |
| | : | MAY TERM, 2022 |
| v. | : | NO.: 2770 |
| | : | |
| FORD MOTOR COMPANY, et al., | : | |
| | : | CIVIL ACTION |
| *Defendants.* | : | ASBESTOS LITIGATION |

## <u>PRELIMINARY OBJECTIONS OF DEFENDANT FORD MOTOR COMPANY TO PLAINTIFF'S COMPLAINT</u>

Defendant Ford Motor Company ("Ford"), by and through its undersigned counsel, files its Preliminary Objections to Plaintiff's Complaint as follows:

1.    Plaintiff filed a Short Form Complaint in the above-captioned case on or about May 31, 2022.  *See* redacted copy of Complaint, attached as Exhibit A.

2.    Ford was served with Plaintiff's Complaint on June 2, 2022.

3.    Plaintiff is a resident of Allentown, PA.  Exhibit A at ¶19.

4. Ford is a Delaware corporation with its principal place of business in Michigan. *See* Ford Motor Company's 2020 Annual Report on Form 10-K, relevant portions attached as Exhibit B.

5. Plaintiff's Complaint alleges that Greg Vollman ("Mr. Vollman") was diagnosed with asbestosis and mesothelioma on or about November 16, 2021. Exhibit A at ¶25.

6. Plaintiff alleges that he was occupationally exposed to asbestos products from 1972 until 1990 through employment in the "… United States Navy as a Boiler Tech onboard the USS Semmes; Lehigh University in Bethlehem, PA as a Lead Boiler Operator; and by Bethlehem Steel, in Bethlehem, PA in the Steam, Water, and Air department as a boiler cleaner, mechanical helper, boiler operator, operator helper, air compressor operator, and a foreman and was exposed to the asbestos products of the defendants herein at each location." Exhibit A at ¶21.

7. Plaintiff's Complaint does not provide "a complete employment history, including location and type of employment". The employment provided only covers an eighteen (18) year period between 1972 and 1990; Mr. Vollman is 67 years of age. Exhibit A at ¶¶19(a), 21.

8. Plaintiff's Complaint also alleges exposure to asbestos from "… automotive products while performing personal automotive work throughout his lifetime, to include the replacement of asbestos containing brakes, brake linings, clutches, friction material, and other automotive products." Exhibit A at ¶23.

9. Plaintiff's Complaint contains no allegations that Mr. Vollman worked with or around any asbestos-containing products attributable to Ford in Philadelphia or in Pennsylvania. Exhibit A. More specifically, there are no allegations whatsoever that Mr. Vollman handled asbestos-containing brakes, clutches, or gaskets attributable to Ford, or was in close proximity to mechanics working with asbestos-containing brakes, clutches, or gaskets attributable to Ford. *Id.*

2

**A.**     <u>**Plaintiff's Complaint Fails to Establish Personal Jurisdiction over Ford.**</u>

10.     Pennsylvania Rules of Civil Procedure 1028(a)(1) and 1041.1(d) allow parties to file preliminary objections for lack of jurisdiction over the person of the defendant in an asbestos action.

11.     Pennsylvania has neither general nor specific jurisdiction over Ford under the facts alleged by Plaintiff in the Complaint.

12.     Nowhere in the Complaint does Plaintiff allege that Mr. Vollman was exposed to asbestos-containing products attributable to Ford in Pennsylvania or Philadelphia at any time. Exhibit A.

13.     There are no allegations of Ford exposure, or any acts of Ford in Pennsylvania, and therefore, exercising specific personal jurisdiction over Ford would be inconsistent with the Due Process Clause of the Fourteenth Amendment.

14.     Plaintiff's Complaint does not establish general personal jurisdiction over Ford, a Delaware corporation with its principal place of business in Michigan.

15.     Plaintiff's Complaint should be dismissed pursuant to Pa.R.C.P. 1028(a)(1) because Plaintiff's Complaint fails to establish personal jurisdiction over Ford.

**B.**     <u>**Plaintiff Fails to Plead Facts Required by the Philadelphia County Court Rules.**</u>

16.     Ford incorporates paragraphs 1 through 15 above as if fully set forth herein.

17.     Pennsylvania Rule of Civil Procedure 1028(a)(2) allows parties to file preliminary objections for failure of a pleading to conform to law or rule of court.

18.     Philadelphia County Court Rule 1041.1(B) requires that plaintiffs provide their complete employment history, including locations of the employment. *See* Phila. Cty. R. 1041.1(B)(3).

3

19.     Plaintiff's Complaint fails to provide a complete employment history, including locations, in violation of Phila. Cty. R. 1041.1(B)(3); *see* Exhibit A.

20.     The missing information is material to this litigation and is required under Phila. Cty. R. 1041.1(B)(3).

21.     Plaintiff's Complaint is significantly deficient in the factual support required by the Philadelphia County Court Rules, and Ford would be prejudiced unless Plaintiff amends the Complaint to comply with Phila. Cty. R. 1041.1(B).

**C.      Plaintiff's Complaint is Not Verified and Fails to Conform to Law or Rule of Court.**

22.     Ford incorporates paragraphs 1 through 21 above as if fully set forth herein.

23.     Plaintiff's Complaint lacks the verifications required by Rule 1024(a) of the Pennsylvania Rules of Civil Procedure.

24.     Rule 1024(a) requires that "[e]very pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified." Pa. R. C. P. 1024(a).

25.     Rule 1024(c) provides that "[t]he verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party. Pa. R. C. P. 1024(c).

4

26.     Plaintiff's Complaint does not contain a verification signed by Plaintiff Greg Vollman.

27.     The attorney verification attached to Plaintiff's Complaint states that "I verify that the statements made in this Complaint are true and correct. I make this verification on behalf of the plaintiffs because they are outside of the jurisdiction and a verification cannot be obtained within the time limits for filing this complaint. This verification is based on personal knowledge and belief and information obtained from plaintiffs and other sources. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities. *See* Exhibit A.

28.     A complaint is defective where it is verified by the petitioner's attorney and fails to state which allegations were made on the basis of the verifying attorney's knowledge and what the source of the attorney's information is in regards to the matters not within his knowledge. *See Rupel v. Bluestein*, 421 A.2d 406, 411 (Pa. Super. 1980); *see also* Pa. R. C. P. 1024(c).

29.     Further, "[i]mproper verification of a complaint may not be brushed aside as a mere 'legal technicality,'… and may result in the waiver of rights by the pleader." *Id.*; *see also Signora v. Kaplan*, 33 Pa. D. & C.4th 219, 224 (Pa. Com. Pl. 1996).

30.     It is recognized that verification is the manner in which a party attests to the truthfulness of the pleading; without proper verification, the pleading is of "little value to the court." 3 Standard Pa. Practice 2d, ch. 16 §16:35.

31.     "A court will not treat verification lightly or as a procedural formality; the law requires verification and without it, a statement of claims is a mere narration which amounts to nothing." *Id.*

5

32.     Where a plaintiff's complaint has not been properly verified, Pennsylvania courts have directed the offending plaintiff to conform to the provisions of Pa. R. C. P. 1024. *See Johnston v. Shapp*, 57 Pa. D. & C. 753 (C.P. Dau. 1972).

33.     The attorney verification is a blanket statement and plainly states it is made, not based on counsel's personal knowledge of the allegations in the Complaint, but rather on behalf of Mr. Vollman because he is outside of the jurisdiction and a verification from him could not be obtained in time for filing the complaint.  Exhibit A.

34.     Although the attorney verification states "the statements made in this Complaint are true and correct", it fails to "state which allegations [of the Complaint] were made on the basis of the verifying attorney's knowledge", but rather declares that the "verification" is based on personal knowledge and belief and information obtained from plaintiffs and other sources. *Id.*

35.     The verification is improper and should be replaced with a proper verification executed by Mr. Vollman pursuant to Pa. R. C. P. 1024.

WHEREFORE, Defendant Ford Motor Company respectfully requests this Honorable Court sustain these Preliminary Objections.

A letter brief is attached.

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Sharon L. Caffrey*

_____

Sharon L. Caffrey

Dated: June 22, 2022

## CERTIFICATE OF SERVICE

I, Dawnn E. Briddell, certify that a true and correct copy of Defendant Ford Motor Company's Preliminary Objections to Plaintiff's Complaint has been electronically filed and is available for viewing and downloading from the FJD electronic filing system to all counsel of record and that a true and correct copy of the document was served via electronic mail to Plaintiff's counsel on June 22, 2022.

*/s/ Dawnn E. Briddell__*
Dawnn E. Briddell

Case ID: 220502770
Control No.: 22064507

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

SHARON L. CAFFREY
DIRECT DIAL: +1 215 979 1180
PERSONAL FAX: +1 215 689 1932
*E-MAIL:* SLCaffrey@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS

ALLIANCES IN MEXICO
AND SRI LANKA

Filed and Attested by the
Office of Judicial Records
22 JUN 2022 12:31 pm
E. HAURIN

June 22, 2022

**VIA E-FILING**

The Honorable Abbe F. Fletman
Philadelphia Court of Common Pleas
City Hall Room 622
Philadelphia, PA 19107

**Attention:   Richard Wood, Esquire**
**                    Javier Soler, Esquire**

## ASBESTOS LITIGATION

**Plaintiff's Counsel:  Law Offices of Peter G. Angelos, P.C.**

*Greg Vollman v. Ford Motor Company, et al.,*
**P.C.C.P. No. 2205-2770**

## DEFENDANT FORD MOTOR COMPANY'S BRIEF IN SUPPORT OF PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT

Case ID: 220502770
Control No.: 22064507

GREG VOLLMAN,                   :    COURT OF COMMON PLEAS

                               :    PHILADELPHIA COUNTY

            *Plaintiff*,     : 

                               :    MAY TERM, 2022

     v.                      :    NO.: 2770

                               : 

FORD MOTOR COMPANY, et al.,   : 

                               :    CIVIL ACTION

         *Defendants.*    :    ASBESTOS LITIGATION

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2022, upon consideration of the Preliminary Objections of Defendant Ford Motor Company to Plaintiff's Complaint, with supporting memorandum, and Plaintiff's opposition thereto, it is ORDERED the Preliminary Objections are SUSTAINED. Plaintiff's Complaint is STRICKEN and all claims and cross-claims against Ford Motor Company are dismissed.

