IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VALERIE WOOD, INDIVIDUALLY AND AS EXECUTOR FOR THE ESTATE OF GREG VOLLMAN, DECEASED,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EATON CORPORATION, FOSTER WHEELER LLC, HAJOCA CORPORATION, and W.W. GRAINGER,**<br><br>**Defendants.** | **CIVIL ACTION**<br><br>**NO. 22-2564** |

**HODGE, J.**                                                                                          **August 21, 2025**

### MEMORANDUM

Valerie Wood ("Plaintiff"), individually and as executor for the estate of Greg Vollman ("Decedent" or "Vollman"), was replaced as the plaintiff in this suit after Vollman's death from mesothelioma. This suit was filed against numerous defendants for strict product liability ("Count One"), breach of implied warranty ("Count Two"), negligence ("Count Three"), and wrongful death ("Count Four"). Defendants Eaton Corporation ("Eaton"), Foster Wheeler LLC ("Foster Wheeler"), Hajoca Corporation ("Hajoca"), and W.W. Grainger ("Grainger") have filed Motions for Summary Judgment ("Motions"). (ECF Nos. 390–93.) Upon review of the pleadings, the Court **GRANTS** the Motions from Eaton (ECF No. 393), Foster Wheeler (ECF No. 391), Grainger (ECF No. 392), and Hajoca (ECF No. 390).

I.     **BACKGROUND**[1]

Plaintiff commenced the present action in the Philadelphia County Court of Common Pleas on May 31, 2022. (ECF No. 1, Ex. A.) On July 1, 2022, Defendant John Crane, Inc. removed this case to the United States District Court for the Eastern District of Pennsylvania. (ECF No. 1.) Original Plaintiff in this action, Greg Vollman, was diagnosed with Pleural Mesothelioma on or about November 16, 2021. (ECF No. 364 ¶ 9.) Greg Vollman died on May 21, 2024. (ECF No. 364 ¶ 5.) Valerie Wood has been appointed the executor for the estate of Greg Vollman by the Commonwealth of Pennsylvania, Lehigh County. (ECF No. 364 ¶ 6.) Plaintiff alleges Vollman was exposed to asbestos and asbestos-containing products from 1972–1990 while working for the U.S. Navy, Lehigh University, and Bethlehem Steel Company ("Bethlehem Steel"). (ECF No. 364 ¶¶ 10–14.) Specifically, Plaintiff alleges that the Decedent inhaled asbestos dust and fibers shed by asbestos products "mined, manufactured, designed, specified, required, produced, sold, supplied, distributed and/or installed by the Defendant corporations" during the Decedent's work from 1972 to 1990. (ECF No. 364 ¶ 11.)

Decedent was employed as a boiler operator by Lehigh University in Bethlehem, PA from 1976-1970 where he allegedly was exposed to asbestos. (ECF No. 364 ¶ 13.) Additionally, the Decedent was a boiler operator, pump house operator, and mechanical helper in the Steam, Water, and Air Department of The Bethlehem Steel Company in Bethlehem, PA from 1979 through 1998 where he was also allegedly exposed to asbestos.[2] (ECF No. 364 ¶ 14.) Plaintiff asserts that during Vollman's employment, he was exposed to asbestos that was used in products developed and/or supplied by Defendant corporations in the normal course of his work. The present summary

---

[1]     The Court adopts the pagination supplied by the CM/ECF docketing system.
[2]     Plaintiff only alleges that Vollman was exposed to asbestos up until 1990, though his work at Bethlehem Steel continued through 1998.

judgment motions are brought by Defendants Eaton Corp., f/k/a Cutler-Hammer ("Eaton") (ECF No. 393), Foster Wheeler LLC f/k/a Foster Wheeler Corp ("Foster Wheeler") (ECF No. 391), Hajoca Corporation ("Hajoca") (ECF No. 390), and W.W. Grainger, Inc. ("Grainger") (ECF No. 392).