BY THE COURT:

_____ J.

| GREG VOLLMAN, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| *Plaintiff,* | : | |
| | : | MAY TERM, 2022 |
| v. | : | NO.: 2770 |
| | : | |
| FORD MOTOR COMPANY, et al., | : | |
| | : | CIVIL ACTION |
| *Defendants.* | : | ASBESTOS LITIGATION |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of the Preliminary Objections of Defendant Ford Motor Company to Plaintiff's Complaint, with supporting memorandum, and Plaintiffs' opposition thereto, it is ORDERED THAT Plaintiff shall amend the Complaint, within 20 days of the entry of this Order to comply with Phila. Cty. R. 1041.1(B) (3).

IT IS FURTHER ORDERED THAT Plaintiff's Amended Complaint shall be properly verified pursuant to Rule 1024(a) of the Pennsylvania Rules of Civil Procedure.

BY THE COURT:

_____
J.

The Honorable Abbe F. Fletman
June 22, 2022
Page 2

**D**uane**M**orris

Dear Judge Fletman:

Pursuant to the Court's abbreviated motion practice, Defendant Ford Motor Company ("Ford") submits this Brief in Support of its Preliminary Objections to Plaintiff's Complaint.

## EXECUTIVE SUMMARY

Pursuant to U.S. Supreme Court precedent, Plaintiff's Complaint fails to establish personal jurisdiction over Ford and must be dismissed. Under the Fourteenth Amendment's Due Process Clause, Ford must be subject to either general or specific jurisdiction in Pennsylvania on Plaintiff's claims in order for the Court to exercise personal jurisdiction over Ford. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011).[1]

As to specific jurisdiction, the U.S. Supreme Court released an opinion reiterating that specific jurisdiction requires a "connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). The Court referred to its decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014) as "illustrat[ing] this requirement." *Id.* The Court explained that there was no specific jurisdiction over the defendant in *Walden* even though the plaintiff "suffered foreseeable harm" in the forum because the "relevant conduct occurred entirely" out-of-state. *Id.* at 1781-82 (quoting *Walden*, 134 S. Ct. at 1124, 1126) (emphasis omitted). Here, Ford is not subject to specific jurisdiction in Pennsylvania because Plaintiff's Complaint does not allege that Greg Vollman ("Mr. Vollman") was exposed to Ford products in Pennsylvania.

Ford also is not subject to general jurisdiction in Pennsylvania because it is not incorporated in Pennsylvania and does not maintain its principal place of business in Pennsylvania, and is not otherwise "at home" in Pennsylvania as provided by the United States Supreme Court. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017).

Plaintiff has also failed to comply with the pleading requirements of Philadelphia County Rule 1041.1 (B)(3) because the Complaint fails to provide a complete employment history for Mr. Vollman. Plaintiff has further failed to comply with Rule 1024(a) of the Pennsylvania Rules of Civil Procedure because the Complaint lacks a proper verifications.

Accordingly, these Preliminary Objections should be sustained.

---

[1] The issue of consent by registration as a theory of establishing general jurisdiction has now been resolved by the Pennsylvania Supreme Court in *Mallory v. Norfolk Southern Railway Co.*, 266 A.3d 542 (Pa. 2021), *cert. granted*, (U.S. Apr. 25, 2022) (No. 21-1168). The Court in *Mallory* held that Pennsylvania's statutory scheme regarding registration of foreign corporations is unconstitutional to the extent that it confers jurisdiction over foreign corporations that are not "at home" in Pennsylvania.

The Honorable Abbe F. Fletman
June 22, 2022
Page 3

**D̄uaneM̄orris**

## FACTUAL BACKGROUND

Plaintiff filed a Short Form Complaint in the above-captioned case on May 31, 2022. Exhibit A. Ford was served with Plaintiff's Complaint on June 2, 2022. Plaintiff is a resident of Allentown, PA. Exhibit A. Ford is a Delaware corporation with its principal place of business in Michigan. Exhibit B. Mr. Vollman was diagnosed having asbestosis and mesothelioma on or about November 16, 2021. Exhibit A at ¶26.

The Complaint also alleges that Mr. Vollman was occupationally exposed to asbestos and asbestos-containing products from 1972 through 1990 through his employment in the US Navy as a boiler tech serving onboard the USS Semmes, through employment as a boiler operator at Lehigh University, and through employment as a boiler operator/mechanical helper at Bethlehem Steel. Exhibit A at ¶21. Plaintiff also claims that he was exposed to asbestos from automotive products, but does not specify where Plaintiff worked with those products. Exhibit A at ¶23.

Plaintiff's Complaint contains no allegations that Mr. Vollman worked with or around any asbestos-containing products attributable to Ford in Philadelphia or in Pennsylvania. Exhibit A. More specifically, there are no allegations whatsoever that Mr. Vollman handled asbestos-containing brakes, clutches, or gaskets attributable to Ford, or was in close proximity to mechanics working with asbestos-containing brakes, clutches, or gaskets attributable to Ford. *Id.*

Plaintiff's Complaint does not provide a complete employment history, including locations, which is in violation of the pleading requirements for asbestos litigation pursuant to Philadelphia County Court Rule 1041.1(B). *Id.* The employment provided only covers an eighteen (18) year period between 1970 and 1990; Mr. Vollman is 67 years of age. Exhibit A, ¶19. Plaintiff's Complaint also does not contain a proper verification pursuant to Rule 1024(a) of the Pennsylvania Rules of Civil Procedure.

## LEGAL ARGUMENT

Ford submits these Preliminary Objections under Pennsylvania Rules of Civil Procedure 1028(a)(1), (2) and 1041.1(d), which allow parties to file preliminary objections to any pleading for lack of jurisdiction over the person of the defendant, Philadelphia County Rule 1041.1(B) for pleading deficiencies, and Pa. R. Civ. P. 1024(a) for failure of a pleading to conform to law or rule of court.

### I. Personal Jurisdiction is Lacking Over the Out-of-State Defendant Ford.

The Pennsylvania Long-Arm statute establishes personal jurisdiction over persons outside of this Commonwealth—its reach extends to the fullest extent allowed by the United States Constitution. 42 Pa.C.S. § 5322(b). The general rule stated in subsection (a), provides for the exercise of jurisdiction over a person "who acts directly or by an agent to a cause of action or other matter arising from" one of ten types of specified conduct. 42 Pa.C.S. § 5322(a). However, section (b) is a catchall provision authorizing the exercise of personal jurisdiction over persons who do not come within one of the express provisions of the ten subsections of section (a), so long as the minimum requisites of federal constitutional law are met. 42 Pa.C.S. § 5322(b) ("the jurisdiction of the tribunals of this Commonwealth shall extend to all persons to the fullest extent allowed

The Honorable Abbe F. Fletman
June 22, 2022
Page 4



under the Constitution of the United States"). As a practical matter, each of the ten subsections of § 5322(a) are wholly subsumed within the catchall provision of § 5322 (b). *Scoggins v. Scoggins,* 555 A.2d 1314, 1319 (Pa. Super. Ct. 1989). Consequently, the only appropriate focus in a Pennsylvania personal jurisdiction analysis is whether the minimum requisites of Constitutional due process have been met. *Id.*

The United States Constitution permits states to authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with the state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'". *BNSF,* 137 S. Ct. at 1558; *Daimler AG v. Bauman,* 571 U.S. 117, 126 (2014) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: specific and general. *BNSF,* 137 S. Ct. at 1558; *Daimler,* 571 U.S. at 126-134. Specific jurisdiction requires that "the in-state activities of the corporate defendant had not only been continuous and systematic, but also gave rise to the liabilities sued on." *Daimler* at 126 (internal quotations omitted). By contrast, general jurisdiction requires a finding that "continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 127. In *Daimler,* the U.S. Supreme Court clarified that absent exceptional circumstances "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 137 (internal quotations omitted); *see also BNSF,* 137 S. Ct. at 1558.

A.   **Ford Is Not Subject To Specific Jurisdiction In Pennsylvania on Plaintiff's Claims.**

Ford is not subject to specific jurisdiction in Pennsylvania in this case because Plaintiff's claims are not premised on any "in-state activities" of Ford. *BNSF,* 137 S. Ct. at 1558; *Daimler,* 571 U.S. at 126-134. Plaintiff does not allege that Mr. Vollman's injury arises from any Ford acts or omissions in Pennsylvania. For the Court to exercise specific personal jurisdiction over Ford in this case, "Plaintiffs' cause of action" must "arise out of [Ford's] conduct or actions occurring in Pennsylvania." *Id.* at 126. Put differently, there must be a "'relationship among [Ford], the forum, and the litigation.'" *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014) (citation omitted). For jurisdiction to comport with the limits of due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Walden,* 134 S. Ct. at 1122-23.