Eaton is a corporation organized in the State of Ohio that Plaintiff alleges manufactured, produced, and sold asbestos containing products, either directly or indirectly, in the geographical area in which the Decedent worked. (ECF No. 364 ¶ 19.) Plaintiff alleges specifically that Eaton sold asbestos containing brake linings that were used on cranes while Plaintiff worked at Bethlehem Steel and the USS Semmes. (*See generally* ECF No. 406.)

Foster Wheeler is a corporation organized in the State of New York that Plaintiff alleges manufactured, produced, and sold asbestos containing products, either directly or indirectly, in the geographical area in which the Decedent worked. (ECF No. 364 ¶ 19.) Specifically, Plaintiff alleges that the Decedent was exposed to asbestos contained in boilers that were installed at Bethlehem Steel by Foster Wheeler. (*See generally* ECF No. 404.)

Hajoca is a corporation organized in the State of Maine that Plaintiff alleges manufactured, produced, and sold asbestos containing products, either directly or indirectly, in the geographical area in which the Decedent worked. (ECF No. 364 ¶ 19.) Specifically, Plaintiff alleges that the Decedent was exposed to asbestos through various products that were supplied by Hajoca while the Decedent worked at Bethlehem Steel. (*See generally* ECF No. 401.)

Grainger is a corporation organized in the State of Illinois that Plaintiff alleges manufactured, produced, and sold asbestos containing products, either directly or indirectly, in the geographical area in which the Decedent worked. (ECF No. 364 ¶ 19.) Specifically, Plaintiff alleges that the Decedent was exposed to asbestos through insulation, gaskets, packing, and rope

supplied by Grainger that were used at Bethlehem Steel. (ECF No. 364 ¶ 19; *see generally* ECF No. 402.)

## II. LEGAL STANDARD

A motion for summary judgment must be denied unless the moving party is able to show "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is defined as one in which a jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). In assessing materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the defendant moves for summary judgment, "the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The summary judgment standard requires the court to view the evidence in the light most favorable to the non-moving party, including all justifiable inferences. *Anderson,* 447 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 248. If the court finds that any factual issues exist that could be reasonably resolved for either party, and thus requires the presence of a fact finder, then summary judgment must be denied. *Id.* at 250.

### III.  DISCUSSION

There are four motions for summary judgment before the Court. The Court will analyze each of the Motions individually and by defendant.[3]

---

[3]  Plaintiff attempts to use several court documents from other cases and wishes to incorporate those documents into the record as evidence. There are two issues the Court must consider in evaluating this evidence. The first is its admissibility under the Federal Rules of Evidence. The second is what *weight* the Court must give to the evidence, which is a substantive issue to be determined by the applicable state law.

As to the admissibility of previous discovery responses from the various defendants, those would be admissible under Rule 801(d)(2) as an opposing party's statement. *See* Fed. R. Evid. 801(d)(2) ("A statement that meets the following conditions is not hearsay . . . An Opposing Party Statement. The statement is offered against an opposing party and . . . (A) was made by the party in an individual or representative capacity."). However, the Court will not consider the *excerpts* of these texts as the entire statement, in fairness, ought to be considered at the same time under Rule 106. Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.").

The Court next considers the admissibility of now-deceased alleged co-workers of Vollman who gave depositions in different cases. The admissibility of this evidence is governed by Rule 804 which has two prongs. The first is the witness must be unavailable; death satisfies this prong. *See* Fed. R. Evid. 804(a)(4) ("(a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant . . . (4) cannot be present or testify at the trial or hearing because of death.").