Here there is no such relationship. Plaintiff's Complaint does not allege any claims arising from acts or omissions by Ford in Pennsylvania. There are no allegations in the Complaint that Mr. Vollman worked with or around any asbestos-containing products attributable to Ford in Pennsylvania. Without any allegations concerning Ford products causing harm to Mr. Vollman in Pennsylvania, or that Ford engaged in any "suit-related conduct" that "create[d] a substantial connection" with Pennsylvania, specific personal jurisdiction does not exist over Ford in this case. *Id.*

Case law supports that courts do not have specific personal jurisdiction over a defendant like Ford under similar facts. One district court dismissed plaintiffs' asbestos complaint because it did not allege that plaintiffs' claims arose from the defendants' activities in the forum state. *In*

The Honorable Abbe F. Fletman
June 22, 2022
Page 5

**DuaneMorris**

*re Asbestos Prods. Liability Litig.,* MDL No. 875, 2014 WL 5394310, at *11 (E.D. Pa. Oct. 23, 2014) ("[t]he Plaintiffs do not allege, and cannot allege, that the Court has specific jurisdiction (based on the long-arm statute or constitutional due process) over any of the defendants as their claims do not arise from the defendants' activities in the Virgin Islands."). Another court has held that it did not have specific jurisdiction over a defendant where "the Plaintiff's claims . . . do not arise out of or relate to [the defendant's] activities within" the forum state. *Brown v. CBS Corp.,* 19 F. Supp. 3d 390, 397 (D. Conn. 2014). A third court, in Missouri, has held that there was no specific jurisdiction over an asbestos defendant where the complaint did "not allege that [the defendant] committed any act in Missouri in connection with Plaintiff's claims." *Smith v. Union Carbide Corp.,* Cause No. 1422-CC00457 (Mo. Cir. January 12, 2015).

A fourth court, in Mississippi, has held that there was no personal jurisdiction where there was a lack of evidence sufficiently demonstrating a meaningful connection between plaintiff's injuries and Ford's Mississippi contacts as identified by plaintiff. *Pitts v. Ford Motor Company,* 127 F.Supp.3d 676, 686 (S.D. Miss. 2015) ("The mere fact that Plaintiff were injured in Mississippi does not, by itself, create specific jurisdiction over Ford in Mississippi."). *See also Erwin v. Ford Motor Co.,* No. 8:16-cv-01322, 2016 WL 7655398, at *7 (M.D. Fl. Aug. 31, 2016) (Court lacked specific personal jurisdiction over Ford when Ford did not manufacture or sell its vehicle in Florida and plaintiff's claim did not arise out of Ford's contacts with Florida; *Cahen v. Toyota Motor Corp.,* 147 F.Supp.3d 955, 962 (N.D. Cal. 2015) (Class action plaintiff failed to establish personal jurisdiction over Ford in California where the "Ford Plaintiff bring solely Oregon and Washington causes of action stemming from transactions that occurred in those states. They have failed to demonstrate that specific jurisdiction over Ford is appropriate in California."). The same is true here; Plaintiff does not allege a connection between Ford's Pennsylvania contacts and Mr. Vollman. This Court, therefore, may not exercise specific personal jurisdiction over Ford. These Preliminary Objections should be sustained.

### B. Ford Is Not Subject To General Jurisdiction In Pennsylvania.

Ford also is not subject to general jurisdiction in Pennsylvania. As stated *supra,* it is undisputed that Ford is incorporated in Delaware and has its principal place of business in Michigan. General jurisdiction over Ford does not apply because Ford's affiliations with this Commonwealth are not so continuous and systematic as to render Ford essentially at home in this Commonwealth, or comparable to a domestic Pennsylvania corporation. *BNSF,* 137 S. Ct. at 1558; *Daimler,* 571 U.S. at 126-134. Although Ford does business in many places, including Pennsylvania, that fact is insufficient to establish general jurisdiction over a defendant— "otherwise, 'at home' would be synonymous with 'doing business.'" *Daimler,* 571 U.S. at 139 n. 20; *see also Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984) (noting that mere purchases or sales, even at regular intervals, are not enough to warrant a state's assertion of general jurisdiction over a foreign defendant). The U.S. Supreme Court recently re-affirmed this principle in *BNSF,* finding that "over 2000 miles of railroad trick and more than 2,000 employees in Montana" were an insufficient basis for general jurisdiction. *See BNSF,* 137 S. Ct. at 1559. To subject Ford to general jurisdiction in Pennsylvania based upon Plaintiff's Complaint would violate due process.

Plaintiff may argue that *Daimler* should be limited to cases involving corporations from foreign countries, but this is clearly a wrong interpretation and understanding. Justice Ginsburg's

The Honorable Abbe F. Fletman
June 22, 2022
Page 6

**Duane Morris**

express definition in *Daimler* of a "foreign corporation" included both "*sister-state* or foreign-country" corporations. *Daimler*, 571 U.S. at 127 (citing *Goodyear*, 564 U.S. 915 at 919) (emphasis added); *see also In re Asbestos Prods. Liability Litig.*, MDL No. 875, 2104 WL 5394310 at *2 ("[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations....") (citations omitted). As the U.S. Supreme Court recently explained, "[t]he Fourteenth Amendment due process constraint described in *Daimler* . . . applies to all state-court assertions of general jurisdiction over nonresidents; the constraint does not vary with the type of claim asserted or business enterprise sued." *BNSF*, 137 S. Ct. at 1558-59.

Plaintiff may also argue that general jurisdiction may be exercised over Ford under a theory that it does business in Pennsylvania. The U.S. Supreme Court has held—twice—that the "'paradigm' forums in which a corporate defendant" is subject to general jurisdiction are the States where it is incorporated and headquartered, absent an "exceptional" case. *See BNSF Ry. Co.*, 137 S. Ct. at 1558 (quoting Daimler, 571 U.S. at 136-139 & n.19). The U.S. Supreme Court further explained that the general jurisdiction inquiry "does not focus solely on the magnitude of the defendant's in-state contacts .... Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF*, 137 S. Ct. at 1559 (internal citation omitted). In *BNSF*, the U.S. Supreme Court, applying the *Daimler* analyses, reiterated that in-state business "does not suffice to permit the assertion of general jurisdiction over claims ... that are unrelated to any activity occurring in [the state]." *BNSF*, 137 S. Ct. at 1559.

Further, in *Mallory v. Norfolk Southern Railway Co.*, 266 A.3d 542 (Pa. 2021), *cert. granted*, (U.S. Apr. 25, 2022) (No. 21-1168), the Pennsylvania Supreme Court rejected the argument that general jurisdiction may be exercised over a foreign corporation under a theory of doing business in Pennsylvania. The Court in *Mallory* held that Pennsylvania's statutory scheme regarding registration of foreign corporations is unconstitutional to the extent that it confers jurisdiction over foreign corporations that are not "at home" in Pennsylvania.

Similarly, in *Pitts*, the Southern District of Mississippi applied the *Daimler* Court's analyses to Ford's activities in Mississippi and found that Ford was not subject to general jurisdiction in Mississippi. The *Pitts* Court applied the same *Goodyear* analysis employed by the *Daimler* Court, stating that "[w]here a defendant is a foreign corporation, the corporation's affiliations with the state must be 'so continuous and systematic' as to render it essentially 'at home' in the forum state." 127 F.Supp.3d at 683 (quoting *Goodyear*, 564 U.S. 915 at 919). Plaintiff in *Pitts* bought a Ford vehicle in Texas and drove it to Mississippi, where Plaintiff were involved in a collision in Biloxi, Mississippi. Plaintiff sued Ford under a defect in design, engineering and manufacturing theory, and argued that Ford was subject to general personal jurisdiction in Mississippi because:

> Ford is qualified and registered to do business in the State of Mississippi, licensed to sell or distribute new automobiles in Mississippi, contracts with Mississippi based dealers, provides operational guidelines to Mississippi dealers, has purchased a Mississippi dealership, advertises in Mississippi, and has an agent for service of process in Mississippi.

*Id.* at 683. The *Pitts* Court rejected plaintiff's allegations, holding that:

The Honorable Abbe F. Fletman
June 22, 2022
Page 7

**D**uane**M**orris

even assuming the truth of Plaintiff's allegations, ***the contacts Plaintiff identify are insufficient to establish that Ford is susceptible to general jurisdiction*** in the State of Mississippi. A defendant corporation may be found subject to general jurisdiction in a particular state where "that corporation's 'affiliations with the [state] are so 'continuous and systematic,' as to render [it] essentially at home in the forum [state].'" The record is clear that Ford is neither incorporated nor has its principal place of business in Mississippi. The contacts that Plaintiff have identified Ford as having with Mississippi demonstrate that ***Ford is at most "doing business" in Mississippi***, and those contacts do not reveal activities that are so "continuous and systematic" as to render Ford "at home" in Mississippi.

*Id.* (quoting *Daimler*, 571 U.S. at 138-139) (emphasis added).

Further, in February 2018, the Texas Court of Appeals held that the Texas trial court did not have general jurisdiction over Ford in a wrongful death lawsuit stemming from a car accident in Mexico.[2] *Ford Motor Company, et al. v. Natividad Cardenas Cejas, et al.,* No. 09-16-000280-CV, 2018 WL 1003791, at *10 (Tex. App. Feb. 22, 2018). The *Cardenas* Court held that "[Ford's] business activities … in Texas are insufficient to remit the assertion of all purpose general jurisdiction over claims like Plaintiffs." *Id.* Plaintiffs' jurisdiction allegations against Ford included:

Ford designs products for the Texas market; Ford advertises in Texas; Ford has established channels of regular communication with Texas customers; Ford markets its products through distributors who will sell the products in Texas; Ford owns property in Texas; Ford pays taxes in Texas; Ford has employees in Texas; and Ford maintains a registered agent in Texas.

*Id.* at *6.

The *Cardenas* Court held that "[t]o hold that Plaintiffs' jurisdictional allegations as to Ford … are sufficient to support general jurisdiction here would be an 'exorbitant exercise[] of all-purpose jurisdiction.'" *Id.* at *10 (quoting *Daimler*, 571 U.S. at 139).

Plaintiff's allegations, even if taken as true, do not establish general jurisdiction over Ford in this case. Plaintiff's Complaint presents no exceptional circumstances that would allow Ford to be considered "at home" in Pennsylvania, outside its state of incorporation (Delaware) or principal place of business (Michigan). *Id.* at 761 n. 19;[3] *see also Annex Telecom Co. v. Brown,* No. 13-

---

[2]   The trial court held that Ford was not subject to specific jurisdiction. This ruling was not appealed by any party.