Second, after a showing that the witness is unavailable, the testimony must fall under one of 5 exceptions. *See* Fed. R. Evid. 804(b). Plaintiff argues that the depositions of now-deceased alleged co-workers of Vollman are admissible under the former testimony exception for Rule 804. Fed. R. Evid. 804(b)(1). Former testimony of an unavailable witness is not excluded by the rule against hearsay when that testimony was "given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; *and* is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and *similar motive* to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(A–B). Rule 804(b)(1) "does not require that a party had an *identical* motive to develop the testimony, only that the party had a 'similar' motive" which "is essentially a factual question." *United States v. Paling*, 580 F. App'x 144, 148 (3d Cir. 2014) (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)). "The similar-motive requirement assures that 'the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do. . . if the witness were available to be examined by that party." *Haas v. 3M Co.*, 613 F. App'x 191, 196 (3d Cir. 2015) (citing *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 166 (3d Cir. 1995)). "In determining whether a similar motive to develop the testimony existed at the time of the elicitation of the former testimony the courts will search for some *substantial* identity of the issues." *United States v. Salerno*, 505 U.S. 317, 331 n.8 (1992) (Stevens, J., dissenting). Furthermore, "Product identification testimony is by nature specialized for each defendant, so no other defendant could have a similar motive in cross-examining [an individual] about testimony identifying [a defendant]." *Ward v. Allis-Chalmers Pumps, Inc.*, 2010 WL 7746856, at *1 n.1 (E.D. Pa. Dec. 23, 2010). While case law on the topic is scant, the age of prior testimony does not seem to be dispositive of the issue. *See Clark v. Prudential Ins. Co. of America*, 289 F.R.D. 144, 175 (D. N.J. 2013) (admitting twenty-year-old former testimony under Rule 804(b)(1)). Accordingly, the Court considers the subject matter of the former testimony as carrying greater weight in determining its admissibility than its age.

Plaintiff wishes to use the depositions of alleged co-workers that were taken at various times in the past twenty years. The depositions were taken in asbestos cases related to employees at Bethlehem Steel. To the extent that there is evidence on the record to suggest that these alleged co-workers are now-deceased, the Court holds that, for product identification purposes, the Court will allow the depositions to be considered under Rule 804 since the same defendants in the present case had a similar motive to cross examine on product-identification issues in this case. If there is not sufficient evidence to show that a particular alleged co-worker is deceased, those depositions are excluded. Those parts of those depositions that are not related to product identification are also excluded because issues of

5

The threshold question in an asbestos case is *product identification. See In re Asbestos Products Liability Litig. (No. VI)*, 801 F. Supp. 2d 342, 345–46 (E.D. Pa. 2011). Essentially, this means that for an asbestos case to proceed, the Plaintiff must adequately identify the Defendant and the product that was alleged to have caused the asbestos-related injury. This is true for all claims that Plaintiff is pursuing—if Plaintiff fails to show that the decedent was exposed to a particular Defendants' product, then the claims fail (since they are all asbestos-related). A plaintiff must establish that their "injuries were caused by a product of the particular manufacturer or supplier." *Id.* (citing *Eckenrod v. GAF Corp.*, 375 Pa. Super. 187, 190–91 (Pa. Super. Ct. 1988)). In addition to this, a plaintiff "must further establish that they worked with a certain defendant's product with the necessary frequency and regularity, and in close enough proximity to the product, to create a genuine issue of material fact as to whether that specific product was a substantial factor (and thus the proximate cause) of plaintiff's asbestos related condition." *Id.* When multiple suppliers are responsible for an identical product, a plaintiff must come forward with evidence of exposure to a specific defendant's product. *Id.*[4] Furthermore, "mere presence of the defendant's product at the worksite, is insufficient to create a triable issue of fact regarding the causal link

---

causation and negligence are specific to the Decedent in the present case and cannot be inferred from the testimony given without the context of the present case.

    Next, the Court considers what weight to give this testimony, as articulated by *Krauss v. Trane*. 104 A.3d 556 (Super. Ct. Pa. 2014). The parties agree that *Krauss* establishes that discovery in a different, unrelated litigation cannot be the *sole* evidence creating a dispute of material fact when a plaintiff does not have personal knowledge that a defendant's product has asbestos within it. (ECF No. 428, 47:15–17, 48:1–4.) The Court has read *Krauss* and disagrees with the parties' interpretation. *Krauss* evaluated the exhibits with the same standard as if the exhibits were of record in that case. The Court's determination in *Krauss* contemplated and concluded that evidence that is rooted in speculation and conjecture cannot be the sole evidence, there must be more. *Krauss*, 104 A.3d at 568 ("A jury is not permitted to find that it was a defendant's product that caused the plaintiff's injury based solely upon speculation and conjecture; there must be evidence upon which logically its conclusion must be based."). The Court will, therefore, evaluate the evidence with this standard in mind.