[3]   Both *BNSF* and *Daimler* cite to *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952), as an "exceptional case." *BNSF,* 137 S. Ct. at 1558. Benguet was a mining company physically located in the Philippines. Because the Japanese captured the mine lands during wartime, the president of Benguet, who was also general manager and principal stockholder of Benguet, relocated the business temporarily to Ohio, where he maintained the books, maintained company bank accounts, paid employees, conducted business meetings, and managed the wartime business of the corporation. Plaintiff sued Benguet on claims that did not arise in Ohio, nor did the claims relate to Benguet's activities in Ohio. *Perkins,* 342 U.S. at 447-8. The

The Honorable Abbe F. Fletman
June 22, 2022
Page 8

DuaneMorris

4605, 2014 U.S. Dist. LEXIS 146136, at *14 (E.D. Pa. Oct. 14, 2014) (finding no general jurisdiction over out-of-state defendant in Pennsylvania under a *Daimler* analysis where plaintiff had not presented "extensive and persuasive facts demonstrating connections with the forum state."); *see also Ford Motor Company, et al. v. Natividad Cardenas Cejas, et al.,* No. 09-16-000280-CV, 2018 WL 1003791, at *10 ("we do not believe these facts give rise to 'exceptional' circumstances"). When appraising Ford's activities in its entirety, "nationwide and worldwide," it could hardly be considered "at home" in Pennsylvania, as it would be in Delaware or Michigan. *Pitts,* 127 F.Supp.3d at 684. Thus, Ford is not "at home" in Pennsylvania such that it is amenable to general jurisdiction in the State. *Daimler,* 571 U.S. at 128, 137. Doing business in Pennsylvania "is insufficient to establish general jurisdiction over Ford." *BNSF,* 137 S. Ct. at 1559. Plaintiff's Complaint does not support the exercise of personal jurisdiction over out-of-state Defendant Ford.

Because Plaintiff's Complaint does not support the exercise of personal jurisdiction over out-of-state Defendant Ford, Ford respectfully requests this Honorable Court to sustain these Preliminary Objections.

## II.   Plaintiff Fails to Plead Facts Required by the Philadelphia County Court Rules

Philadelphia County Court Rule 1041.1(B) requires plaintiffs to provide their complete employment history, including locations of employment. Phila. Cty. R. 1041.1(B)(3). Plaintiff's Complaint fails to provide a complete employment history for Mr. Vollman as required by the Philadelphia Rules. *See* Exhibit A. The employment information in Plaintiff's Complaint states that Mr. Vollman served in the US Navy, worked as a boiler operator at Lehigh University, and worked as a boiler operator/boiler cleaner, mechanical helper, boiler operator, operator helper, air compressor operator, and a foreman at Bethlehem Steel for an eighteen (18) years period. Mr. Vollman is 67 years old, so an eighteen-year window of employment, with no suggestion that he was only employed for eighteen (18) years of his life, is not complete employment information.

This missing information is material to this litigation and is required under the Phila. Cty. R. 1041.1(B)(3). This Complaint is significantly deficient in the factual support required by the Philadelphia County Court Rules, and Ford would be prejudiced unless Plaintiff amends the Complaint to comply with the pleading requirements in asbestos litigation in Philadelphia County.

These Preliminary Objections should be sustained.

## III.   Plaintiff's Complaint is Not Verified and Fails to Conform to Law or Rule of Court

Plaintiff's Complaint lacks the verifications required by Rule 1024(a) of the Pennsylvania Rules of Civil Procedure. Rule 1024(a) requires that "[e]very pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment

---

Court found that the president of Benguet "carried on in Ohio a continuous and systemic supervision of the necessarily limited wartime activities of the company." 342 U.S. at 448. The Supreme Court held that, under this set of circumstances, it would not violate federal due process for Ohio courts to exercise jurisdiction over Benguet. *Id.*

The Honorable Abbe F. Fletman
June 22, 2022
Page 9

## DuaneMorris

or denial is true upon the signer's personal knowledge or information and belief and shall be verified." Pa. R. C. P. 1024(a). Plaintiff's Complaint does not contain a verification signed by Plaintiff Greg Vollman. Rule 1024 (c) allows another person other than a plaintiff to verify a complaint under limited conditions. "The verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party. Pa. R. C. P. 1024(c).

The attorney verification attached to Plaintiff's Complaint states "I verify that the statements made in this Complaint are true and correct. I make this verification on behalf of the plaintiffs because they are outside of the jurisdiction and a verification cannot be obtained within the time limits for filing this complaint. This verification is based on personal knowledge and belief and information obtained from plaintiffs and other sources. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities. *See* Exhibit A.

A complaint is defective where it is verified by the petitioner's attorney and fails to state which allegations were made on the basis of the verifying attorney's knowledge and what the source of the attorney's information is in regards to the matters not within his knowledge. *See Rupel v. Bluestein*, 421 A.2d 406, 411 (Pa. Super. 1980); see also Pa. R. C. P. 1024(c). Further, "[i]mproper verification of a complaint may not be brushed aside as a mere 'legal technicality,'… and may result in the waiver of rights by the pleader." *Id.; see also Signora v. Kaplan*, 33 Pa. D. & C.4th 219, 224 (Pa. Com. Pl. 1996).

It is recognized that verification is the manner in which a party attests to the truthfulness of the pleading; without proper verification, the pleading is of "little value to the court." 3 Standard Pa. Practice 2d, ch. 16 §16:35. "A court will not treat verification lightly or as a procedural formality; the law requires verification and without it, a statement of claims is a mere narration which amounts to nothing." *Id.* Where a Plaintiff's complaint has not been properly verified, Pennsylvania courts have directed the offending Plaintiff to conform to the provisions of Pa. R. C. P. 1024. *See Johnston v. Shapp*, 57 Pa. D. & C. 753 (C.P. Dau. 1972).

Here, the attorney verification is a blanket statement and plainly states it is made, not based on counsel's personal knowledge of any of the allegations in the Complaint, but rather in place of Mr. Vollman's verification of the truth of the allegation in the Complaint because Mr. Vollman (an Allentown resident) is outside the jurisdiction and a verification from him could not be obtained in time for filing the complaint. Exhibit A. Assuming the truthfulness of the allegation that Mr. Vollman was diagnosed with an asbestos-related disease on or about November 16, 2021, it is unclear, without more, why this Complaint had to be filed in May 2022 without Mr. Vollman's verification.

Although the attorney verification states "the statements made in this Complaint are true and correct", it fails to "state which allegations [of the Complaint] were made on the basis of the

The Honorable Abbe F. Fletman
June 22, 2022
Page 10

**DuaneMorris**

verifying attorney's knowledge", but rather declares that the "verification" is based on personal knowledge and belief and information obtained from plaintiffs and other sources. *Id.*

The purpose and intent of Pa. R. C. P. 1024(a) are not met by a verification such as the attorney verification attached to Plaintiff's Complaint. The impropriety should not be brushed aside as a mere legal technicality. *Rupel,* 421 A.2d at 411 n. 5 ("Indeed, one can only be puzzled by counsel's failure to secure appellee's [Indiana resident] verification of the complaint. Counsel was able to secure appellee's verification to the Affidavit of Authorization on July 28, 1978. Counsel's verification to the complaint is dated August 15, 1978. Furthermore, apparently there was no need to file the complaint immediately, for it was not filed until September 25, 1978."). The attorney verification should be replaced with a proper verification executed by Mr. Vollman pursuant to Pa. R. C. P. 1024.

These Preliminary Objections should be sustained.

**CONCLUSION**

For the foregoing reasons, Ford's Preliminary Objections to Plaintiff's Complaint should be sustained.

A proposed form of Order sustaining the preliminary objections and ordering the filing of an amended complaint is attached. In the alternative, an Order providing that the Preliminary Objections are sustained and the Complaint stricken is also provided.

Respectfully submitted,

*/s/ Sharon L. Caffrey*
Sharon L. Caffrey

SLC/DEB

Encls.
cc: Jason B. Duncan, Esquire

Case ID: 220502770
Control No.: 22064507

Filed and Attested by the
Office of Judicial Records
Filed and Attested by the
Office of Judicial Records
31 MAY 2022 03:38 pm

**LAW OFFICES OF PETER G. ANGELOS, P.C.**
Firm I.D. #99975
Jason Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Lauren S. Linsenbach, Esquire
PA S. Ct. I.D. No. 326818
Governor's Plaza South
2001 N. Front St,
Bldg 3, Suite 330
Harrisburg, PA 17102
(717) 232-1886

GREG VOLLMAN
302 N. Jerome Street
Allentown, PA 18109

                                   Plaintiff,

VS.

AIR & LIQUID SYSTEMS CORPORATION
as successor by merger to Buffalo Pumps
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110, *et al.*

                                   Defendants

| | |
|---|---|
| * | IN THE COURT OF |
| * | COMMON PLEAS OF |
| * | PHILADELPHIA COUNTY, |
| * | PENNSYLVANIA |
| * | |
| * | MAY TERM, 2022 |
| * | |
| * | No. 2770 |
| * | |
| * | Short Form Complaint |
| * | PERSONAL INJURY |
| * | |
| * | CIVIL ACTION - |
| * | ASBESTOS - 2090 |
| * | |
| * | JURY TRIAL DEMANDED |

NOTICE
    YOU HAVE BEEN SUED IN COURT. If you
wish to defend against the claims set forth
in the following pages, you must take
action within twenty (20) days after this
Complaint and Notice are served, by
entering a written appearance personally or
by attorney and filing in writing with the
Court your defenses or objections to the
claims set forth against you. You are
warned that if you fail to do so the case
may proceed without you and a judgment may
be entered against you by the Court without
further notice for any money claimed in the
Complaint of for any other claim or relief
requested by the Plaintiff. You may lose
money or property or other rights important
to you.
    YOU SHOULD TAKE THIS PAPER TO YOUR
LAWYER AT ONCE. IF YOU DO NOT HAVE A
LAWYER OR CANNOT AFFORD ONE, GO TO OR
TELEPHONE THE OFFICE SET FORTH BELOW TO
FIND OUT WHERE YOU CAN GET LEGAL HELP.
THIS OFFICE CAN PROVIDE YOU WITH
INFORMATION ABOUT HIRING A LAWYER.
    IF YOU CANNOT AFFORD TO HIRE A
LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE
YOU WITH INFORMATION ABOUT AGENCIES THAT
MAY OFFER SERVICES TO ELIGIBLE PERSONS AT A
REDUCED FEE OR NO FEE.
        PHILADELPHIA BAR ASSOCIATION
    LAWYER REFERRAL AND INFORMATION SERVICE
            One Reading Center
    Philadelphia, PA 19107  Telephone: (215)
                238-1701