[4]    Plaintiff's counsel has provided the relevant materials in both email and hard copy formats to the Court. The Court will consider those exhibits along with those attached to Plaintiff's responses to the relevant Motions for Summary Judgment to the extent that those exhibits comply with the Court's April 24, 2025 Order (ECF No. 419), the Court's August 11, 2025 Order (ECF No. 430), and the Court's determination of the admissibility of FRE 804 and 801 evidence. *See supra* note 3.

6

between plaintiff's asbestos-related disease and a specific product." *McClaskey v. Anchor Packing Co.*, 1989 WL 114346, at *2 (E.D. Pa. Sept. 28, 1989) (citing *Pongrac v. Consolidated Rail Corp.*, 632 F. Supp. 126, 129 (E.D. Pa. 1985); *Eckenrod*, 544 A.2d at 52).

    *i.*    *Foster Wheeler*

Defendant Foster Wheeler argues that Plaintiff's claims against them are barred entirely by the Pennsylvania Statute of Repose. The Statute of Repose states as follows:

> **§ 5536. Construction projects.**
> **(a) General rule.**--Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
>> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>> (2) Injury to property, real or personal, arising out of any such deficiency.
>> (3) Injury to the person or for wrongful death arising out of any such deficiency.
>> (4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).
>
> **(b) Exceptions.**--
>> (1) If an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.
>> (2) The limitation prescribed by subsection (a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.
>
> **(c) No extension of limitations.**--This section shall not extend the period within which any civil action or proceeding may be commenced under any provision of law.

42 Pa. C. S. § 5536. "A statute of repose, as opposed to a statute of limitations, is '[a] statute barring any suit that is brought after a specified time since the defendant acted . . . even if this

7

period ends before the plaintiff has suffered a resulting injury.'" *Graver v. Foster Wheeler Corp.*, 96 A.3d 383, 387 (Pa. Super. Ct. 2014). "[S]tatutes of repose begin to run upon the completion of certain conduct by a defendant." *Id.* As it pertains to 42 Pa. Cons. Stat. Ann. § 5536, Pennsylvania's Construction Statute of Repose, the limitation period "begins to run after completion of construction of such improvement [to real property]." *Id.* (quoting 42 Pa. Cons. Stat. Ann. § 5536(a)). In that regard, "the relevant statute of repose bars claims filed 12 years after the completion of an improvement to real property." *Id.* at 387 (citing 42 Pa. Cons. Stat. Ann. § 5536(a)).

Foster Wheeler entered into contracts with Bethlehem Steel in the 1930s for the design and furnishing of ten waste-heat boilers. Foster Wheeler "participated in the design, planning, and construction of these improvements to real property." (ECF No. 391, at 12.) Because the boilers in question were installed in the 1930s, and, as decades far greater than the statutory twelve years have passed since the improvement to real property was completed, if the Court finds that the boilers are "improvements to real property," then any claims against Foster Wheeler are barred by the Statute of Repose.

Plaintiff argues that the Statute of Repose is not applicable to Foster Wheeler's boilers because the boilers were not improvements to real property governed by the Statute of Repose. Specifically, Plaintiff claims that the record does not suggest that Defendant Foster Wheeler "had any involvement with the design, planning, supervision, or construction of any improvements to real property." (ECF No. 404, at 19–20.) In addition, Plaintiff argues that because the boilers were removed at times for work that they could not be "improvements to real property" within the scope of the Statute of Repose.