AVISO
LE HAN DEMANDADO A USTED EN LA CORTE. Si
usted quiere defenderse de estas demandas
expuestas en las paginas siguientes, usted
tiene veinte (20) dias de plazo al partir
de la fecha de la demanda y la
notificacion. Hace falta ascentar una
comparencia escrita o en persona o con un
abogado y entregar a la corte en form
excrita sus defensas o sus objeciones a las
demandas en contra de su persona. Sea
avisado que si usted no se defiende, la
corte tomara medidas y puede continuar la
demanda en contra suya sin previo aviso o
notificacion. Ademas, la corte puede
decidir a favor del demandante y requiere
que used cumpla con todas las provisiones
de esta demanda. Usted puede perder dinero
o sus propiedades u otros derechos
importantes para usted.
    LLEVE ESTA DEMANDA A UN ABOGADO
IMMEDIATEMENTE. SI NO TIENE ABOGADO O SI
NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL
SERVICIO, VAYA EN PERSONA O LLAME POR
TELEFONO A LA OFICINA CUYA DIRECCION SE
ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR
DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIACION DE LICENCIADOS DE FILADELFIA
            One Reading Center
        Philadelphia, PA 19107
        Telefono: (215) 238-1701

LAW OFFICES OF PETER G. ANGELOS, P.C.
Firm I.D. #99975
Jason Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Lauren S. Linsenbach, Esquire
PA S. Ct. I.D. No. 326818
Governor's Plaza South
2001 N. Front St,
Bldg 3, Suite 330
Harrisburg, PA 17102
(717) 232-1886

Filed and Attested by the
Office of Judicial Records
31 MAY 2022 03:48 pm

GREG VOLLMAN
302 N. Jerome Street
Allentown, PA 18109

              Plaintiff,

VS.

AIR & LIQUID SYSTEMS CORPORATION
as successor by merger to Buffalo Pumps
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110, *et al.*

              Defendants

|   |   |
|---|---|
| * | IN THE COURT OF |
| * | COMMON PLEAS OF |
| * | PHILADELPHIA COUNTY, |
| * | PENNSYLVANIA |
| * |   |
| * |   |
| * | _____ TERM, 2022 |
| * |   |
| * | No. _____ |
| * |   |
| * | Short Form Complaint |
| * | PERSONAL INJURY |
| * |   |
| * | CIVIL ACTION - |
| * | ASBESTOS - 2090 |
| * |   |
| * | JURY TRIAL DEMANDED |

**NOTICE**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint of for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.
PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, PA 19107 Telephone: (215) 238-1701

**AVISO**

LE HAN DEMANDADO A USTED EN LA CORTE. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en form excrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suyá sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que used cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATEMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIACION DE LICENCIADOS DE FILADELFIA
One Reading Center
Philadelphia, PA. 19107
Telefono: (215) 238-1701

LAW OFFICES OF PETER G. ANGELOS, P.C.
Firm I.D. #99975
Jason B. Duncan, Esquire
PA S. Ct. I.D. No. 87946
Gregory N. Bunitsky, Esquire
PA S. Ct. I.D. No. 58339
Lauren S. Linsenbach, Esquire
PA S. Ct. I.D. No. 326818
Governor's Plaza South
2001 N. Front Street
Building 3, Suite 330
Harrisburg, PA 17102
(215) 864-0191

| | | |
|---|---|---|
| Greg Vollman,<br>302 N. Jerome Street<br>Allentown, PA 18109 | * <br> * <br> * <br> * | IN THE COURT OF<br>COMMON PLEAS OF<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA |
| Plaintiff, | * <br> * <br> * | _____TERM, 2022 |
| v. | * <br> * <br> * | No. _____ |
| Air and Liquid Systems Corporation<br>as successor by merger to Buffalo Pumps<br>c/o Corporation Service Company<br>2595 Interstate Drive, Suite 103<br>Harrisburg, PA 17110 | * <br> * <br> * <br> * <br> * <br> * | Short Form Complaint<br>PERSONAL INJURY<br><br>CIVIL ACTION -<br>ASBESTOS - 2090 |
| and | * <br> * | JURY TRIAL DEMANDED |
| Advanced Thermal Hydronics, LLC.,<br>f/k/a Reed Financial, Inc., Individually and as<br>Successor to The Hydrotherm Corporation<br>c/o Cogency Global, Inc.<br>850 New Burton Road, Suite 201<br>Dover, Delaware 19904 | * <br> * <br> * <br> * <br> * <br> * | |
| and | * <br> * | |
| American Biltrite, Inc.<br>President/CEO/Resident Agent<br>57 River Street<br>Wellesley Hills, MA 02481 | * <br> * <br> * <br> * | |

```
and                                            *

American Premier Underwriters,                 *
Individually and as Successor-in-Interest to   *
Hydrotherm Corp.                               *
c/o United Agent Group, Inc.                   *
1001 State Street, #1400                       *
Erie, PA 16501                                 *
                                               *
        and                                    *
                                               *
A.O. Smith Corporation                         *
The Prentice-Hall Corp. System, Inc.           *
251 Little Falls Dr.                           *
Wilmington, DE 19808                           *
                                               *
        and                                    *
                                               *
Aurora Pump Company                            *
n/k/a Pentair, Inc., Aurora Pump               *
5500 Wayzata Blvd.                             *
Suite 600                                      *
Minneapolis, MN 55416                          *
                                               *
        and                                    *
                                               *
Automation Industries, Inc.                    *
Individually and as Successor to Hydrotherm, Inc. *
c/o CT Corporation                             *
Corporation Trust Center                       *
1209 N. Orange St.                             *
Wilmington, DE 19801                           *
                                               *
        and                                    *
                                               *
Bayer Cropscience, Inc.                        *
f/k/a Amchem Products, Inc.                    *
c/o Corporation Service Co.                    *
80 State Street                                *
Albany, NY 12207-2543                          *
                                               *
        and                                    *
                                               *
Brand Insulations, Inc.                        *
c/o CT Corporation System                      *
600 N. 2nd Street, Suite 401                   *
```

Harrisburg, PA 17101        *
         *

and        *
         *

Burnham, LLC,        *
Successor by Merger and f/k/a        *
Burnham Corp.        *
1239 Harrisburg Pike        *
Lancaster, PA 17603        *
         *

and        *
         *

Carrier Corporation        *
c/o United Agent Group        *
3411 Silverside Rd.        *
Tatnall Building #104        *
Wilmington, DE 19810        *
         *

and        *
         *

Cleaver Brooks, Inc.        *
c/o Corporation Service Company        *
251 Little Falls Dr.        *
Wilmington, DE 19808        *
         *

and        *
         *

Columbus McKinnon Corporation        *
Attn: Legal Department        *
205 Crosspoint Pkwy        *
Getzville, NY 14068        *
         *

and        *
         *

Compudyne, LLC,        *
f/k/a Compudyne Corp.,        *
Successor to York Shipley, Inc.        *
112 North Curry Street        *
Carson City, NV 89703        *
         *

and        *
         *

Cooper Industries LLC        *
Individually and as Successor-in-Interest to        *
CROUSE-HINDS CO.        *
c/o CT Corporation        *

Case ID: 220502770
Case ID: 220502770
Control No.: 22064507

Corporation Trust Center                              *
1209 N. Orange Street                                 *
Wilmington, DE 19801                                  *
                                                      *
        and                                           *
                                                      *
Crane Company                                         *
100 First Stamford Place                              *
Stamford, CT 06902                                    *
                                                      *
        and                                           *
                                                      *
DAP Products                                          *
2400 Boston Street, Suite 200                         *
Baltimore, MD 21224                                   *
                                                      *
        and                                           *
                                                      *
Eaton Corporation, as successor in-interest to        *
Cutler-Hammer, Inc.,                                  *
n/k/a Eaton Electrical, Inc.                          *
c/o C.T. Corporation System                           *
600 N. 2nd Street, Suite 401                     *
Harrisburg, PA 17101                                  *
                                                      *
        and                                           *
                                                      *
Easco Boiler Corporation                              *
f/k/a Federal Boilers                                 *
1175 Leggett Ave.                                     *
Bronx, NY 10474                                       *
                                                      *
        and                                           *
                                                      *
Flexible Technologies, Inc., f/k/a                    *
Automation Industries, Individually and as            *
Successor to Hydrotherm, Inc.                         *
c/o CT Corporation,                                   *
Corporation Trust Center                              *
1209 N. Orange Street                                 *
Wilmington, DE 19801                                  *
                                                      *
        and                                           *
                                                      *
FMC Corporation                                       *
On behalf of its former Construction Equip. Group     *

Case ID: 220502770
Control No.: 22064507

and its former Peerless Pump, Northern Pump          *
and Stearns Businesses                               *
c/o CT Corporation                                   *
Corporation Trust Center                             *
1209 N. Orange Street                                *
Wilmington, DE 19801                                 *
                                                     *
          and                                        *
                                                     *
Ford Motor Company                                   *
c/o C.T. Corporation                                 *
600 N. 2nd Street, Suite 104                         *
Harrisburg, PA 17101                                 *
                                                     *
          and                                        *
                                                     *
Foster Wheeler L.L.C. (survivor to a merger          *
with Foster Wheeler Corporation and                  *
its subsidiaries)                                    *
c/o United Agent Group                               *
3411 Silverside Road                                 *
Tatnall Building 104                                 *
Wilmington, DE 19810                                 *
                                                     *
          and                                        *
                                                     *
General Electric Company                             *
c/o C.T. Corporation Systems                         *
155 Federal Street, Suite 700                        *
Boston, MA 02110                                     *
                                                     *
          and                                        *
                                                     *
Genuine Parts Company                                *
a/k/a NAPA Auto Parts                                *
c/o CT Corporation System                            *
600 N. 2nd Street, Suite 401                         *
Harrisburg, PA 17101                                 *
                                                     *
          and                                        *
                                                     *
Goodrich Corporation                                 *
2730 W. Tyvola Road                                  *
Charlotte, NC 28217                                  *
                                                     *
          and                                        *