8

The record reflects that the waste heat boilers at Bethlehem Steel were thirty (30) feet tall by six-and-a-half (6.5) feet by eleven (11) feet.[5] (ECF No. 391-5, at 3.) The package boilers were twelve (12) feet by eleven (11) feet by twenty-five (25) feet.[6] (ECF No. 391-5, at 4.) The record also reflects that the boilers were custom planned and fitted by Foster Wheeler, for Bethlehem Steel. (ECF No. 391, at 8; *see* ECF No. 391-5.) Plaintiff argues that self-serving affidavits, which they claim are the basis for the facts regarding the boilers, cannot be used as a basis for summary judgment. The Court agrees that in certain situations, where the Court would be required to make a credibility determination, that it would be improper to rely solely on affidavits. However, because the standard on a motion for summary judgment is whether there is a genuine dispute of material fact, where the non-moving party has not provided any other evidence disproving that fact, summary judgment must be granted. Plaintiff does not provide any evidence on the record that the boilers were not installed in the manner described by Foster Wheeler or that their composition and construction were not as described. Because Plaintiff does not point to anywhere on the record which indicates that Defendant Foster Wheeler's facts are false, there is no genuine dispute of material fact. Thus, taking the size, construction, installation and location of the waste heat boilers as accurate, the only question remaining for the Court on this issue is whether the boilers manufactured by Foster Wheeler would be considered an improvement of real property protected by the Statute of Repose, as a matter of law. The Court finds that they are.

Courts in Pennsylvania have determined that large, permanent boilers, similar to Foster Wheeler's have constituted real property improvements, falling within the meaning of the Statute of Repose. *See*, *e.g.*, *Graver*, 96 A.3d 383 (holding that it is not the function of the judiciary to

---

[5] The briefing does not specify which measurement pertains to length, width, and height. Nevertheless, the boilers were large by volume.
[6] *See supra* note 5.

construct an asbestos-related exception to the statute of repose); *Boesenhofer v. AECOM*, 2021 WL 11736632 (E.D. Pa. Nov. 24, 2021) (holding boilers over thirty feet tall and weighing over 85,000 pounds that created steam power for the facilities were improvements to real property for the purposes of the statute of repose); *Kephart v. Abb, Inc.*, 2015 WL 124582 (W.D. Pa. March 18, 2015) (holding that a boiler system was an improvement to real estate). The sheer size of the boilers in the present case, along with its essential purpose in powering the Bethlehem Steel plant, support the conclusion that these boilers were an improvement to real property. While Plaintiff makes the argument that the boilers were taken out periodically for repairs, this is not dispositive in the analysis. The record shows that Foster Wheeler designed these enormous boilers for Bethlehem Steel, the boilers were necessary components of the functionality of the powering of the steel plant, and these boilers were similar to those that previous courts have determined qualified as improvements to real property. (ECF No. 391, at 8; *see* ECF No. 391-5.) For these reasons, the Statute of Repose bars any claims against Foster Wheeler for asbestos related injuries caused by the boilers.

  ii. *Grainger*

Plaintiff's alleged exposure to Grainger-supplied products stems from his time of employment at Bethlehem Steel when he retrieved materials from Grainger and delivered them back to Bethlehem Steel. Grainger is not a manufacturer of products. Instead, they published a catalogue of products from which other manufacturers could place an order and, in turn, that they then supplied the specifically ordered products to buyers.

Plaintiff asserts that Vollman would retrieve these items or specifically ordered products from Grainger and deliver them throughout the warehouse and that these products or packages

holding said products contained various asbestos containing materials which the Decedent then used during the course of his employment.

Grainger responds with two arguments. First, Grainger argues that Plaintiff cannot establish that Vollman was exposed to asbestos containing products supplied by Grainger with the necessary regularity, frequency and proximity to sustain a claim. Second, Grainger argues that the proportion of asbestos containing products and the type of products that Grainger supplied at the relevant times could not have caused Vollman's exposure to asbestos. In this matter, the Court need not address Grainger's second argument because it finds that there is no genuine dispute of material fact contained in the Record as to whether Plaintiff has adequately identified *Grainger*-supplied asbestos-containing products as those Vollman was frequently exposed to—Plaintiff has not.