The Goodyear Tire & Rubber Company *
c/o Corporation Service Company *
251 Little Falls Dr. *
Wilmington, DE 19808 *
*
        and *
*
Goulds Pumps, LLC *
f/k/a Goulds Pumps, Inc. *
c/o CT Corporation *
Corporation Trust Center *
1209 N. Orange Street *
Wilmington, DE 19801 *
*
        and *
*
Greene, Tweed & Company, Inc. *
c/o Greene, Tweed NC, LLC *
227 West Trade Street, Suite 2170 *
Charlotte, NC 28202 *
*
        and *
*
GTE Operations Support, Inc. *
Successor in Interest to GTE Products of *
Connecticut Corporation, *
o/b/o Clark Controller, Co. *
c/o CT Corporation, Corporation Trust Center *
1209 N. Orange St. *
Wilmington, DE 19801 *
*
        and *
*
Hajoca Corp. *
c/o Corporation Service Company *
2595 Interstate Dr., Suite 103 *
Harrisburg, PA 17110 *
*
        and *
*
HB Fuller Company *
f/k/a Amchem Products, Inc. *
f/k/a Benjamin Foster *
1200 Willow Lake Blvd. *
P.O. Box 64683 *
St. Paul, MN 55164-0683 *

```
                                                *
        and                                     *
                                                *
H.B. Smith Company, Inc.,                       *
A Division of Mestek, Inc.                      *
47 Westfield Industrial Park Road               *
Westfield, MA 01085                             *
                                                *
        and                                     *
                                                *
Hobart Brothers Company                         *
400 Trade Square E                              *
Troy, OH 45373                                  *
                                                *
        and                                     *
                                                *
Honeywell, Inc.                                 *
c/o Corporation Service Company                 *
251 Little Falls Dr.                            *
Wilmington, DE 19808                            *
                                                *
        and                                     *
                                                *
Honeywell International, Inc., as Successor in   *
Interest to Allied Signal, Inc., as Successor to *
Bendix Corporation                              *
c/o Corporation Service Company                 *
251 Little Falls Dr.                            *
Wilmington, DE 19808                            *
                                                *
        and                                     *
                                                *
IMO Industries, Inc.                            *
Individually and as Parent Company of           *
and/or Successor to                             *
DeLaval Pump & Steam Turbine Co.                *
c/o CT Corporation                              *
Corporation Trust Center                        *
1209 N. Orange Street                           *
Wilmington, DE 19801                            *
                                                *
        and                                     *
                                                *
Industrial Holdings Corporation                 *
f/k/a Carborundum Company                       *
c/o Prentice Hall Corporation                   *
```

Case ID: 220502770
Case ID: 220502770
Control No.: 22064507

80 State Street &ast;
Albany, NY 12207 &ast;
&ast;
and &ast;
&ast;
J.H. France Refractories Co. &ast;
c/o Alan Parker, President &ast;
Special Claims Services, Inc. &ast;
790 Fairgrounds Rd., Suite 100 &ast;
Mount Vernon, Ohio 43050 &ast;
&ast;
and &ast;
&ast;
John Crane, Inc. &ast;
c/o CT Corporation System &ast;
600 N. 2nd Street, Suite 401 &ast;
Harrisburg, PA 17101 &ast;
&ast;
and &ast;
&ast;
John Wood Company, LLC &ast;
c/o Corporation Service Company &ast;
251 Little Falls Dr. &ast;
Wilmington, DE 19808 &ast;
&ast;
and &ast;
&ast;
Keeler/Dorr-Oliver Boiler Company &ast;
1201 N. Market St., Suite 900 &ast;
Wilmington, DE 19801 &ast;
&ast;
and &ast;
&ast;
Kerite LLC &ast;
c/o Corporation Service Co. &ast;
251 Little Falls Dr. &ast;
Wilmington, DE 19808 &ast;
&ast;
and &ast;
&ast;
The Lincoln Electric Company &ast;
22801 St. Clair Avenue &ast;
Cleveland, OH 44117 &ast;
&ast;
and &ast;
&ast;

Linde, LLC                                    *
f/k/a The BOC Group/Airco Division            *
200 Somerset Corporate Blvd, Ste. 7000        *
Bridgewater, NJ 08807                         *
                                              *
        and                                   *
                                              *
Lockheed Martin Corporation                   *
f/k/a Martin Marietta Corporation             *
6801 Rockledge Drive                          *
Bethesda, MD 20817                            *
                                              *
        and                                   *
                                              *
Martin Marietta Materials, Inc.               *
c/o CT Corporation System                     *
160 Mine Lake Ct, #200                        *
Raleigh, NC 27615                             *
                                              *
        and                                   *
                                              *
Metropolitan Life Insurance Company           *
c/o CT Corporation Systems                    *
600 N. 2nd Street, Suite 401                  *
Harrisburg, PA 17101                          *
                                              *
        and                                   *
                                              *
Mobil Corporation                             *
Parent of Mobil Oil Corporation               *
5959 Las Colinas Boulevard                    *
Irving, TX 75039                              *
                                              *
        and                                   *
                                              *
Morgan Engineering                            *
f/k/a Morgan Crane                            *
1049 South Mahoning Avenue                    *
Alliance, OH 44601                            *
                                              *
        and                                   *
                                              *
Morse Tec LLC, F/K/A                          *
Borg Warner Morse Tec LLC,                    *
And Successor-by-Merger to                    *
Borg Warner Corporation                       *

c/o CT Corporation                                    *
Corporation Trust Center                              *
1209 N. Orange Street                                 *
Wilmington, DE 19801                                  *
                                                      *
        and                                           *
                                                      *
Norca Industrial Company, LLC                         *
One Hollow Lane                                       *
Suite 200                                             *
Lake Success, NY 11042                                *
                                                      *
        and                                           *
                                                      *
The Okonite Company                                   *
P.O. Box 340                                          *
102 Hilltop Road                                      *
Ramsey, NJ 07446                                      *
                                                      *
        and                                           *
                                                      *
Paramount Global                                      *
f/k/a Viacom/CBS Inc. & CBS Corp., a Delaware         *
Corp., f/k/a Viacom, Inc., successor by merger to     *
CBS Corporation, a Pennsylvania corporation           *
f/k/a Westinghouse Electric Corporation               *
c/o Corporation Service Company                       *
2595 Interstate Drive                                 *
Suite 103                                             *
Harrisburg, PA 17110                                  *
                                                      *
        and                                           *
                                                      *
The Pep Boys–Manny, Moe & Jack LLC                    *
c/o Corporation Service Company                       *
251 Little Falls Dr.                                  *
Wilmington, DE 19808                                  *
                                                      *
        and                                           *
                                                      *
Pneumo-Abex, LLC                                      *
c/o Corporation Service Co.                           *
251 Little Falls Dr.                                  *
Wilmington, DE 19808                                  *
                                                      *
        and                                           *

Pollock Research & Design, Inc.,          *
f/k/a Reading Crane and Engineering Co.    *
c/o Alan Gries, Director                   *
Gibbons, PC                                *
One Logan Square, Suite 1210               *
Philadelphia, PA 19103                     *
                                           *
         and                               *
                                           *
Reunion Industries, Inc.                   *
f/k/a Alliance Machines                    *
c/o The Company Corporation                *
251 Little Falls Drive                     *
Wilmington, DE 19808                       *
                                           *
         and                               *
                                           *
RSCC Wire & Cable, Inc.                    *
20 Bradley Park Road                       *
East Granby, CT 06026                      *
                                           *
         and                               *
                                           *
Saint-Gobain Abrasives, Inc.               *
f/k/a Norton Company                       *
1 New Bond Street                          *
Worcester, MA 01615                        *
                                           *
         and                               *
                                           *
Schneider Electric USA, Inc.               *
f/k/a Square D Company                     *
200 N. Martingale Road, Suite 100          *
Schaumburg, IL 60173                       *
                                           *
         and                               *
                                           *
Terex Corporation                          *
c/o Corporation Service Company            *
251 Little Falls Drive                     *
Wilmington, DE 19808                       *
                                           *
         and                               *
                                           *
Union Carbide Corporation                  *
c/o C.T. Corporation Systems               *

600 N. 2nd Street, Suite 401          *
Harrisburg, PA 17101                  *
                                      *
          and                         *
                                      *
Velan Valve Corp                      *
c/o Corporation Service Company       *
251 Little Falls Drive,               *
Wilmington, DE 19808                  *
                                      *
          and                         *
                                      *
Warren Pumps, LLC                     *
c/o CT Corporation                    *
155 Federal St., Suite 700            *
Boston, MA 02110                      *
                                      *
          and                         *
                                      *
Marley-Wylain Company,                *
500 Blaine Street                     *
Michigan City, IN 46360-2388          *
                                      *
          and                         *
                                      *
Weil Pump Company                     *
6337 Western Road                     *
Cedarburg, WI 53012                   *
                                      *
          and                         *
                                      *
Wilo USA, LLC, Individually and as    *
Successor-in-Interest to              *
Weil Pump Company                     *
c/o Corporation Service Company       *
251 Little Falls Drive,               *
Wilmington, DE 19808                  *
                                      *
          and                         *
                                      *
Zurn Industries, LLC                  *
c/o CT Corporation                    *
Corporation Trust Center              *
1209 N. Orange Street                 *
Wilmington, DE 19801                  *
                                      *

Defendants.                           *
                                      *

## SHORT FORM COMPLAINT

AND NOW comes Greg Vollman, by and through his attorneys Jason B. Duncan,

Gregory N. Bunitsky, Lauren S. Linsenbach and the Law Offices of Peter Angelos, P.C. and files

this Complaint and in support thereof aver the following:

1.    Plaintiff incorporates by reference against defendants all the allegations of all the

      Complaints filed in Joan Nealy, Executrix of the Estate of Harry Platt v. Abex

      Corporation, et al., Philadelphia C.P. May Term, 1985, No. 2678, Rafael and Cecilia

      Montero v. Abex Corporation, et. al., Philadelphia C.P. July Term 1986, and in the

      Plaintiff's Master Long Form Complaint in Re: Asbestos Litigation in Philadelphia

      Court of Common Pleas, filed as of October Term 1986, No. 8610-0001 as though set

      forth in its complete text. Pursuant to an Order dated July 30, 1986, and signed by the

      Honorable Richard B. Klein and the Honorable Edward J. Blake, the following short

      form complaint is utilized in this asbestos action.