Vollman testified during his deposition that he was "[u]sually . . . the runner that—told to [sic] pick up something." (ECF No. 401-4, 328:20–21.) Vollman also testified that he usually did not have any duty to unpack these boxes unless he had to deliver certain parts to a boiler house. (ECF No. 401-4, 334:18–25, 335:1–10.) Furthermore, in the nearly twenty years that Vollman was employed at Bethlehem Steel, he only recalls picking up Grainger supplies "no more than a dozen" times. (ECF No. 401-4, 337:17.) This would equate to less than once a year over the nearly twenty years of his employment at Bethlehem Steel. Plaintiff argues that several parts that were used in the plant were supplied by Grainger, therefore amounting to significant exposure. However, Vollman admitted that without something in the box "sticking out," there was no way to know who was the supplier of the products used at the plant. Because of this, Plaintiff has not shown that that products supplied by Grainger were a substantial factor in causing Vollman's illness.[7] Thus,

---

[7] Plaintiff, during oral argument, states that a case within the Eastern District of Pennsylvania, *Pleaugh v. A.W. Chesterton Co.*, supports the proposition that suppliers are liable for asbestos-related injury to the same extent as manufacturers. 2012 WL 2914250 (E.D. Pa. April 27, 2012); (ECF No. 428, 142:13–15.) However, the Court notes several differences between *Pleaugh* and the present case. *Pleaugh* involved Wisconsin law and Plaintiff has not

11

Plaintiff has failed to meet the threshold question—product identification. As a result, Grainger's motion will be granted as this Court finds that no reasonable jury could find based on the Record that Grainger was supplying the products containing asbestos that Vollman, specifically, came into contact with and, moreover, with any of the requisite frequency. The Record reflects that if there was exposure to asbestos-related products, which is speculative, the exposure was infrequent at best.

    iii.    *Hajoca*[8]

Plaintiff alleges that Vollman was exposed to asbestos-containing products distributed by Hajoca. Plaintiff asserts two bases as to how Vollman was exposed to Hajoca products; First, Vollman served as a runner who would retrieve materials from the Hajoca supply house and then deliver them back to Bethlehem Steel—Similar to Vollman's experience with Grainger. Second, there were materials supplied by Hajoca to Bethlehem Steel used in the line of Vollman's work that contained asbestos.

The Court first addresses the sufficiency of Vollman's exposure as a runner for Hajoca products. Similar to his testimony regarding Defendant Grainger, Vollman testified that he only picked those Hajoca products up himself around 12 times in the almost 20 years that he worked at

---

provided any support that Wisconsin and Pennsylvania asbestos-tort law are similar. Furthermore, even assuming that the two laws are comparable, the factual situation in *Pleaugh* and the cases it relies on are inherently different. Firstly, *Pleaugh* relies on two Wisconsin State Appellate Court cases, *Zielinski* and *Horak*. Both are inapposite to the present case. *Zielinski* provided approved client lists that specifically noted that asbestos-containing products were supplied by a defendant, defeating summary judgment. *See Zielinski v. A.P. Green Indus., Inc.*, 661 N.W.2d 491 (Ct. App. Wis. 2003). The present record does not contain such evidence.

    *Horak*, on the other hand, involved evidence that the workplace was physically small, and the decedent was only one of a few employees working at the facility. *See Horak v. Building Services Indus. Sales Co.*, 750 N.W.2d 512 (Ct. App. Wis. 2008). The present case does not present with the same factual circumstance, but rather, quite the contrary. Bethlehem Steel was, undisputably, an extremely large and populated workplace. The Court, therefore, does not find *Pleaugh* nor cases contemplated within its opinion, to be appliable to the present case. *Pleaugh* is sufficiently distinct, factually, to warrant the differing conclusion from this Court.

[8]    Plaintiff's opposition to Hajoca's Motion for Summary Judgment (ECF No. 390) makes reference to several documents that are not attached to that motion nor provided by the Court during oral argument. In accordance with this Court's April 24, 2025 Order (ECF No. 419), those documents are not admissible and will not be considered.