2.    All allegations against defendants named in this lawsuit which were made in the

      Complaints filed in the lawsuits annotated above or in the Master Complaint are

      incorporated herein by reference.

3.    Plaintiff would also name as defendants the Johns-Manville Corporation, the Johns

      Manville Sales Corporation, A.P. Green, ACandS, Inc., Babcock & Wilcox, Baldwin

      Ehret Hill, UNARCO, Amatex Corporation, Forty Eight Insulators Incorporated, Wallace

      and Gale Company, Flintkote, Nicolet Industries, Pacor, Inc., Raymark Industries Inc.,

      Raymark Corporation and Raytech, DI Distributors Inc. f/k/a Delaware Insulation

Company, Inc., Carey Canada, CertainTeed Corporation, Celotex Corporation, Eagle

Picher Industries, Inc., Keene Corporation, Rock Wool Manufacturing Co., H.K. Porter

Company, Inc., Pittsburgh Corning Corporation, Asbestos Claims Management

Corporation f/k/a National Gypsum, GI Holdings, Inc. f/k/a GAF Corporation,

Congoleum Corporation, Owens Corning, Fibreboard Corporation, Armstrong World

Industries, Inc., W.R. Grace & Co. - Conn., United States Gypsum Company, U.S.

Mineral Products, T&N Plc., AC&S, Inc., Chrysler LLC, f/k/a Daimler Chrysler

Corporation, General Motors Corporation, Durabla Mfg. Company, Chesterton

Manufacturing Co., Garlock Incorporated, Garlock Sealing Technologies, The Anchor

Packing Company, Leslie Controls, Inc., Standco Industries, Inc. f/k/a Standard Brake

Lining individually and as successor-in-interest to Sterling Packing and Gasket

Company, Inc., and Bondex International, Inc.; George V. Hamilton, Inc; Georgia-

Pacific, Kaiser Gypsum, Ferro Engineering Division of On Marine Services Company,

LLC; Owens Illinois, Inc., f/k/a Owens-Illinois Glass Co.; Sears Roebuck; Maremont

Corporation; Dana Corporation; Ingersoll-Rand Co; Trane Company; Aldrich Pump,

LLC; Murray Boiler, LLC; American Standard, Inc.; OakFabco, Inc.; and General

Refractories.; however, each of these potential defendants has filed for relief or been

forced into involuntary bankruptcy under Chapter 11 of the Bankruptcy Code and,

pursuant to 11 U.S.C. Section 362, the institution of actions against these companies is

stayed. Plaintiff would have brought suit against the companies enumerated in this

paragraph but for the automatic stay.

4.     Defendant Air & Liquid Systems Corporation, successor-by-merger to Buffalo Pumps is

a corporation manufactured, distributed, constructed, and/or supplied pumps and other

equipment which required and/or incorporated the use of asbestos-containing gaskets and packing.

5. Defendant, Bayer CropScience, Inc., successor to Aventis CropScience, USA, Inc., (f/k/a Rhone Poulenc, Inc. f/k/a UCAR Corporation, f/k/a Amchem Products, Inc.) is a corporation that has and continues to do business at 2 T.W. Alexander Drive, Research Park, Durham, NC 27709. At all times material hereto Bayer CropScience, Inc., successor to Aventis Cropscience, USA, Inc., and/or its predecessors and subsidiaries including Amchem Products, Inc., manufactured, produced and sold, either directly or indirectly, in the geographical area in which plaintiff worked and/or to the employers of plaintiff and/or to contractors on job sites on which plaintiff worked in close proximity to the use of asbestos/asbestos containing products, including, but not limited to Foster Mastic, C.I. Mastic, and other asbestos products.

6. Defendant, Cleaver-Brooks, Inc., is a Delaware corporation with its principal place of business located in Lebanon, Pennsylvania. At all times material hereto, Cleaver-Brooks, Inc. sold boilers, which were designed or intended to be insulated with asbestos. Because the boilers failed to contain adequate and sufficient warnings of the possible hazards of asbestos, they were defective and the conduct of the defendant in selling those products without such warnings was negligent. Since asbestos insulation on the boilers had to be removed, it was dangerous, and warnings should have been given.

7. Defendant A.O. Smith Corporation manufactured, distributed, constructed, and/or supplied various asbestos products including, but not limited to, boilers and other containers which either came pre-packaged with asbestos products or required the installation of various asbestos products in their specifications, such as asbestos fire

. brick, cement and rope.

8.    Defendant, Genuine Auto Parts Company, is a Georgia Corporation with its principal

place of business located at 2999 Circle 75 Parkway, Atlanta, Georgia 30339, which

manufactured, produced, sold, supplied or distributed various asbestos containing

products including, but not limited to, asbestos brakes, brake linings, clutch plates and

other asbestos friction products.

9.    Defendant Goodrich Corporation, sued in its corporate capacity, and as a successor in

interest to inter alia, Goodrich B.F. Company and B.F. Goodrich with its registered office

at 2730 W. Tyvola Road, Charlotte, NC 28217-4578. Defendant, Goodrich Corporation

manufactured and/or sold, among other products, automotive brake products.

10.   Defendant, Goodyear Tire and Rubber Company, is a Kentucky Corporation with its

principal place of business located at 1144 E. Market Street, Akron, Ohio 44316. At all

times material hereto, Goodyear Tire and Rubber Company manufactured, provided,

marketed and sold asbestos containing gaskets and other asbestos containing products to

and for Durabla Manufacturing Company, in the Commonwealth of Pennsylvania to

which Plaintiff was exposed to the detriment of his health.

11.   Defendant Cooper Industries LLC, successor-in-interest to Crouse Hinds

Co. manufactured, distributed, constructed, and/or supplied various asbestos-containing

construction machinery and equipment which incorporated the use of asbestos

components including, but not limited to, brake pads and/or bands as well as asbestos

containing explosion proof fittings and/or packing under the name Chico X.

11.   Defendant, H.B. Smith Company, Inc., sued in its corporate capacity with its main office

at 47 Westfield Industrial Park Road, Westfield, MA 01085. Defendant H.B. Smith

Company, Inc. manufactured, produced and sold, among other products, asbestos

containing rope, wick, insulating cement, furnace cement, fill and millboard for use

during installation of its boilers.

12.    Defendant, Hobart Brothers, with its main office at 600 West Main Street, Troy, OH

45373.  Defendant Hobart Brothers manufactured various welding and cutting equipment.

13.    Defendant, General Electric Company, located at c/o CT Corporation Systems, 600 N.

2nd Street, Suite 401, Harrisburg, PA 17101, is a corporation duly organized and existing

under the laws of the State of New York with its principal place of business at One River

Road, Schenectady, New York.  At all times material hereto, General Electric Company,

through its distributor, General Electric Supply Company, distributed various asbestos-

containing products that were used around plaintiff, including, but not limited to,

electrical products, vessels, turbines, brakes and machinery, all of which was or should

have been foreseeable by GE.

14.    Defendant The Lincoln Electric Co., with its registered address at c/o C.T. Corporation

System, 1635 Market Street, Philadelphia, PA 19109. Defendant The Lincoln Electric

Co. manufactured various welding and cutting equipment under the manufacturer/brand

names of inter alia, Airco, Lincoln, Fleet-Weld and Shield-Arc.

15.    Defendant FMC Corporation, manufactured, distributed, constructed, sold,

and/or supplied pumps, cranes, excavators, industrial brakes and clutches that contained

asbestos-containing components including asbestos packing, gaskets, friction disks, brake

linings, and clutch facings.  This defendant is successor in interest to and liable for

Stearns Electric corporation products which manufactured industrial electric brakes with

asbestos containing friction disks. Additionally, this defendant is successor in interest and

liable for Link-Belt Company/Construction Equipment Group which manufactured, supplied, constructed, or sold cranes, excavators and other industrial equipment that utilized asbestos-containing component parts including brakes, brake linings, and clutch facings. Further, FMC Corporation is the successor in interest and manufacturer and/or supplier of various pumps under the names "Northern" and "Peerless" which utilized asbestos-containing component parts including packing, insulation, gaskets, and valves.

16. Defendant the John Wood Company LLC manufactured, distributed, constructed, and/or supplied various asbestos containing products including, but not limited to, boilers and other containers which either came pre-packaged with asbestos products or required the installation of various asbestos products in their specifications, such as asbestos fire brick, cement, insulation, and rope.

17. Defendant, Paramount Global, f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom, Inc. successor by merger to CBS Corp., a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, c/o Asbestos Litigation Support Manager of Eckert Seamans Cherin & Mellott, LLC, Case Management and Technology Center, 600 Grant Street, 44th Floor, Pittsburgh, PA 15219. Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom, Inc. successor by merger to CBS Corp, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation manufactured various products, including but not limited to electrical products, gaskets, valves, packing, brakes, and machinery, which either contained asbestos or required the installation of asbestos.