Bethlehem Steel. (ECF No. 401-4, 342:12–14.) Thus, similar to this Court's conclusion for Defendant Grainger, the Court finds that the reported exposure to Hajoca asbestos-containing products does not demonstrate enough frequency to support the claims against Defendant Hajoca.[9] If the court were to presume exposure, and giving deference to the non-movant Plaintiff on the Defendant's motion, the exposure is sporadic at best based upon what has been attested to in the Record.

Next, the Court looks to whether Vollman's general exposure and testimony about Hajoca—separate from his time as a runner—is sufficient to survive summary judgment. Plaintiff alleges that "Mr. Vollman 'definitely' inhaled the asbestos dust generated by Hajoca-supplied asbestos-containing boiler replacement parts." (ECF No. 401, at 7.) However, the citation that Plaintiff provides for this argument does not actually support the proposition. Looking to the relevant deposition excerpts, Vollman does not mention at any point that he inhaled asbestos contained in *Hajoca-specific* supplied materials. In fact, he states the opposite. Vollman testified that "nothing [he picked up from Hajoca] was labeled or marked as [containing] asbestos." (ECF No. 401-4, 71:5–9.) Furthermore, Vollman testifies that most of the products that Hajoca supplied were "pipe parts" which did not contain asbestos. (ECF No. 401-4, 343:17–24; 344:9–16.) Vollman also admits that he was not exposed to asbestos from any "pipes, pipe fitting or pipe parts that Bethlehem Steel purchased from Hajoca." (ECF No. 401-4, 344:13–16.)

In focusing on the packing equipment allegedly supplied by Hajoca, Vollman testifies that when he was working with packing equipment, there was no way to know who had supplied the packing equipment if it wasn't in a box. (ECF No. 401-4, 345:6–10.) Furthermore, Vollman stated that when he was removing old packing, there was no way to know who supplied the packing.

---

[9]     *See supra* note 7.

13

(ECF No. 401-4, 345:11–15.) Finally, Vollman agrees that "there's no indication on the packing itself, no writing or any indication that [the packing] came from Hajoca." (ECF No. 401-4, 345:23–25, 346:1–2.) Furthermore, as to "flexatallic" materials,[10] Vollman doesn't "know for certain whether he worked with any supplied by Hajoca. (ECF No. 401-4, 346:22–25, 347:1–7.)

As this Court has stated before, "mere presence" of a Hajoca-supplied asbestos-containing material is not sufficient to sustain a claim against the Defendant Hajoca. *See McClaskey v. Anchor Packing Co.*, 1989 WL 114346, at *2 (E.D. Pa. Sept. 28, 1989) (citing *Pongrac v. Consolidated Rail Corp.*, 632 F. Supp. 126, 129 (E.D. Pa. 1985); *Eckenrod*, 544 A.2d at 52). Because Vollman has failed to identify Hajoca-supplied products as those that he was exposed to and containing asbestos, Plaintiff cannot support a claim against the Defendant. Pennsylvania law is clear that product identification is the prerequisite threshold question in sustaining a claim. *See In re Asbestos Products Liability Litig. (No. VI)*, 801 F. Supp. 2d 342, 345–46 (E.D. Pa. 2011). Despite the acknowledged difficulty for a Plaintiff to attach liability to a supplier to distributes another company's materials, because Plaintiff has failed to identify Hajoca-supplied products, the claims against Defendant Hajoca do not survive the motion.

    iv.    *Eaton Corp.*

Eaton Corporation is the successor to Cutler-Hammer. As a result, the product identification issues will relate to Cutler-Hammer's products and not those of Eaton Corporation. (ECF No. 428, at 12:23–24.) Upon a review of Vollman's relevant deposition transcripts, there is no mention of Cutler-Hammer products. Therefore, as to Plaintiff's personal knowledge, he did not state, on the record, that he was around, handled or was aware of being exposed to any Cutler-Hammer products. Instead, Plaintiff relies on the testimony of two Bethlehem Steel employees,

---

[10] Flexatallic is a high-pressure steam packing. (ECF No. 401-4, 346:22–23.)