18. Defendant, The Marley-Wylain Company, f/k/a Weil McLain Company, A division of the Marley Company, a wholly owned subsidiary of United Dominion Industries, Inc., CT Corporation System Philadelphia, Two Commerce Square, 2001 Market Street, 5th

Case ID: 220502770
Control No.: 22064507

Floor, Philadelphia PA 19103 which is a corporation organized and existing under the

laws of the State of Delaware with its principal place of business in Kansas which is

doing business in the Commonwealth of Pennsylvania. At all times material hereto,

Defendant Weil-McLain, manufactured, produced and sold, either directly or indirectly,

in the geographical area in which the plaintiffs worked and/or to the employers of

plaintiffs and/or to contractors on job sites on which plaintiffs worked, asbestos products.

19.     a.     This Complaint alleges the claims of the following persons:

Plaintiff:

Name: Greg Vollman

Address: 302 N. Jerome Street, Allentown, PA 18109

Social Security No.: REDACTED

Date of Birth: REDACTED

20.     The defendants are those companies listed in the caption of this complaint.

21.     From approximately 1972 until 1990, Plaintiff was employed by: United States Navy as a

Boiler Tech onboard the USS Semmes; Lehigh University in Bethlehem, PA as a Lead

Boiler Operator; and by Bethlehem Steel, in Bethlehem, PA in the Steam, Water, and Air

department as a boiler cleaner, mechanical helper, boiler operator, operator helper, air

compressor operator, and a foreman and was exposed to the asbestos products of the

defendants herein at each location.

22.     Plaintiff was exposed to various asbestos products while working as a boiler technician,

steelworker, and boiler operator including but not limited to, the following: pipe

covering, packing, insulation, sheet material, gaskets, cement, rope, cranes, crane brakes,

crane components, block, compound, hot tops, pumps, boilers, compressors, valves, and

spray.

23. Plaintiff was also exposed to asbestos containing automotive products while performing personal automotive work throughout his lifetime, to include the replacement of asbestos containing brakes, brake linings, clutches, friction material, and other automotive products.

24. The air Plaintiff breathed was contaminated with asbestos dust and fibers shed by asbestos products sold, manufactured or distributed by the defendant corporations and each of them during the period 1972-1990 while plaintiff was employed by the Navy, Lehigh University, and Bethlehem Steel in Bethlehem, PA.

25. Plaintiff first learned of the injury for which he is making his claim on or about November 16, 2021.

26. Plaintiff was first diagnosed as having asbestosis and mesothelioma on or about November 16, 2021.

27. A claim for lost wages is not asserted at this time.

WHEREFORE, Plaintiff demands judgment against all defendants named in this Complaint, and each of them, in an amount in excess of fifty thousand dollars ($50,000.00) for compensatory damages and in excess of fifty thousand dollars ($50,000.00) for punitive damages, plus costs, attorney's fees and such further relief as may be appropriate.

## **COUNT XII: Conspiracy**

28. Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as if hereinafter set forth at length.

29. Defendant, Metropolitan Life Insurance Company, is a mutual life insurance company with its principal place of business in New York. At all relevant times Defendant did

business in the State of New Jersey and the Commonwealth of Pennsylvania.

30.   Defendant Metropolitan Life Insurance Company, in conjunction with various asbestos

product manufacturers, distributors, and miners, individually and as an agent for asbestos

product manufacturers, distributors and miners, aided, abetted, encouraged, counseled,

assisted, agreed and conspired with asbestos product manufacturers, distributors and

miners to injure Plaintiff by, among other things, providing funding for a study that

revealed Canadian asbestos miners suffered from asbestosis and by materially

misrepresenting that known fact, and in various other ways concealing information and

otherwise preventing workers and responsible authorities from learning of the health

hazards posed by exposure to asbestos dust and fibers.

   WHEREFORE, in addition to, or in the alternative to the relief requested in Counts I

through XIV supra, Plaintiff demands judgment against Metropolitan Life Insurance Company

named in this Complaint, jointly and severally as to themselves and each and every other

defendant named in this Complaint in an amount in excess of Fifty Thousand Dollars

($50,000.00) for compensatory damages and Fifty Thousand Dollars ($50,000.00) for punitive

damages, plus costs, attorney's fees and such further relief as may be appropriate.


                                    LAW OFFICES OF PETER ANGELOS, P.C.


                              By: _____
                                    Jason B. Duncan, Esquire
                                    Gregory N. Bunitsky, Esquire
                                    Lauren S. Linsenbach, Esquire
                                    1880 JFK Blvd., Suite 1701
                                    Philadelphia, PA 19103
                                    (215) 864-0191
                                    *Attorneys for Plaintiffs*

Case ID: 220502770
Case ID: 220502770
Control No.: 22064507

DATED: _May 31_, 2022

<u>VERIFICATION</u>

I verify that the statements made in this Complaint are true and correct. I make this verification on behalf of the plaintiffs because they are outside of the jurisdiction and a verification cannot be obtained within the time limits for filing this complaint. This verification is based on personal knowledge and belief and information obtained from plaintiffs and other sources. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Dated _May 31, 2022_     X _____



Filed and Attested by the
Office of Judicial Records
22 JUN 2022 12:31 pm
E. HAURIN

# EXHIBIT B

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, DC 20549**

**FORM 10-K**

☑ Annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
**For the fiscal year ended December 31, 2020**

or

☐ Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
For the transition period from _____ to _____
**Commission file number 1-3950**

# Ford Motor Company

*(Exact name of Registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **38-0549190** |
| *(State of incorporation)* | *(I.R.S. Employer Identification No.)* |
| **One American Road** | |
| **Dearborn, Michigan** | **48126** |
| *(Address of principal executive offices)* | *(Zip Code)* |

**313-322-3000**
*(Registrant's telephone number, including area code)*

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading symbols | Name of each exchange on which registered |
|---|---|---|
| Common Stock, par value $.01 per share | F | New York Stock Exchange |
| 6.200% Notes due June 1, 2059 | FPRB | New York Stock Exchange |
| 6.000% Notes due December 1, 2059 | FPRC | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act:  None.

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☑ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☑

Indicate by check mark if the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).   Yes ☑  No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or emerging growth company.  See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☑   Accelerated filer ☐   Non-accelerated filer ☐   Smaller reporting company ☐
Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☑

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).  Yes ☐  No ☑

As of June 30, 2020, Ford had outstanding 3,907,530,652 shares of Common Stock and 70,852,076 shares of Class B Stock.  Based on the New York Stock Exchange Composite Transaction closing price of the Common Stock on that date ($6.08 per share), the aggregate market value of such Common Stock was $23,757,786,364.  Although there is no quoted market for our Class B Stock, shares of Class B Stock may be converted at any time into an equal number of shares of Common Stock for the purpose of effecting the sale or other disposition of such shares of Common Stock.  The shares of Common Stock and Class B Stock outstanding at June 30, 2020 included shares owned by persons who may be deemed to be "affiliates" of Ford.  We do not believe, however, that any such person should be considered to be an affiliate.  For information concerning ownership of outstanding Common Stock and Class B Stock, see the Proxy Statement for Ford's Annual Meeting of Stockholders currently scheduled to be held on May 13, 2021 (our "Proxy Statement"), which is incorporated by reference under various Items of this Report as indicated below.

As of January 29, 2021, Ford had outstanding 3,907,842,941 shares of Common Stock and 70,852,076 shares of Class B Stock.  Based on the New York Stock Exchange Composite Transaction closing price of the Common Stock on that date ($10.53 per share), the aggregate market value of such Common Stock was $41,149,586,169.

DOCUMENTS INCORPORATED BY REFERENCE

| Document | Where Incorporated |
|---|---|
| Proxy Statement* | Part III (Items 10, 11, 12, 13, and 14) |

---

*   As stated under various Items of this Report, only certain specified portions of such document are incorporated by reference in this Report.

Exhibit Index begins on page 92

**EXHIBIT G**

DICKIE, McCAMEY & CHILCOTE                    Attorneys for Defendant,
By: William R. Adams, Esquire                 John Crane Inc.
I.D.# 73534
By:  Tiffany F. Turner, Esquire
I.D.# 62832
By:  William J. Smith, Esquire
I.D.# 66161
1650 Arch Street, Suite 2110
Philadelphia, PA 19103
(215) 925-2289

| | | |
|---|---|---|
| GREG VOLLMAN | : | Court of Common Pleas |
| Plaintiffs | : | Philadelphia County |
| | : | Trial Division |
| | : | |
| V. | : | Civil Action |
| | : | |
| Defendants | : | |
| JOHN CRANE INC. | : | May Term 2022 No. 2770 |
| | : | Asbestos Case |

## <u>NOTICE OF FILING NOTICE OF REMOVAL</u>

TO THE PROTHONOTARY AND PLAINTIFF BY AND THROUGH ITS  ATTORNEYS OF
RECORD, JASON DUNCAN, ESQUIRE (LAW OFFICE OF PETER ANGELOS):

   PLEASE TAKE NOTICE that July 1, 2022, Defendants John Crane, Inc. filed a Notice of

Removal with the United States District Court for the Eastern District of Pennsylvania to

remove the above-captioned action from the Court of Common Pleas of Philadelphia

County, Pennsylvania, to the United State District Court for the Eastern District of

Pennsylvania.

A copy of the Notice of Removal is attached hereto as Exhibit A and is hereby filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania, to effect removal of the above-captioned action pursuant to 28 USC 1446(d).

DICKIE, McCAMEY & CHILCOTE

By: *Tiffany Turner*
    Tiffany F. Turner, Esquire
    Attorney for Defendants, John Crane Inc.

**CERTIFICATE OF SERVICE**

Tiffany Turner, Esquire hereby certifies that a copy of the foregoing pleading will be served on Plaintiff's counsel as well as counsel for Defendants via civil e-filing July 1, 2022.

DICKIE, McCAMEY & CHILCOTE

By:_____
    Tiffany F. Turner, Esquire
    Attorney for Defendants, John Crane, Inc.