14

Alexander Zambo[11] and Richard Sterner[12] to support his assertion that Cutler-Hammer was the manufacturer of crane brakes used at Bethlehem Steel. However, Plaintiff did not put forth in their pleadings or oral argument a basis for the Court to admit and consider the statements of Zambo and Sterner. In order for the Court to consider the statement of Zambo and Sterner, Plaintiff would have had to presented evidence of the unavailability of the two witnesses, and an additional statutory exception that would permit admissibility under FRE 804. *See supra* note 2. As a result, the statements by Zambo and Sterner are inadmissible hearsay, cannot be considered by the Court and therefore are excluded.

However, even if the Court were to admit this evidence, the evidence would not be dispositive of identifying Cutler-Hammer's products in this present matter. First, neither Vollman nor Zambo or Sterner identify each other as co-workers. Bethlehem Steel, as acknowledged by both sides, is an extremely large facility in size with a large work campus. All three individual were, in fact, employed at Bethlehem Steel. However, a reasonable jury would have to speculate that just because Zambo and Sterner worked somewhere in this facility around Vollman at some non-specific points in time, that they were exposed to the same alleged asbestos-containing products of the Defendant, if any. This factual circumstance exemplifies the speculation and conjecture that *Krauss* warns about. *See Krauss*, 104 A.3d at 568 ("A jury is not permitted to find that it was a defendant's product that caused the plaintiff's injury based solely upon speculation and conjecture; there must be evidence upon which logically its conclusion must be based."). The same analysis is applicable in the Courts consideration of the admissibility and, if admitted, the

---

[11]  Alexander Zambo was employed at Bethlehem Steel as an electrical helper from 1965 until 1998. (ECF No. 406, at 8.)
[12]  Richard Sterner was employed Bethlehem Steel as a "laborer" with various job titles from 1965 until 1995. (ECF No. 406, at 8.)

testimony from Charles Wally[13] and Mr. Jones.[14]  Both of whom are mentioned in the pleadings as witnesses, but with scant factual support as to their roles in Bethlehem Steel, full names, and interaction with Vollman and time frame.

Second, it would likewise be speculation and conjecture to conclude that Vollman was exposed to Cutler-Hammer products containing asbestos with sufficient frequency to reasonably infer causation. As Plaintiff's counsel has admitted "it's an impossible task to [identify the specific frequency with which Vollman assisted with crane brakes]." (ECF No. 428, 39:2–4.) The most that can be gathered from Vollman's deposition was that he occasionally assisted electricians with the crane brakes. The entire record, having only minimal references to Cutler-Hammer and Vollman's exposure to crane brakes, is insufficient to defeat summary judgment. This Court is not convinced that any jury, without engaging in mental acrobatics that rely on speculation and conjecture, would be able to come to the well-reasoned conclusion that Vollman was exposed to Cutler-Hammer asbestos products and with enough frequency to infer causation. For these reasons, Eaton's summary judgment motion is granted.

IV.   **CONCLUSION**

For the aforementioned reasons, Defendants Hajoca, Grainger, Eaton, and Foster Wheeler's Motions for Summary Judgment are granted. The claims against Eaton, Grainger, and Hajoca are dismissed because Plaintiff fails to meet the threshold product-identification prong of

---

[13]   Charles Wally is not alleged to be deceased in any of the pleadings nor during the oral argument. As a result, the Court does not consider their testimony as the admissibility of that testimony under Rule 804 has not been established.

[14]   Mr. Jones is an individual for whom Plaintiff has not alleged a first name nor any other identifying characteristics. As a result, any statements made by an alleged "Mr. Jones" would not be admissible.

an asbestos-related claim. The claims against Foster Wheeler are dismissed because they are barred by Pennsylvania's Statute of Repose.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**